**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BOUMEDIENE v. BUSH | Civil Case No. 04-1166 (RJL) |
| SLITI v. BUSH | Civil Case No. 05-0429 (RJL) |
| KABIR v. BUSH | Civil Case No. 05-0431 (RJL) |
| MAMMAR v. BUSH | Civil Case No. 05-0573 (RJL) |
| AL-KHAIY v. BUSH | Civil Case No. 05-1239 (RJL) |
| AL GINCO v. BUSH | Civil Case No. 05-1310 (RJL) |
| AL BIHANI v. BUSH | Civil Case No. 05-1312 (RJL) |
| GHAZY v. BUSH | Civil Case No. 05-2223 (RJL) |
| RUMI v. BUSH | Civil Case No. 06-0619 (RJL) |
| OBAYDULLAH v. BUSH | Civil Case No. 08-1173 (RJL) |

**PETITIONERS' JOINT REPLY MEMORANDUM
REGARDING HABEAS PROCEDURES**

Petitioners respectfully submit this reply memorandum pursuant to the Court's order dated July 30, 2008, and in response to the Government's Brief Regarding Preliminary and Procedural Framework Issues filed August 12, 2008 (Gov't Br.).

I.    **THE GOVERNMENT'S PROPOSALS REST ON SEVERAL THRESHOLD ERRORS**

In our opening memorandum, Petitioners demonstrated that many of the procedural issues in these cases—notably the need and scope of discovery and the parameters for an evidentiary hearing—would depend on the specific allegations made in the Government's final factual returns in each case, none of which has been filed (or amended) as yet.  In its own brief, the Government generally accepts that the Court may consider specific procedural issues on a case-by-case basis.  *See, e.g.*, Gov't Br. 14 ("The precise application of these principles may vary in certain cases.").[1]

The Government's principal positions, however, rest in large part on three critical errors, many of which misread or completely ignore the Supreme Court's decision in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008).

A.    **The Habeas Statute Governs These Cases**

Despite the Government's repeated protestations (Br. 4, 5, 7-8, 10, 18-21, 32, 36, 45), this Court's authority to conduct habeas proceedings derives from 28 U.S.C. §§ 2241 *et seq.* and is not limited to the minimum required under the Suspension Clause of the Constitution.  These cases were filed as, and remain, statutory cases.  *See Khalid v. Bush*, 355 F. Supp. 2d 311, 323 n.15 (D.D.C. 2005) (Leon, J.) ("The habeas statute enumerates a very specific process that the court and parties must follow, which has several distinct and discernable steps.  *See* 28 U.S.C.

---

[1] At a hearing in the *Boumediene* case on August 13, 2008, the Government itself urged that the Court wait to see the proposed amended returns before addressing any targeted discovery requests.

§§ 2241-2255." (emphasis added)).  Only one provision of the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600, 2635 (MCA), purported to alter the normal operation of section 2241, namely section 7.  That provision is invalid (*see Boumediene*, 128 S. Ct. at 2275), and the Supreme Court expressly stated that, following that invalidation, section 2241 "would govern" (*id.* at 2266).

The Government's claim that "the only appropriate procedures are those required by the Constitution itself" (Br. 8) is not supported by any statement in *Boumediene* and is flatly contradicted by the Supreme Court's analysis.  The Government states that the MCA "repealed" section 2241 (*id.* 7), without even discussing *Boumediene*'s invalidation of that repeal.  Now that the MCA's repeal is void, Congress's presumed intent—given the absence of any subsequent enactment or "saving clause" (*Boumediene*, 128 S. Ct. at 2265)—is that the well-worn procedures of 28 U.S.C. §§ 2241 *et seq.* retain their tried-and-true applicability.[2]

**B.     The Government Has Not Shown That Standard Factfinding Procedures Would Impose Any Actual Undue Burden**

As it did before Judge Hogan, the Government advances broad-brush claims that adopting standard factfinding procedures in these cases would have catastrophic consequences for the Nation.  The Government's suggestions are entirely hypothetical and untethered to the facts of any case before this Court.  The Government's inability to show an actual burden is

---

[2] The Government misreads Justice Souter's statement in concurrence that "now there must be constitutionally based *jurisdiction* or none at all" (*Boumediene*, 128 S. Ct. at 2278 (emphasis added)) to suggest that a reference to *jurisdiction* somehow alters the statutory *procedures* applicable here.  The Government's argument is meritless.  The Suspension Clause did indeed require that there be "jurisdiction" in these cases, which led to the conclusion that MCA § 7 (which expressly barred jurisdiction) was invalid and that section 2241 (which confers jurisdiction) was restored.  But neither the Court nor Justice Souter suggested that, following the reinstatement of jurisdiction, habeas procedures were *limited* to those protected under the Suspension Clause.  A turn of phrase regarding the Constitution's effect on "jurisdiction" cannot, without more, rewrite the statutory procedures enacted by Congress in section 2241 *et seq.*

demonstrated most forcefully by its repeated invocation of the "battlefield." *See, e.g.*, Gov't Br. 5, 35, 39, 42. The Government tellingly ignores the fact that most (and perhaps all) of these Petitioners *were never on a "battlefield."* Moreover, after more than six years of confinement, there is no reason to think that requiring a meaningful burden of proof, discovery, and evidentiary hearing will entail that any "servicemembers" be "haul[ed] … away from the battlefield." *Id.* 35. On the contrary, it is more likely that the Government's evidence will be based on statements by employees of civilian Government agencies, such as the FBI, CIA, and Departments of Defense, State, and Justice, such that ordinary procedures will have no influence on the conduct of war. *See Al-Marri v. Pucciarelli*, No. 06-7427, 2008 WL 2736787, at *47 (4th Cir. July 15, 2008) (en banc) (Traxler, J., concurring in the judgment) (authorizing ordinary procedural standards, including discovery from "civilian agencies," in enemy combatant habeas case). To the extent the Government contends otherwise, the Court should require a specific showing that ordinary procedures "would unduly burden the government" in a particular case. *Id.* at *45.

Petitioners and the Court are at a disadvantage because—despite having had over six and a half years to gather its case—the Government claims it is only now deciding what its factual allegations will be. But Petitioners have no reason to suspect, and the Government has given no reason to believe, that it could make any good-faith allegation of participation in any "battle" against any U.S. military personnel in most of this Court's cases. The *Boumediene* Petitioners (No. 04-CV-1166) were arrested by civilian police in Bosnia. Mr. Al-Ginco (No. 05-CV-1310) is a former political prisoner held by the Taliban who sought out U.S. authorities for help. This Court should not craft procedures based on abstract and unsupported "battle" scenarios.

**C.    As *Boumediene* Recognized, The *Hamdi* Plurality Opinion Does Not Decree A "Procedural Framework" For These Cases**

The Government clings to its notion of a "*Hamdi* framework," as though the Supreme Court in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), had purported to lay down procedural rulings to govern all cases. *See* Gov't Br. 7, 9-12, 14. *Boumediene* and *Hamdi* itself refute the Government's argument.

The *Boumediene* majority opinion—authored by Justice Kennedy and joined by Justice Breyer, the only two Members of the *Hamdi* plurality still on the Supreme Court—nowhere suggests that *Hamdi* is relevant to the procedures in these cases, let alone that it solidifies habeas procedures in the way the Government contends. *Boumediene* did not reference *Hamdi* at all when discussing the "[c]ertain accommodations [that] can be made to reduce the burden habeas corpus proceedings will place on the military without impermissibly diluting the protections of the writ." 128 S. Ct. at 2276. The *Boumediene* Court discussed the *Hamdi* plurality's procedural statements on exactly one occasion, and then the Court went out of its way to note that those statements are *not* binding—a point undisputed by the dissenting Justices. *See id.* at 2269 (stating that the *Hamdi* plurality's discussion of procedures "did not garner a majority of the Court"); *id.* at 2283 (Roberts, C.J., dissenting) ("[T]he process a given prisoner is entitled to receive *depends on the circumstances* and the rights of the prisoner." (emphasis added)). *Boumediene* also held that appropriate procedures were a matter for *this Court* to decide "in the first instance" (128 S. Ct. at 2276)—a statement that would make no sense if, as the Government contends, the *Hamdi* plurality had already cemented the appropriate procedures in 2004.[3]

---

[3] The Government's continued efforts to portray the *Hamdi* plurality as "controlling" (Br. 5-7, 11, 14, 16-17, 19, 22-23, 27, 30, 32, 35, 42) fail. When there is no Opinion of the Court, the Supreme Court's holding is "that position taken by those Members who *concurred in the judgments* on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks omitted) (emphasis added). Only six Justices concurred in the *Hamdi*

The Government's assertion that the "procedural framework in *Hamdi* provides the necessary elements of habeas review that, according to *Boumediene*, 'accords with [the] test for procedural adequacy in the due process context'" (Br. 10) is pure misinterpretation. *Boumediene* actually said that "[t]he idea that the necessary scope of habeas review in part depends upon the rigor of any earlier proceedings accords with our test for procedural adequacy in the due process context." 128 S. Ct. at 2268. The passage discusses the fact that the protections of both habeas and due process are greater where, as here, the Petitioner has had no previous fair or adversarial hearing; it says nothing about "necessary elements of habeas review" (Gov't Br. 10) and certainly does not suggest that the Government's reading of *Hamdi* includes them. If anything, this passage makes clear that habeas procedures and due process are closely linked.[4]

---

judgment to remand the case for further habeas procedures: the four-Justice plurality and Justice Souter in concurrence (joined by Justice Ginsburg). Regarding habeas procedures, Justice Souter's concurrence was clearly the narrower opinion—expressly agreeing with the plurality on some procedural points but disagreeing on others—and therefore controls. *See* Pet. Opening Mem. 23 n.9. The Government cites no authority for its inexplicable suggestion that Justice Thomas's *dissenting* opinion in *Hamdi* could play any role in determining the Court's holding on this issue.

[4] The Government seeks to resurrect its discredited theory that the Constitution does not apply in Guantanamo habeas proceedings. Br. 11-12 (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), and *Johnson v. Eisentrager*, 339 U.S. 763 (1950)). The Supreme Court has now twice rejected the Government's attempt to treat Guantanamo as analogous to Mexico or postwar Germany. *See Boumediene*, 128 S. Ct. at 2257-2262; *Rasul v. Bush*, 542 U.S. 466, 476 (2004); *id.* at 486-487 (Kennedy, J., concurring in the judgment). This Court should not entertain the argument a third time. Likewise, the fact that Petitioners are foreign nationals has no bearing on the procedural protections to which they are entitled on habeas. While Congress may distinguish between citizens and aliens in the exercise of its "power over naturalization and immigration" (*Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976) (quoted at Gov't Br. 9)), this is not an immigration case, but a habeas case challenging lifetime confinement in a prison under exclusive U.S. jurisdiction and control. The protections of habeas and due process apply in this context with undiminished force to aliens as well as to citizens. *See Boumediene*, 128 S. Ct. at 2256 (noting that "practical considerations, related not to the petitioners' citizenship but to the place of their confinement and trial" were "decisive factors" in determining the Constitution's application); Pet. Opening Mem. 5 n.1.

*Boumediene*'s recognition that *Hamdi* did not settle the habeas procedures in these cases was logical given the narrow scope of the *Hamdi* plurality opinion.  As Judge Traxler's controlling opinion for the en banc Fourth Circuit held, the *Hamdi* plurality's analysis "clearly arose from the context of a *battlefield detainee*" and was viewed as "appropriate *in light of the facts of the case*—a person initially detained abroad by our allies *on a battlefield in Afghanistan*."  *Al-Marri*, 2008 WL 2736787, at *45 (Traxler, J., concurring in the judgment) (emphasis added).  Judge Traxler's analysis of *Hamdi* is unequivocal: "the *Hamdi* plurality neither said nor implied that normal procedures and evidentiary demands would be lessened in *every* enemy-combatant habeas case, regardless of the circumstances."  *Id.*  Thus, if a Petitioner is to "receive exactly what the *Hamdi* plurality gave to Hamdi," the Court must "weigh his rights against the *actual* government burdens to determine whether a lessening of the normal procedures is warranted."  *Id.* at *46 n.14; *see also Hamdi*, 542 U.S. at 529 (plurality opinion) (procedural analysis must consider "the burdens the Government *would face* in providing greater process" (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976))).  Given the Government's favorable citation of Judge Traxler's analysis of *Hamdi* (Br. 9), it cannot plausibly argue that the *Hamdi* plurality decreed a single procedure to be imposed across all "enemy combatant" cases regardless of the circumstances and relative interests in each case.[5]

---

[5] Contrary to the Government's insinuation, Judge Traxler did not view *Hamdi* as governing every situation involving an "extraterritorial capture."  Gov't Br. 9 (citing *Al-Marri*, 2008 WL 2736787, at *42 (Traxler, J., concurring in the judgment)).  Judge Traxler clearly recognized the importance to the *Hamdi* plurality of Hamdi's status as "a *battlefield detainee* captured in a foreign nation."  *Al-Marri*, 2008 WL 2736787, at *42 (Traxler, J., concurring in the judgment) (emphasis added).  Extraterritorial capture, though possibly relevant in some circumstances, does not necessarily increase the burden on the United States to litigate a habeas case under familiar procedures, particularly if the witnesses and evidence are primarily located within the United States or at Guantanamo, which the Supreme Court held is "not abroad" in any practical sense.  *Boumediene*, 128 S. Ct. at 2261.  Indeed, the Government acknowledges elsewhere in its brief that the Government's interests in *Hamdi* were based on the situation of

The case-specific treatment of procedures in *Boumediene* and *Al-Marri* is fully consistent with the *Hamdi* plurality opinion. The plurality suggested that the district court, on remand, should craft habeas procedures in a flexible manner so as to balance the petitioner's compelling interest in meaningful review against any Government interests of "national security that *might arise* in an *individual case*." *Hamdi*, 542 U.S. at 539 (plurality opinion) (emphasis added). In *Hamdi*, the government interest was in detaining a person who had "in fact *fought with the enemy during a war*" (*id.* at 531 (plurality opinion) (emphasis added) (quoted at Gov't Br. 12))— a statement that is simply inapplicable in most if not all of these cases. The balance of interests in cases of Petitioners imprisoned in peaceful countries, whose cases depend largely on material in the hands of civilian agencies, will necessarily tip in favor of greater process than was envisioned for an actual Taliban fighter captured by soldiers during battle.[6]

## II.    RESPONSE TO THE GOVERNMENT'S INDIVIDUAL PROPOSALS

### A.    The Court Should Reject The Government's Effort To Justify Detention On Less Than Clear And Convincing Evidence

Petitioners agree with the Government that, unlike in post-conviction habeas cases, the Petitioner does not bear "the burden of showing that he was unlawfully detained"; rather, the Government must justify imprisonment. Gov't Br. 15 (quoting *Eagles v. United States ex rel. Samuels*, 329 U.S. 304, 314 (1946)). Petitioners also agree that the Government's return must contain "credible evidence" supporting detention. *Id.* 4, 13-14. Finally, although it does not even mention *Parhat v. Gates*, No. 06-1397, 2008 WL 2576977 (D.C. Cir. June 20, 2008), the

---

persons who "have in fact fought with the enemy" and the burdens that might be imposed "on the military" due to "ongoing hostilities" and "military action." Gov't Br. 12-13 (quoting *Hamdi*, 542 U.S. at 533).

[6] The Government asserts that these Petitioners were "captured under similar circumstances" to Hamdi. Gov't Br. 8. That statement is false. For instance, the Government has never alleged, nor could it, that the *Boumediene* Petitioners (No. 04-CV-1166) *ever* fought the United States on a battlefield, let alone were "captured" in such a situation.

Government appears to accept that, if the return does not provide a basis for evaluating the Government's evidence as reliable, then the writ must issue even without any further evidence from the Petitioner.  Gov't Br. 4 (stating that, following the filing of the return, Petitioners "may question the sufficiency of the Government's showing"); *id.* 15 n.3 (accepting that Petitioners may "file a motion for judgment" after the filing of the return).

Beyond that, however, the Government's proposals are erroneous.  Indeed, the Government appears to seek to impose the ultimate burden of persuasion on *the Petitioner* by stating that the case must be dismissed unless the Petitioner produces evidence "more persuasive" than that of the Government.  Gov't Br. 14, 15.  Such a requirement—that the Petitioner ultimately persuade the Court that he is *not* detainable—would turn habeas review of Executive detention on its head.  The Government does not identify a single case in which a habeas court required a prisoner of the Executive, held without trial, to persuade the court of his non-detainability, rather than requiring the jailer to demonstrate the lawfulness of imprisonment. *See, e.g.*, *Boumediene*, 128 S. Ct. at 2271 (a "showing [is] required of the Government in these cases"); *Foucha v. Louisiana*, 504 U.S. 71, 81-82 (1992) (invalidating confinement scheme that "place[d] the burden on the detainee to prove that he is not dangerous").

As discussed above, the *Hamdi* plurality's suggested "burden-shifting scheme" has no application or relevance outside of a "battlefield" context, especially absent any showing of actual need for such a scheme in a particular case.  A presumption in the Government's favor, and a shifting of the burden, might have made sense for an armed prisoner taken in battle who was given a hearing soon after capture, but it makes no sense for prisoners taken in the midst of civilian life who have been imprisoned for six years.  *See, e.g.*, *Al-Marri*, 2008 WL 2736787, at *46 (Traxler, J., concurring in the judgment) (noting that "the risk of erroneously detaining" an

alien civilian "is much greater inside the United States than in the very different context addressed by the Supreme Court in *Hamdi*, *i.e.*, a conventional battlefield within the borders of a foreign country in which we are fighting our enemies").

Although the *Hamdi* plurality proposed that Hamdi may have needed to produce "more persuasive evidence" to respond to any "credible evidence" in the Government's return (542 U.S. at 534), the plurality did not suggest that this "scheme" would shift the *ultimate* burden to Hamdi. Rather, as with "all presumptions," the *Hamdi* plurality envisioned that the prisoner would have a shifted burden of production, not the ultimate burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *see also* Fed. R. Evid. 301 (a presumption "does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast"). Accordingly, once both parties have produced their evidence, the burden-shifting scheme falls away, and the Court resolves any disputed issues of fact neutrally.

With respect to the standard of proof, the Government has shown no basis for applying any standard less exacting than clear and convincing evidence. As the Supreme Court has held, lower standards (such as a preponderance) are reserved for "private suits" involving "a monetary dispute between private parties." *Addington v. Texas*, 441 U.S. 418, 423 (1979). This Court would not grant attorney's fees in a patent case without making a finding by clear and convincing evidence. *See, e.g.*, *Innovation Techs., Inc. v. Splash! Med. Devices, LLC*, 528 F.3d 1348, 1351 (Fed. Cir. 2008). Lifelong imprisonment at Guantanamo should not be doled out more easily.

Petitioners' deprivation of liberty is far starker than that of other detainees who can demand proof by clear and convincing evidence. Unlike pretrial detention, Petitioners'

imprisonment has no "maximum length," nor was there a "prompt" proceeding where the Government was required to justify detention in "a full-blown adversary hearing." *United States v. Salerno*, 481 U.S. 739, 747, 751 (1987). Unlike removable aliens, whose deportability the Government must likewise prove by clear and convincing evidence, Petitioners have been deprived not of the right to live in the United States (which most of them never sought), but the right to live *anywhere* but a cramped cell on an island prison with essentially no communication with loved ones or homeland.

Petitioners' situation is for all practical purposes indistinguishable from a criminal sentence of life imprisonment, which would require proof beyond a reasonable doubt. As in a criminal case, the United States has "a substantial and fundamental interest in assuring accuracy" in these cases, not least because the "'moral force'" of U.S. law should not be "'diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned.'" *In re Ballay*, 482 F.2d 648, 663 (D.C. Cir. 1973) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). Given the documented admissions of Government agents that decisions to detain were often erroneous (Pet. Opening Mem. 17), and the Government's overwhelming ability to gather and present evidence in cases of actual wrongdoing, the Court should have the highest confidence in the Government's evidence before consigning a Petitioner to unlimited confinement and isolation. There is accordingly a strong case for requiring proof beyond a reasonable doubt. *See* Pet. Opening Mem. 16-17. At the very least, however, Petitioners' claims should not be dismissed on *less* evidence than is required for pretrial detention, deportation, or civil commitment, namely clear and convincing evidence.

The Government's arguments to the contrary rest on several incorrect assumptions. First, the Executive's actions have not been "taken with the full authority of Congress" (Br. 16)—

indeed, the lack of congressional authorization for detention is one of the very issues the

Supreme Court remanded for consideration. *Boumediene*, 128 S. Ct. at 2277 (stating that "the

content of the law that governs petitioners' detention" is "a matter yet to be determined"). Nor is

it true that hearings are not "the norm" when the Government seeks to hold people for lengthy

terms. Gov't Br. 17. *Hamdi* itself recognized that military regulations "dictat[e] that tribunals be

made available to determine the status of enemy detainees who assert prisoner-of-war status."

542 U.S. at 538 (plurality opinion).[7] And again, references to "service members" placing

themselves "in harm's way on a daily basis" (Gov't Br. 17) have no place in cases where

civilians are taken into custody far from any battlefield. Accordingly, the reasons that the

Supreme Court has held require proof by clear and convincing evidence apply equally here.

### B.    The Court Should Authorize Discovery As Needed In Individual Cases And Require The Government To Locate And Produce Exculpatory Evidence

The Government's discussion of discovery begins with a lengthy and irrelevant excursion

into the history of the common law writ. Gov't Br. 18-22. But the availability of discovery

before 1789 has no bearing on these statutory cases, since discovery is plainly available under

the habeas statute. *See* 28 U.S.C. § 2246 ("[E]vidence may be taken orally or by deposition, or,

in the discretion of the judge, by affidavit."); *Harris v. Nelson*, 394 U.S. 286, 290 (1969) ("[I]n

appropriate circumstances, a district court, confronted by a petition for habeas corpus which

---

[7] Such tribunals are convened promptly after detention and near the location of capture, maximizing the availability of witnesses and evidence. *See, e.g.*, United States Forces, Korea Reg. 190-6, § 7-2.a ("normally … within 2 days of capture"), *available at* http://www.usfk.mil /usfk/Publications/Publication_Records_Reg_USFK.htm. Indeed, the U.S. military's first written procedures for such tribunals—developed during the Vietnam War, which was waged in significant part against non-traditional combatants—recognized a detainee's right to a "fair hearing" and the right to counsel as a "fundamental" component of such a hearing. U.S. Military Assistance Command, Vietnam, Directive 20-5, Annex A.7, *reprinted in* 62 Am. J. Int'l L. 754, 771 (1968). At such hearings, counsel for the detainee was allowed to present "witnesses, documents, affidavits, real evidence, and sworn or unsworn statements on behalf of the detainee." *Id.* annex A.14.i, 62 Am. J. Int'l L. at 773.

establishes a prima facie case for relief, may use or authorize the use of suitable discovery procedures, including interrogatories, reasonably fashioned to elicit facts necessary to help the court to 'dispose of the matter as law and justice require.'" (quoting 28 U.S.C. § 2243)).[8]

In fact, the Government appears to agree that (1) the purpose of these habeas proceedings is to allow the Court to make a fair assessment of the legality of the detention at issue and (2) that the production of potentially exculpatory evidence in the Government's control is an important component of that process. *See* Gov't Br. 24 (agreeing to provide *some* potentially exculpatory materials to Petitioners because "the Government has no interest in erroneously holding a person"). Petitioners' proposal of limited, targeted discovery is fully consistent with these interests, and the Government has not shown that it would impose any undue burden in any *actual* case before the Court. To the extent that particular requests should raise a real concern, the "prudent and incremental" course is for the Court to address them as they come, rather than attempting to resolve in advance issues that may never arise.[9]

The Government's discussion of discovery burdens consists mainly of the Government first assuming that Petitioners will make exaggerated demands (implicating "battlefields" and

---

[8] As a peripheral matter, the Government's constitutional analysis proceeds as if *Boumediene* were never decided. *Boumediene* specifically noted that the Court has always left open the possibility that the Suspension Clause protects post-1789 expansions of habeas procedures. 128 S. Ct. at 2248. *Boumediene* also rejected the Government's suggestion (Br. 21) that *Felker v. Turpin*, 518 U.S. 651 (1996), somehow showed that post-1789 expansions were not protected. *Boumediene*, 128 S. Ct. at 2264. Accordingly, the Suspension Clause may well protect some right to discovery in habeas, particularly where there has not been any prior fair trial. The Court need not decide this issue, however, as the habeas statute clearly authorizes discovery in these cases.

[9] Petitioners' need for certain discovery—and, for that matter, the scope of an evidentiary hearing—could be obviated by stipulations to particular facts. For example, the *Boumediene* Petitioners asked the Government to stipulate to certain facts pertaining to the circumstances of the Petitioners' arrest in Bosnia, in an effort to minimize potential discovery. *See* Declaration of Robert C. Kirsch ¶ 8, Exhibit C. Yesterday, the Government informed counsel that it would not stipulate to such facts, although its basis for denying them remains unclear. *Id.* ¶ 9, Exhibit D.

"rubble") and then emphasizing the dangers such demands would pose.  Gov't Br. 25, 28-29.

Contrary to the Government's assertions, however, Petitioners have no interest in directing the

Government on a "fishing expedition."  Gov't Br. 25.  Petitioners seek only the process to which

the Supreme Court has said they are entitled: a meaningful proceeding in which they can fairly

test the Government's bases for detention.  *Boumediene*, 128 S. Ct. at 2266-67.  To that end,

Petitioners must be provided with information in the Government's possession that could

undermine the Government's assertions.  *See Harris*, 394 U.S. at 300 (where development of

certain facts would allow the petitioner to demonstrate the illegality of his detention, "it is the

duty of the court to provide the necessary facilities and procedures for an adequate inquiry").

The Government's voluntary undertaking to provide to Petitioners some exculpatory

information that its attorneys happen to "encounter" (Br. 4) implicitly acknowledges that

production of exculpatory information in the Government's possession is necessary to preserve

fairness.  However, the Government balks at the added responsibility of *looking* for exculpatory

information that it does not happen to "encounter" on its own.The Government's self-serving

limitation is not supported by the law and exaggerates any actual burden that Petitioners'

proposal might impose.

As the Government acknowledges, a requirement that the Government produce

exculpatory evidence is grounded in "strictures against misrepresentation."  *Kyles v. Whitely*, 514

U.S. 419, 432 (1995) (*quoted in* Gov't Br. 24).  The Government has no more right to benefit

from misrepresentation and concealment of information in these cases than in the criminal

context.  *See, e.g*., *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("Society wins not only when the

guilty are convicted but when criminal trials are fair; our system of the administration of justice

suffers when any accused is treated unfairly.").

Petitioners in these cases are even *more* dependent on information in the Government's possession than the typical criminal defendant. While permitting itself over six years to build its factual allegations against Petitioners, the Government has systematically deprived Petitioners of meaningful opportunities to obtain or preserve evidence that could now be used in their defense. Notably, the Government has confiscated the personal items (including identification and passports) that Petitioners had in their possession upon arrival at Guantanamo, has never made them available to counsel, and in some cases has not even acknowledged that it possesses such documents. Requiring the Government to locate and produce potentially exculpatory evidence is necessary to ensure an "adequate inquiry" into the legality of the detentions at issue. *Harris*, 394 U.S. at 300. No less than in the criminal context, permitting the Government to withhold exculpatory evidence would place the Executive "in the role of an architect of a proceeding that does not comport with standards of justice." *Brady*, 373 U.S. at 88; *see also Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (en banc) ("Because the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned.").

The Government's suggestion that disclosure of exculpatory evidence should be eliminated in the name of "expedited consideration" (Br. 29) cannot be taken seriously. The Government has steadfastly resisted any meaningful merits proceeding in these cases for over six years. Now that the Supreme Court has definitively rejected its delaying tactics, the Government cannot invoke expedition to demand that Petitioners proceed to trial on a newly-disclosed factual return while the Government withholds contrary evidence favorable to Petitioners. Petitioners have the utmost interest in promptness, but the Court should not pursue speedy process at the expense of accuracy and fairness.

Finally, the Government has made no showing that compliance with a disclosure obligation would impose an undue burden on the Government in any actual case. The Government's own "regulations" required it to preserve the so-called "Government Information"—defined as all "'reasonably available information in the possession of the U.S. Government bearing on the issue of whether the detainee meets the criteria to be designated as an enemy combatant'" (Pet. Opening Mem. 33 (quoting *Bismullah v. Gates*, 501 F.3d 178, 181 (D.C. Cir. 2007))—in order that it could be shown to officials involved in the Combatant Status Review Tribunal process. *See* Memorandum from Gordon England, Secretary of the Navy Re Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants detained at Guantanamo Bay Naval Base, Cuba, Encl. 1, ¶ G(4), July 9, 2004 (excerpt attached as Exhibit E) (noting that the Personal Representative completes a Detainee Election Form "after the detainee's Personal Representative has reviewed the Government Information"). The Government may well believe that the D.C. Circuit erred in requiring production of the full "Government Information" under the Detainee Treatment Act (*see Bismullah v. Gates*, 503 F.3d 137 (D.C. Cir. 2007)), but Petitioners are not seeking *production* of that information in the first instance. Rather, Petitioners seek only that the Government *review* it and produce any exculpatory information contained therein. This task should hardly be characterized as a burden, given the Government's statutory and regulatory obligation to preserve and review that body of evidence.

Although Petitioners welcome the Government's undertaking to provide exculpatory evidence "which the attorneys preparing the factual return encounter in developing the return" (Gov't Br. 4), it is hardly sufficient. The Government does not explain what its "attorneys"—as opposed to other Government officials—will be reviewing in preparing the returns or what it

means for those attorneys to "encounter" information. There is a significant concern that the Government will turn a blind eye to information that could play a critical role in any fair determination of the legality of imprisonment—just as the CSRTs did when they failed to consider evidence easily accessible to the Government.[10]

Indeed, the Government's recent behavior confirms that it is deliberately refusing to review documents that likely contain exculpatory evidence, even when specifically directed to such documents. For example, the *Boumediene* Petitioners have provided the Government with a detailed index, prepared by the Government itself in another case, listing pertinent materials regarding the *Boumediene* Petitioners that the Government has assembled and bates-labeled. Declaration of Robert C. Kirsch ¶ 4, Exhibit A. Counsel has asked the Government to confirm that its attorneys will review these documents, *which the Government has already gathered and numbered*, and produce any exculpatory evidence encountered therein pursuant to its undertaking. *See id.* ¶ 4, Exhibit B. Yet the Government has so far refused to confirm that it will even review those materials, let alone that it will provide exculpatory material they contain, even though its attorneys are now clearly on notice of their existence and location. The Government's refusal to review specifically identified documents in its possession demonstrates the emptiness of its undertaking and the need for this Court to order the Government to locate and produce exculpatory evidence.

---

[10] For example, in connection with his CSRT, Petitioner Saber Lahmar in *Boumediene* (No. 04-CV-1166) requested evidence in the form of a document the CSRT identified as "Bosnian government document finding detainee not guilty of attempting to bomb the U.S. Embassy." The Tribunal President determined the document was "not reasonably available." However, those Bosnian court documents were appended as exhibits to Lahmar's habeas petition and multiple other filings served on the Government prior to Lahmar's CSRT. Pet. for Writ of Habeas Corpus, *Boumediene*, No. 04-CV-1166 (July 12, 2004).

C.     **The Court Should Uphold Petitioners' Ability To Confront The Evidence Against Them, Including Through An Evidentiary Hearing**

1.     **The Court should hold an evidentiary hearing to resolve disputes of fact**

After much qualification and citation to numerous cases from the post-conviction criminal context, the Government ultimately concedes that substantial factual disputes between Petitioners and the Government should be the subject of evidentiary hearings with live testimony.  Gov't Br. 35.  Petitioners are in full agreement with this proposition and have never argued that a hearing is required in all cases.  The Government proposes, however, that hearings should be permitted only after written submissions (including, apparently, another round of pre-hearing briefing) and only after a presumption of the validity of the Government's evidence has been overcome to the extent that "the weight of the evidence supports the habeas petitioner."  *Id.* 34.  The Government appears to believe that a hearing should only be held to shore up the *Government's* position.  The Government's structure rests on its claimed presumption of validity and its effort to place the ultimate burden of persuasion on the Petitioner, both of which are erroneous as discussed above.  The Government has provided no authority for its cramped view of evidentiary hearings in the Executive detention context.  Rather, in cases where factual issues remain in dispute, an evidentiary hearing is both the most fair and speediest way to resolve those issues.

Contrary to the Government's claim (Br. 33-34), neither *Boumediene* nor *Hamdi* held that hearings were exceptional in this context.  On the contrary, both cases recognized the importance of a hearing.  *See Boumediene*, 128 S. Ct. at 2275 ("[t]he detainees in these cases are entitled to a prompt habeas corpus hearing"); *Hamdi*, 542 U.S. at 533 (plurality opinion) ("'An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."'" (quoting *Cleveland Bd. of*

*Educ. v. Loudermill*, 470 U.S. 532, 542 (1985))). *Boumediene*'s holding that a habeas court must possess "sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain" (*id.* at 2269) certainly includes the opportunity for a live hearing to resolve disputes of material fact. The Government's claim that evidentiary hearings did not occur in habeas proceedings "in 1789 or for decades thereafter" (Br. 32) is both irrelevant (as discussed in Part I.A above) and incorrect; several habeas courts in both the United States and in England heard live testimony from petitioners and other witnesses.[11]

The Government's main argument against evidentiary hearings is that "soldiers must [not] be distracted from 'the serious work of waging battle' to provide eyewitness accounts of actions that occurred half a world away." Gov't Br. 34 (quoting *Hamdi*, 542 U.S. at 531-32); *see also id.* at 35, 39. This objection is decidedly premature, since no Petitioner has yet sought testimony from any "soldier." Given the remoteness of most Petitioners from any actual "battle," the situation may never arise in these cases. As this Court knows, the Government has cautioned the Court during recent chambers conferences against acting on "hypotheticals" and "abstract comments," urging the Court to defer decision until it knew the facts—there the facts of

---

[11] *E.g.*, *Delaware v. Clark*, 2 Del. Cas. 578 (Del. Ch. 1820) (discharging petitioner based on affidavits and live testimony from third parties proving that petitioner had enlisted while intoxicated and without his father's authority); *Wilson v. Izard*, 30 F. Cas. 131, 131 (C.C.N.Y. 1815) (reviewing claim that petitioners were exempt from impressment as "alien enemies," which was "a fact not appearing on the return, but sworn to at the time of the allowance of the habeas corpus"); *R. v. Turlington*, 97 Eng. Rep. 741 (K.B. 1761) (discharging woman from custody after reviewing doctor's affidavit and conducting examination of petitioner's mental condition); *R. v. Lee*, 83 Eng. Rep. 482 (K.B. 1676) (considering petitioner's testimony on "oath in court" that "she went in danger of her life by [her husband]" and should be freed from his custody).

the Government's amended return.  The Government's caution was well founded; and here, its

extreme hypotheticals cannot justify the denial of a hearing.[12]

Moreover, the onerous preconditions that the Government would place on an evidentiary

hearing (Br. 34-35) rest on its fundamental misunderstanding of the burden of proof.  *See supra*

at 9-10.  Because Petitioners have not previously received fair process, the Government is not

entitled to any presumption of validity, much less to require that Petitioners' evidence appear *on

paper* to be "more persuasive" than the Government's evidence.  Rather, an evidentiary hearing

should be held whenever the written submissions disclose a dispute of material fact that must be

resolved by assessing the relative credibility and reliability of the parties' witnesses.  *See Stewart

v. Overholser*, 186 F.2d 339, 342 (D.C. Cir. 1950) ("When a factual issue is at the core of a

detention challenged by an application for the writ it ordinarily must be resolved by the hearing

process.  This is a chief purpose of the habeas corpus procedure.").

> **2.      The "fundamental procedural protections" of habeas corpus include a
> basic right to confrontation and compulsory process**

The Government argues that Petitioners have no rights to confrontation and compulsory

process because there is no "constitutional provision" that applies in the context of habeas cases

brought by "aliens captured and held abroad as enemy combatants."  Gov't Br. 36.  Leaving

aside the Government's disregard of the Supreme Court's holding that Guantanamo "is not

abroad" (*Boumediene*, 128 S. Ct. at 2261), the Government's focus on a "constitutional"

---

[12] In urging the rarity of evidentiary hearings on habeas, the Government cites cases from the *post-conviction* context, where habeas petitions follow a jury trial and direct appeal.  *See* Gov't Br. 34-35 (citing *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007); *Harris v. Nelson*, 394 U.S. 286 (1969); *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999); *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989)).  Such cases provide no guidance for these habeas cases, which challenge the lawfulness of executive detention where no neutral factfinder has heard the facts of the petitioner's case.  *See Boumediene*, 128 S. Ct. at 2264 (postconviction review cases "give little helpful instruction (save perhaps by contrast) for the instant cases, where no trial has been held").

foundation is again a red herring, since confrontation rights inhere in the statutory framework of habeas corpus and the "fundamental procedural protections" to which *Boumediene* held that Petitioners were entitled. *Id.* at 2277. While not every hearing may require the presence of Government witnesses, accurate fact-finding regarding the allegations in particular cases may well require the presence (actual or videographic) of such witnesses in order to conduct probing examinations and to make credibility determinations. This is a matter best deferred until the Government has filed its factual returns and concrete requests for live testimony have been propounded.

Live testimony from the prisoner may also be indispensable, especially where the petitioner himself may be best (and perhaps uniquely) able to rebut the allegations made against him. As the Government acknowledges, "[w]here … there are substantial issues of fact as to events in which the prisoner participated, the trial court should require his production for a hearing." *United States v. Hayman*, 342 U.S. 205, 223 (1952) (*quoted in* Gov't Br. 37). The Government's attempt to distinguish *Hayman* fails because, like *Hayman*, these cases arise under the habeas statute, not "the traditional, eighteenth-century practice enshrined in the Suspension Clause." Gov't Br. 38.[13]

---

[13] The Government makes much of the fact that the prisoner in *Hayman* was already in the United States. *See* Gov't Br. at 38. Regardless of whether the Court may order an alien's "admission" into the United States, the Department of Homeland Security is specifically authorized to *parole* into the United States "[a]liens who will be witnesses in proceedings being, or to be, conducted by judicial … bodies in the United States." 8 C.F.R. § 212.5(b)(4). Under federal immigration law, the "parole of such alien shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A); *see also Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007) (noting the "well-settled principle that parole does not effect a legal entry or admission to the United States"). In an appropriate case, this Court should request that the Secretary of the Department of Homeland Security parole a prisoner into the United States for the limited purpose of testifying at a hearing.

3.    **The government's hearsay evidence must be carefully vetted for reliability**

The Government argues that not only should hearsay be admitted, but that it should be "the norm, not the exception," and that this principle is "establish[ed]" by *Hamdi*. Gov't Br. 38-39. As previously shown, the *Hamdi* plurality established no hard and fast rules, but only guidelines for what may be appropriate depending on the circumstances. *See supra* at 4-7. While Petitioners acknowledge that hearsay may be required in some situations, that eventuality does not excuse the Government from establishing both the source and the reliability of its information with as much specificity as possible.

In reviewing an enemy combatant determination by a CSRT, the D.C. Circuit held that "hearsay evidence … must be presented in a form, or with sufficient additional information, that permits the Tribunal and court to assess its reliability." *Parhat*, 2008 WL 2576977, at *13. In fact, the Court of Appeals deemed much of the hearsay evidence put forward by the Government to be of unknown reliability and therefore insufficient to support detention as an "enemy combatant." For example, intelligence documents asserting relationships between an organization with which the prisoner was allegedly affiliated and Al Qaeda and the Taliban,

> repeatedly describe those activities and relationships as having "reportedly" occurred, as being "said to" or "reported to" have happened, and as things that "may" be true or are "suspected of" having taken place. But in virtually every instance, the documents do not say who "reported" or "said" or "suspected" those things. Nor do they provide any of the underlying reporting upon which the documents' bottom-line assertions are founded, nor any assessment of the reliability of that reporting. Because of those omissions, the Tribunal could not and this court cannot assess the reliability of the assertions in the documents.

*Id.* at *11 (footnote omitted). If hearsay is permitted, the Government must provide some indication of the source of the information so that the Court may make a determination of reliability. Without it, the Government's claim of reliability amounts to no more than a bare

assertion, which, as the D.C. Circuit recognized, "comes perilously close to suggesting that whatever the government says must be treated as true." *Id.* at *13.

Given the concerns expressed in *Parhat*, and the strong likelihood that the Government will proffer equally unsourced evidence in these proceedings, it makes little sense to accord the Government any presumption in favor of its evidence. Quite the contrary: the Court should apply a healthy dose of skepticism in assessing the "weight" to be given to the Government's hearsay. *See Al-Marri*, 2008 WL 2736787, at *47 (Traxler, J., concurring in the judgment) (rejecting hearsay where the Government "made no attempt to show that this hearsay evidence 'need[s] to be accepted as the most reliable available evidence from the [g]overnment" (quoting *Hamdi*, 542 U.S. at 533-534 (plurality opinion))). An evidentiary hearing where witnesses may be confronted and cross-examined is a critical mechanism in this regard.

> **D.    Upon The Request Of A Petitioner, The Court Should Enter An Interim Order Requiring The Government To Give Thirty Days' Notice Of Any Planned Transfer From Guantanamo**

The Government misunderstands the request for advance notice of intent to transfer. Petitioners do not request the Court to enjoin a transfer now. Petitioners simply ask the Government to notify the Court and Petitioners' counsel in advance of a planned transfer. Moreover, advance notice would allow this Court to manage its calendar without the concern of last minute changes. Accordingly, this Court need not consider the jurisdictional questions the Government poses at this time. Those matters can be broached if and when a Petitioner actually seeks to enjoin a planned transfer or, for that matter, after the decision issues in *Kiyemba v. Bush*, No. 05-5487 (D.C. Cir.), scheduled for argument on September 25. Petitioners' instant request for notice serves only to preserve the status quo.

1.    **The Government's arguments regarding § 2241(e)(2) are irrelevant and incorrect**

Contrary to the Government's arguments, neither Petitioners' request for notice nor any eventual request to enjoin transfer would be subject to 28 U.S.C. § 2241(e)(2). That subsection applies only to "other action[s]," a phrase that the Supreme Court held "cannot be understood without referring back to the paragraph that precedes it, § 2241(e)(1), which explicitly mentions the term 'writ of habeas corpus.'" *Boumediene*, 128 S. Ct. at 2243. Accordingly, subsection (e)(2) has no application in habeas actions such as these, over which the Court plainly has jurisdiction under *Boumediene*. A request for notice, and any later request for transfer, is a means for this Court to protect its existing habeas jurisdiction. *See Adams v. United States*, 317 U.S. 269, 273 (1942) (the All Writs Act empowers this Court to issue orders necessary to protect its jurisdiction and "to achieve the ends of justice entrusted to it"). A request for a preliminary injunction under Federal Rule of Civil Procedure 65 would likewise protect the Court's existing habeas jurisdiction under section 2241(c); it would not begin a new "action."

*Boumediene* nowhere suggests that Congress could enact, or had enacted, any provision that forbade this Court from affording complete relief under habeas, which necessarily includes the Court's power to protect its own habeas jurisdiction by averting mootness. To the extent that section 2241(e)(2) could be interpreted to forbid a court from protecting its habeas jurisdiction— and as discussed above it cannot, since a habeas action is by definition not an "other action" (*Boumediene*, 128 S. Ct. at 2243)—then subsection (e)(2) must be deemed invalid as well.[14]

---

[14] As the Government acknowledges, *Boumediene* referred to section 2241(e) without differentiating among the subsections. *See id.* at 2275 ("The only law we identify as unconstitutional is MCA § 7, 28 U.S.C.A. § 2241(e) (Supp. 2007)").

## 2.    The Government's reliance on *Munaf* is misplaced

Alternatively, the Government relies on *Munaf v. Geren*, 128 S. Ct. 2207 (2008), in support of their objection to any advanced notice of transfer.  The Government asks too much of *Munaf*.  The  factual circumstances in *Munaf*, which were "essential to the Court's holding," were unique and distinct from those in the cases before this Court.  *Id.* at 2228 (Souter, J., concurring).  In *Munaf*, the petitioners had voluntarily traveled to the country where they were being detained; the government of that country decided to prosecute them for crimes committed there; and any transfer would be to the custody of an authority that the U.S. State Department had determined "generally met internationally accepted standards for basic prisoner needs."  *Id.* at 2226; *see also id.* at 2228 (Souter, J., concurring) (outlining the eight critical and unique factual circumstances in the case).  A case involving individuals who commit crimes *within a foreign country's territory*, who therefore may be transferred to that country's government for prosecution, is fundamentally different from a case of individuals held without charge in U.S. custody who have not been accused of any crime in the proposed country of transfer.

Unlike the petitioners in *Munaf*, Petitioners here do not know if, when, or where they will be transferred or for what purpose.  Unlike the petitioners in *Munaf*, *see* 128 S. Ct. at 2227-28, Petitioners here do not concede that any yet-to-be determined place of transfer has a sovereign right to prosecute them for any crime.  Moreover, without any evidence that Petitioners committed a crime in a yet-to-be determined place of transfer or that any such country intends to prosecute them for crimes, it is impossible to perform the *Munaf* analysis.  Indeed, the Court could only determine whether *Munaf* applied to a given case if it had advance notice of a transfer and information regarding the destination country, which is precisely what Petitioners seek.

The Government also relies heavily on the statement in *Munaf* that "it is for the political branches, not the judiciary, to assess practices in foreign countries" with respect to determining

24

whether transfer is appropriate.  128 S. Ct. at 2225.  Broad interpretation of this statement is

unwarranted.  *See id.* at 2213 ("Under circumstances *such as those presented here*, … habeas

corpus provides petitioners with no relief." (emphasis added)).  This general premise—which is

at most federal common law—is trumped by the statutory obligation to examine whether

someone will be tortured upon transfer.  *See* Foreign Affairs Reform and Restructuring Act of

1998 (FARRA), Pub. L. No. 105-277, Div. G, tit. XXII, § 2242(a), 112 Stat. 2681-761, 2681-822

(codified as a note to 8 U.S.C. § 1231) (prohibiting transfers where there are substantial grounds

for believing torture will occur).[15]  Indeed, the Government's interpretation of *Munaf* is at odds

with the numerous judicial determinations that an alien may not be deported to a country where

he would likely face persecution.  *See, e.g.*, *Sok v. Mukasey*, 526 F.3d 48, 54-56 (1st Cir. 2008)

(finding that the Immigration Judge erred in concluding that the petitioner was not likely to face

persecution if sent back to Cambodia and therefore remanding to the agency for further

proceedings).

    Equally important, *Munaf* did not categorically prohibit injunctions against transfer; it

expressly reserved judgment on the "extreme case in which the Executive has determined that a

detainee [in United States custody] is likely to be tortured but decides to transfer him anyway."

*Id.* at 2226; *see also id.* at 2228  (Souter, J., concurring) ("extend[ing] the caveat to a case in

which the probability of torture is well documented, even if the Executive fails to acknowledge

it").  If the Government were not required to give notice of where and under what conditions it

---

[15] FARRA is enforceable in habeas.  FARRA establishes a statutory prohibition against
transfer of a person to a country in which there are "substantial grounds" for believing someone
will be tortured.  FARRA, § 2242(a).  The writ of habeas corpus extends to claims that a person
is in custody in violation of the laws of the United States.  28 U.S.C. § 2241(c)(3).  A person in
custody of the United States may therefore challenge his detention and related transfer in
violation of FARRA just as he would the violation of any other statute.  *See Saint Fort v.
Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003) ("FARRA and the regulations are now the positive
law of the United States, and, as such, are cognizable under habeas.").

intended to transfer Petitioners, and if jurisdiction is lost upon transfer, then such relief could never be realized, no matter how extreme the Government's conduct. The *Munaf* Court was not presented with and did not decide whether the United States can transfer a petitioner to a place where torture is a realistic possibility. Nor did it address the relief sought here—mere notice.

### E. Cases Should Be Adjudicated Promptly Whenever A Prisoner Is In Custody, Regardless Of Whether The Government Has "Cleared" Him

The Court should not give lower priority to cases where the Petitioner has been approved for release or transfer by a Government Administrative Review Board (ARB). In the unlikely event that these cases do not naturally fall into sequence, the Court should give priority to prisoners who have been in U.S. custody for the longest time. Indeed, the Government itself has proposed a similar sequencing scheme before Judge Hogan, where it suggested sequencing cases by when an individual arrived at Guantanamo or, with some exceptions, by when cases were docketed. Letter from Gregory G. Katsas to Chief Judge Lamberth and Judge Hogan, June 30, 2008, at 3 (attached as Exhibit F).

The Government notably does not dispute that ARB clearance bears no apparent relation to likelihood of transfer from Guantanamo.[16] The declarations the Government provides are not to the contrary: they state only that detainees "have been transferred" or "may be transferred" after ARB clearance. Hodgkinson Decl. ¶ 3; Williamson Decl. ¶ 3. The declarations do not deny that non-cleared detainees have also been transferred from Guantanamo, and they do not suggest that cleared Petitioners are more likely to be transferred quickly than non-cleared detainees. Accordingly, even the Government's own evidence fails to support the claim in its

---

[16] The Director of the office responsible for ARBs admitted that it was "incorrect" to suggest that ARB determinations were the "most important factor" in a prisoner's transfer. Farah Stockman, *Some Cleared Guantanamo Inmates Stay in Custody*, Boston Globe, Nov. 19, 2007, *available at* http://www.boston.com/news/nation/articles/2007/11/19/some_cleared_ guantanamo_inmates_stay_in_custody/.

brief (at 48) that there is a "realistic chance" that ARB-cleared Petitioners' cases will become moot, and the Government's own historical practice refutes it entirely.

The Government's bald assertion that it is "actively seeking to release or transfer [cleared] petitioners" (Br. 48) is likewise utterly unsupported. The Government's declarations nowhere suggest that resettlement efforts are being made—"actively" or otherwise—on behalf of all cleared prisoners. The declarations do not indicate when the Government starts the process of negotiating transfer, do not indicate whether the Government is actually taking all available steps to transfer the cleared Petitioners before this Court, and do not even state that the Government *wishes* to transfer these cleared Petitioners quickly. On the contrary, as Petitioners showed, the Government's attempts to negotiate transfer have been decidedly slow. *See* Pet. Opening Mem. 15 (demonstrating that the Yemeni Ministry of Foreign Affairs had yet to be notified of a Yemeni Petitioner's clearance months after it occurred, and that a cleared Algerian Petitioner has not been transferred despite the recent transfer of two Algerian detainees—one who, to counsel's knowledge, was not ARB-cleared). An order for release would spur the Government to take action and impose accountability, rather than leaving transfer of cleared prisoners to the Government's whim.[17]

An order for release from this Court would be of great practical significance, despite the Government's arguments to the contrary. As a preliminary matter, all ARB-cleared Petitioners before this Court have been "cleared for transfer," where the Government nonetheless requires

---

[17] The Government's reliance on *Al-Anazi v. Bush*, 370 F. Supp. 2d 188 (D.D.C. 2005) is accordingly misplaced. *Al-Anazi* did not even consider, let alone hold, that ARB-cleared persons did not need prompt habeas hearings. Moreover, *Al-Anazi* proceeded on the assumption that the Government was "taking steps to transfer [the petitioners] out of United States control." *Id.* at 196. Here, however, Petitioners have shown strong evidence that ARB clearance is irrelevant to transfer and does not lead to prompt steps to secure release, and the Government has provided no evidence to the contrary. Accordingly, *Al-Anazi* provides no basis for delaying resolution of any case before this Court.

the Petitioners continued detention in the receiving country.[18] As habeas relief is about the legality of continued detention, a habeas court's decision to order the release of a "cleared for transfer" Petitioner would affect the Government's course of action with respect to that "cleared for transfer" Petitioner in at least one significant regard—the Government would not seek continued detention as a condition for transfer. Therefore, a habeas court's release order would accelerate the repatriation of "cleared for transfer" Petitioners. An order for release for any Petitioner would compel the Government to pursue all available avenues for release, including lessening conditions placed on receiving countries, seeking release in a third country, or arranging for release into the United States.

Finally, Petitioners do not seek disclosure of sensitive or confidential information related to negotiations with foreign governments. Periodic reporting on why cleared detainees remain detained is appropriate, but such reporting would not require the release of sensitive information.

---

[18] "Cleared for transfer" status is distinct from "cleared for release" status. The government does not seek continued detention in the receiving country as a condition of release from Guantanamo for those detainees who are "cleared for release."

Respectfully submitted,

/s/ Richard A. Grigg
Richard A. Grigg
Spivey & Grigg
48 East Avenue
Austin, TX 78701
(512) 474-6061

*Counsel for Petitioner Obaydullah in No. 08-1173*

/s/ Ramzi Kassem
Ramzi Kassem
Michael J. Wishnie
  *Supervising Attorneys*
Jennifer Hojaiban
Brian K. Mahanna
Joseph A. Pace
  *Law Student Interns*
Allard K. Lowenstein International Human
Rights Clinic
National Litigation Project
Yale Law School
127 Wall Street
New Haven, CT 06511
(203) 432-0138

*Counsel for Petitioner Ameur in No. 05-573*

/s/ Billy H. Nolas
Billy H. Nolas, Assistant Federal Defender
(*admitted*)
Maureen Rowley, Chief Federal Defender
Matthew Lawry
Shawn Nolan
Mark Wilson
Brett Sweitzer
Assistant Federal Defenders
Federal Community Defender Office for
The Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
 (215) 928-0520
*Counsel for Petitioner Rumi* in No. 06-619

 /s/ Allyson J. Portney
Stephen H. Oleskey (*admitted pro hac vice*)
Robert C. Kirsch (*admitted pro hac vice*)
Mark C. Fleming (*admitted pro hac vice*)
Gregory P. Teran (*admitted pro hac vice*)
Allyson J. Portney (*admitted pro hac vice* )
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
 Boston, MA  02109
(617) 526-6000

Seth P. Waxman (*admitted*)
Paul Wolfson *(admitted)*
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6800

Douglas F. Curtis *(admitted)*
Paul M. Winke (*admitted pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY  10022
(212) 230-8800

*Counsel for Petitioners Boumediene, et al.,
in No. 04-1166*

/s/ Julia C. Symon
Julia C. Symon (DC Bar No. 456828)
Clifford Chance US LLP
2001 K Street NW
Washington, DC  20006
(202) 912-5000

James M. Hosking
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
(212) 878-8000

*Counsel for Petitioners Ghazy*, *et al. in No.
05-2223*

/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender
101 SW Main Street  Suite 1700
Portland, Oregon  97204
503-326-2123

*Counsel for Petitioner Al Ginco in No. 05-1310*

/s/ Zachary Katzenlson
Zachary Katzenlson
Reprieve
PO Box 52742
London EC4P 4WS
United Kingdom
011 44 207 353 4640

*Counsel for Petitioners  Sliti et al. in No. 05-429 and Petitioner Al Shurafa in Kabir in No. 05-0431*

/s/ Shereen J. Charlick
Shereen J. Charlick
Steven F. Hubachek
Ellis M. Johnston, III
Stephen D. Demik
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California  92101-5008
(619) 234-8467

*Counsel for Petitioner Al Bihani in No. 05-1312*

/s/ Brian Mendelsohn
Brian Mendelsohn (Pursuant to LcvR 83.2)
Matthew Dodge
Federal Defender Program, Inc.
Suite 1700, The Equitable Building
100 Peachtree Street, N.W.
Atlanta, Georgia  30303
(404) 688-7530

*Counsel for Petitioner Al-Khaiy in No. 05-1239*

August 19, 2008

## **CERTIFICATE OF SERVICE**

I, Allyson J Portney, hereby certify that on August 19, 2008 I electronically filed and served the foregoing PETITIONERS' JOINT REPLY MEMORANDUM REGARDING HABEAS PROCEDURES.


/s/ Allyson Portney_____
Allyson Portney

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BOUMEDIENE v. BUSH | Civil Case No. 04-1166 (RJL) |
| SLITI v. BUSH | Civil Case No. 05-0429 (RJL) |
| KABIR v. BUSH | Civil Case No. 05-0431 (RJL) |
| MAMMAR v. BUSH | Civil Case No. 05-0573 (RJL) |
| AL-KHAIY v. BUSH | Civil Case No. 05-1239 (RJL) |
| AL GINCO v. BUSH | Civil Case No. 05-1310 (RJL) |
| AL BIHANI v. BUSH | Civil Case No. 05-1312 (RJL) |
| GHAZY v. BUSH | Civil Case No. 05-2223 (RJL) |
| RUMI v. BUSH | Civil Case No. 06-0619 (RJL) |
| OBAYDULLAH v. BUSH | Civil Case No. 08-1173 (RJL) |

## <u>DECLARATION OF ROBERT C. KIRSCH</u>

I, Robert C. Kirsch, declare pursuant to 28 U.S.C. § 1746:

1. I am Senior Partner at the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts, 02109. My office telephone is (617) 526-6779. I am counsel for Petitioners in 04-cv-1166.

2. I am admitted to the bars of the Commonwealth of Massachusetts and the State of New Hampshire.

3. On August 12, 2008, at 2:58 p.m., my partner Gregory P. Teran sent an e-mail to Nicholas Oldham and Paul Ahern at the United States Department of Justice enclosing a so-called "*Vaughn* Index" of documents identified and Bates-numbered by the Government in a litigation under the Freedom of Information Act, Oleskey v. Dep't of Defense, No. 05-

10735-RGS (D. Mass).  Mr. Teran's e-mail and the attached index is attached as Exhibit A.

4.  In his e-mail, Mr. Teran asked the Government to produce the documents listed on the *Vaughn* Index to security-cleared counsel at the Secure Facility no later than August 22, 2008.

5.  On August 14, 2008, at 9:43 a.m., Mr. Teran sent a second e-mail to Nicholas Oldham and Terry Henry at the Department of Justice.  Mr. Teran's second e-mail is attached as Exhibit B.

6.  Mr. Teran's second e-mail asked the Government to confirm that, pursuant to its the representation voluntary agreement as stated in its brief dated August 12, it would review the documents reflected on the *Vaughn* Index and produce any exculpatory information therein.  Mr. Teran reiterated the request that the *Vaughn* Index materials be produced to counsel at the Secure Facility no later than August 22, 2008.  Mr. Teran requested that the Government respond no later than close of business on August 18, 2008.

7.  On August 12, 2008, at 6:00 a.m., I sent an e-mail to Nicholas Oldham, Judry Subar, Terry Henry, Andrew Warden, and Paul Ahern at the Department of Justice requesting, inter alia, that the Government stipulate to certain facts in order to avoid the need to establish them through discovery.  I inquired whether the Government would stipulate that (1) the arrest of five of our clients by Bosnian authorities in 2001 was caused solely by the demand of the United States, and (2) the hand over of our six clients in 2002 resulted from demands of the United States, including communications by U.S. military personnel that they use all available means, including the use of force, if the Bosnian government did not turn over the six to the U.S. This e-mail is attached as Exhibit C.

8.  On August 18, 2008, at 12:00 a.m.,  Nicholas Oldham responded to both Mr. Teran's e-mails of August 12 and 14, and my e-mail of August 12, 2008.   Mr. Oldham wrote that the Government would not agree to the stipulations proposed in my August 12, 2008 e-mail.  Further, Mr. Oldham wrote that with respect to the FOIA documents the Government's position regarding its preparation of factual returns and production of exculpatory materials was contained in the briefs the Government filed with Judge Leon and Judge Hogan. Mr. Oldham's e-mail is attached as Exhibit D.

I hereby declare under the penalty of perjury that the foregoing is true and correct. Executed at Boston, Massachusetts on August 19, 2008.

_____/s/ Robert C. Kirsch_____
Robert C. Kirsch
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526-6000

# EXHIBIT A

**Kirsch, Rob**

| | |
|---|---|
| **From:** | Teran, Gregory |
| **Sent:** | Tuesday, August 12, 2008 2:58 PM |
| **To:** | Kirsch, Rob; 'Oldham Nicholas (Nicholas.Oldham@usdoj.gov)' |
| **Cc:** | 'Subar, Judry (CIV)'; 'terry.henry@usdoj.gov'; 'Andrew.Warden@usdoj.gov'; 'Paul Ahern (paul.ahern@usdoj.gov)'; Oleskey, Stephen; Wolfson, Paul; Winke, Paul |
| **Subject:** | RE: Boumediene 04-1166 |
| **Attachments:** | 6780650_1 vaughn.pdf |

Following up on item I.2 of our Status Report and Rob Kirsch's email this morning, please find attached a table compiling the Government's *Vaughn* index entries for approximately 870 withheld documents in the FOIA litigation that appear highly relevant to the habeas proceedings and likely to contain exculpatory information.

We request that these documents be made available for review by petitioners' counsel on or before August 22, and no later than the filing of the anticipated motions for leave to amend. Cleared counsel would agree to review them in the secure facility under the appropriate controls set forth in the protective order.

Gregory P. Teran
WilmerHale
60 State Street
Boston, MA 02109 USA
617-526-6574 (t)
617-526-5000 (f)
gregory.teran@wilmerhale.com

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately -- by replying to this message or by sending an email to postmaster@wilmerhale.com -- and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** Kirsch, Rob
**Sent:** Tuesday, August 12, 2008 6:00 AM
**To:** Oldham Nicholas (Nicholas.Oldham@usdoj.gov)
**Cc:** Subar, Judry (CIV); terry.henry@usdoj.gov; Andrew.Warden@usdoj.gov; Paul Ahern (paul.ahern@usdoj.gov); Oleskey, Stephen; Wolfson, Paul; Teran, Gregory; Winke, Paul
**Subject:** Boumediene 04-1166

Nick

This follows our telephone discussion on August 11.

In connection with the government's review of documents relevant to this case, and in particular, in connection with the position taken by the government regarding its willingness to provide exculpatory documents, we suggest you include the materials reviewed by the government in the FOIA litigation we have pending in the District of Massachusetts. Mark Quinlivan is defending that case and should be able to provide your team with access to the universe of documents.

We have learned potential witnesses from Bosnia expect to be in the US this month. Depending on the

substance of the materials the government submits with its motion to amend, we may propose to depose one or more of those witnesses while they are in the US.  Will the government oppose that action?

Will the government agree and stipulate that: (1) the arrest of five of our clients by Bosnian authorities in 2001 was caused solely by the demand of the US; and (2) the hand over of our 6 clients in 2002 resulted from demands of the US, including communications by US military personnel that they would use all available means, including the use of force, if the Bosnian government did not turn over the six to the US?

This also confirms that we are interested in installing a secure telephone connection here in our Boston office, and perhaps elsewhere, should that prove economically feasible, and, we would consider the use of other secure lines of communication that might be available in Boston, including through the office of the US Attorney or the FBI.

Finally - if you, and or Terry and Jud, etc., have time before or after our conference tomorrow, we are prepared to begin to share with you our view as to how this case is developing.

Best Regards,

Rob


Robert C. Kirsch
WilmerHale
60 State Street
Boston, MA 02109 USA
+1 617 526 6779 (t)
+1 617 526 5000 (f)
+1 617 571 6021 (c)
rob.kirsch@wilmerhale.com

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately -- by replying to this message or by sending an email to postmaster@wilmerhale.com -- and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

| Bates # | Release | Date | Originator | Subject CITF | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 01103-1105 | Deny in Full | 3/29/2002 | CITF | Interview of Boumedienne | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Boumedienne by CITF and FBI agents. Discusses travels and associations of detainee. B(2), B(6), B(7)/a)(c). **CITF:** B(2)-1; B(7)(a), B(6)/7(c)-1, 3 |
| 01106-1109 | Deny in Full | 4/30/2002 | CITF | Interview of Nechle | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Nechle by CITF and FBI agents. Covers Background, education, travels, and associations of detainee. B(6), B(7)/a)(c). **CITF:** B(2)-1; B(6)/7(c)-1, 3 |
| 1114 | Deny in Full | 5/11/2002 | CITF | Interview of Nechle | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Nechle by CITF and FBI agents. B(6), B(7)/a)(c) **CITF:** B(2)-1,B(6)/B(7)(c)-1 |
| 1115 | Deny in Full | 5/15/2002 | CITF | Interview of Boumedienne | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Boumedienne by CITF and FBI agents. B(2), B(6), B(7)/a)(c) **CITF:** B(2)-1,B(6)/B(7)(c)-1 |
| 01116-1117 | Deny in Full | 5/22/2002 | CITF | Interview of source | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source: includes questions posed concerning requesters. B(2), B(6), B(7)/a)(c) **CITF:** B(2)-2, B(2)-1, B(6)/B(7)(c)-1,-2 |
| 01118-1119 | Deny in Full | 5/18/2002 | CITF | Interview of Belkacem | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Boumedienne by CITF agent concerning NGOs and various individuals of interest to CITF's investigation. B(2), B(6), B(7)/a)(c)**CITF:** B(2)-1, B(6)/B(7)(c)-1, -2 |
| 1120 | Deny in Full | 5/23/2002 | CITF | Interview of Boumedienne | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Boumedienne by NCIS agent for CITF. B(2), B(6), B(7)/a)(c) **CITF:** B(2)-1, B(6).B(7)(c)-1 |
| 01121-1124 | Deny in Full | 5/28/2002 | CITF | Interview of Nechle | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Nechle by AFOSI agent for CITF concerning NGOs, knowledge concerning persons of interest to CITF. B(2); B(6), B(7)/a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1 |
| 01125-1132 | Deny in Full | 7/29/2002 | CITF | Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others. B(2); B(6), B(7)/a)(c) **CITF:** B(2)-1,-2, B(6)/B(7)(c)-1,(B(7)(c)-2,B(7)(c)-3 |
| 01133-1135 | Deny in Full | 8/19/2002 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source: includes questions posed concerning requesters. B(2), B(6), B(7)/a)(c) **CITF:** B(2)-1, (B)(2)-2,B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3 |
| 01136-1139 | Deny in Full | 8/20/2002 | CITF | CITF interview of source | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF and FBI agents; includes questions posed concerning requesters. B(2), B(6), B(7)/a)(c) **CITF:** B(2)-1, B(2)-2, B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3 |
| 1140 | Deny in Full | 8/24/2002 | CITF | Interview of Ait Idir | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Ait Idir by a CITF agent concerning association with individuals and certain NGOs/organizations. B(2) B(6), B(7)/a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(7)(c)-2 |
| 1141 | Deny in Full | 8/24/2002 | CITF | Interview of Ait Idir | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Ait Idir by a CITF agent. B(2) B(6), B(7)/a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1 |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 1142 | Deny in Full | 8/24/2002 | CITF | Interview of Ait Idir | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Ait Idir a CITF agent. B(2); B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1 |
| 1143 | Deny in Full | 9/4/2002 | CITF | Interview of Boumedienne | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Boumedienne by CITF agent concerning person of interest to a CITF investigation. B(6), B(7)/(a)(c) **CITF:** B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 01144-01148 | Deny in Full | 9/23/2002 | CITF | CITF Report of Investigative Activity | FOUO/LES. Interview of source by CITF agents concerning associations with various individuals of interest to CITF. B(2); B(6); B7(a)(c) **CITF:** B(2)-2, B(2)-1, B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(2)-3 |
| 01149-1150 | Deny in Full | 10/24/2002 | CITF | Interview of Nechle | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Nechle by CITF agent concerning NGOs, knowledge concerning persons of interest to CITF.  B(2); B(6), B(7)/(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1151 | Deny in Full | 11/4/2002 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Lahmar by CITF agent concerning person of interest to a CITF investigation. B(2); B(6), B(7)/(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1152 | Deny in Full | 11/4/2002 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Boudella by CITF agent; shown photos of person of interest to CITF investigators.  CITF investigation. B(2); B(6), B(7)/(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1153 | Deny in Full | 11/4/2002 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Boudella by CITF agent; shown photos of person of interest to CITF investigators.  CITF investigation. B(2); B(6), B(7)/(a)(c)**CITF:**B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1154 | Deny in Full | 11/4/2002 | CITF | Interview of Nechle | UNCLASSIFIED/Law Enforcement Sensitive. Interview of NECHLE by CITF agent; shown photos of person of interest to CITF investigators.  CITF investigation. B(2); B(6), B(7)/(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 01155-01159 | Deny in Full | 12/3/2002 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others. B(2); B(6), B(7)/(a)(c) **CITF:** B(2)-1,-2, B(6)/B(7)(c)-1,(B)/(7)(c)-2,B(7)(c)-3 |
| 01160-01162 | Deny in Full | 12/10/2002 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others. B(2); B(6), B(7)/(a)(c) **CITF:** B(2)-1,-2, B(6)/B(7)(c)-1,(B)/(7)(c)-2,B(7)(c)-3 |
| 01166-01168 | Deny in Full | 12/13/2002 | CITF | Activity Contents | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Belkacem by CITF agent concerning travels, activities, and associations with certain individuals.    B(2), B(6), B(7)/(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 01169-01173 | Deny in Full | 5/26/2003 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others; source questioned about one or more of the requesters. B(2); B(6), B(7)/(a)(c) **CITF:** B(2)-1, B(2) |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 01179-01188 | Deny in Full | 11/22/2003 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others; source questioned about one or more of the requesters. B(2); B(6), B(7)(a)(c) CITF: B(2)-1, B(2) |
| 01189-01199 | Deny in Full | 11/22/2003 | CITF | CITF Form 40 | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others; source questioned about one or more of the requesters. B(2); B(6), B(7)(a)(c) CITF: B(2)-1, B(2) |
| 01200-01210 | Deny in Full | 1/7/2004 | CITF | CITF Form 40 | UNCLASSIFIED/Law Enforcement Sensitive. Summary of information developed on person of interest to CITF; includes information obtained from interview of one of the requesters. B(2); B(6), B(7)(a)(c) CITF: B(2)-1, B(2)-2, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2. |
| 01211-01221 | Deny in Full | 1/7/2004 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others; source questioned about one or more of the requesters. B(2); B(6), B(7)(a)(c) CITF: B(2)-1, B( |
| 01222-01233 | Deny in Full | 1/7/2004 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others; source questioned about one or more of the requesters. B(2); B(6), B(7)(a)(c) CITF: B(2)-1, B(2) |
| 01234-01244 | Deny in Full | 11/22/2003 | CITF | CITF Form 40 | UNCLASSIFIED/Law Enforcement Sensitive. Summary of information developed on person of interest to CITF; includes information obtained from interview of one of the requesters. B(2); B(6), B(7)(a)(c) CITF: B(2)-1, B(2)-2, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2. |
| 01245-01246 | Deny in Full | 11/10/2004 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others; source questioned about one or more of the requesters. B(2); B(7)(a)(c) CITF: B(2)-1, B(2)- |
| 1248 | Deny in Full | 8/23/2002 | CITF | Interview Summary | UNCLASSIFIED/Law Enforcement Sensitive. Summary of interview of Ait Idir by a CITF agent concerning association with certain individuals of interest to CITF's investigation. B(2) B(6), B(7)(a)(c) CITF: B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 01249-01260 | Deny in Full | 7/25/2005 | CITF | CITF Investigative Summary Report | UNCLASSIFIED/Law Enforcement Sensitive. Summary of message traffic and status of investigative leads involving investigation of Belkacem; potential offenses and witnesses; personal information, travel and contacts; . B(2); B(6), B(7)(a)(c) CITF: B(2)-1, |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 01261-01263 | Deny in Full | 8/16/2006 | CITF | CITF Investigative Summary | UNCLASSIFIED/Law Enforcement Sensitive. Summary of investigation of Lahmar outlining activities and associations with certain individuals, potential witnesses, and evidence. B(2); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-3, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 01264-01266 | Deny in Full | 8/17/2006 | CITF | CITF Investigative Summary | UNCLASSIFIED/Law Enforcement Sensitive. Summary of investigation of Belkacem outlining activities and associations with certain individuals, potential witnesses, and evidence. B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-3, B(6)/B(7)(c)-1, B(6)/B(7)( |
| 01267-01282 | Deny in Full | 3/1/2002 | CITF | Prosecution Memorandum - Ait Idir and Lahmar | UNCLASSIFIED/Law Enforcement Sensitive. Memorandum outlining information on Ait Idir and Lahmar, travel, training, terrorist activities and connections. B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-3, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(5) |
| 01283-01284 | Deny in Full | 4/12/2002 | CITF | Prosecution Memorandum - Lahmar | UNCLASSIFIED/Law Enforcement Sensitive. Memorandum outlining information on Lahmar, travel, training, terrorist activates and connections. B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-3, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(5) |
| 01285-01292 | Deny in Full | 4/15/2002 | CITF | Prosecution Memorandum - Nechle | UNCLASSIFIED/Law Enforcement Sensitive. Memorandum outlining information on Nechle, travel, training, terrorist activities and connections. B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-3, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(5) |
| 01293-01302 | Deny in Full | 2/20/2002 | CITF | Prosecution Memorandum - Boudella al Hajj | UNCLASSIFIED/Law Enforcement Sensitive. Memorandum outlining information on al Hajj, travel, training, terrorist activities and connections. B(2); B(5); B(6); B(7)/a)(c) **CITF:** B(2)-1, B(2)-3, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(5) |
| 01303-01311 | Deny in Full | 2/26/2002 | CITF | Prosecution Memorandum - Boumedienne | UNCLASSIFIED/Law Enforcement Sensitive. Memorandum outlining information on Boumedienne, travel, training, terrorist activities and connections. B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-3, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(5) |
| 01312-01328 | Deny in Full | 4/16/2002 | CITF | Prosecution Memorandum - Belkacem | UNCLASSIFIED/Law Enforcement Sensitive. Memorandum outlining information on Belkacem, travel, training, terrorist activities and connections. B(2); B(5); B(6); B(7)(a)(c)(e) **CITF:** B(2)-1, B(2)-3, B(6)-B(7)(c)-1, B(6)/B(7)(c)-2, B(5), B(7)(e) |
| 01329-01351 | Deny in Full | 3/15/2002 | CITF | Prosecution Memorandum - Boumedienne | UNCLASSIFIED/Law Enforcement Sensitive. Memorandum outlining information on Boumedienne, travel, training, terrorist activities and connections. B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-3, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(5) |
| 01353-01355 | Deny in Full | 5/31/2002 | CITF | E-mail concerning Belkacem | UNCLASSIFIED/Law Enforcement Sensitive. E-mail exchange between CITF agents and intelligence officers at JAC concerning Belkacem and the investigation. B(2); B(5); b(6); B(7)(a)(c) **CITF:** B(2)-4, B(6)/B(7)(c)-1, B(5) |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 01356-01358 | Deny in Full | 5/31/2002 | CITF | E-mail concerning Belkacem | UNCLASSIFIED/Law Enforcement Sensitive. E-mail exchange between CITF agents and intelligence officers at JAC concerning Belkacem and the investigation. B(2); B(5); b(6); B(7)(a)(c)**CITF:** B(2)-4, B(6)/B(7)(c)-1, B(5) |
| 01359-01361 | Deny in Full | 4/25/2002 | CITF | E-mail concerning Belkacem and Algerian 6 | UNCLASSIFIED/Law Enforcement Sensitive. E-mail exchange between CITF agents and intelligence officers at JAC concerning Belkacem and the Algerian 6. B(2); B(5); b(6); B(7)(a)(c) **CITF:** B(2)-4, B(6)/B(7)(c)-1, B(5) |
| 1362 | Deny in Full | 5/15/2002 | CITF | E-mail regarding Bosnian 6 | UNCLASSIFIED/Law Enforcement Sensitive. E-mail exchange between CITF agents and intelligence officers at JAC concerning the investigation of Bosnian 6. B(2); B(5); b(6); B(7)(a)(c) **CITF:** B(2)-4, B(6)/B(7)(c)-1, B(5) |
| 1363 | Deny in Full | 11/15/2002 | CITF | E-Mail regarding sources | UNCLASSIFIED/Law Enforcement Sensitive. E-mail concerning information on sources and forwarding information pertinent to the investigation of the requesters. B(2); B(5); b(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-4, B(6)/B(7)(c)-1.B(6)/B(7)(c)-2, B(5) |
| 01372-01373 | Deny in Full | 6/6/2002 | CITF | E-mail concerning Telephone Conversation regarding Belkacem | UNCLASSIFIED/Law Enforcement Sensitive. Internal CITF e-mail concerning investigative efforts by CITF concerning Belkacem. B(2); B(5); b(6); B(7)(a)(c).**CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(5) |
| 1375 | Deny in Full | 7/30/2002 | CITF | E-mail forwarding information obtained from 10006 | UNCLASSIFIED/Law Enforcement Sensitive. Internal CITF e-mail forwarding information on 10006. B(2); B(5); b(6); B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(5) |
| 01376-01379 | Deny in Full | Undated | CITF | PowerPoint Presentation concerning Algerian 6 | UNCLASSIFIED/Law Enforcement Sensitive. CITF presentation on status of certain aspects of and leads in the investigation of the requesters. B(2); b(6); B(7)(a)(c) **CITF:** B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 01380-01381 | Deny in Full | 7/26/2003 | CITF | Request for assistance to 902 Military Intelligence Brigade | UNCLASSIFIED/Law Enforcement Sensitive. Request to 902 MI to provide any information they have pertinent investigation of requesters and others. b(2); b(6); b(7(a)(c) **CITF:** B(2)-1, B(2)-4, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 01398-01399 | Deny in Full | 8/16/2005 | CITF | Request for Assistance to the National Imagery & Mapping Agency | UNCLASSIFIED/Law Enforcement Sensitive. Request to NIMA for all information in NIMA's possession concerning requesters. B(2); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-4, B(6)/B(7)(c)-1 |
| 01405-01406 | Deny in Full | 8/16/2005 | CITF | Request for Assistance to DoD Computer Forensic Laboratory Analysis Branch | UNCLASSIFIED/Law Enforcement Sensitive. Request for computer media analysis of hard drives for five of the requesters. B(2); B(7)(a)(c) **CITF:** B(2)-1, B(2)-4, B(6)/B(7)(c)-1 |
| 1407 | Deny in Full | 8/16/2005 | CITF | Request for Assistance to TBD | UNCLASSIFIED/Law Enforcement Sensitive. Request for item seized by Bosnian Police from Belkacem. B(2); B(6); B(7)(a)(c)**CITF:** B(2)-1, B(2)-2, B(2)-4, B(6)/B(7)(c)-1 |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 1425 | Deny in Full | 10/19/2004 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Nechle.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1426 | Deny in Full | 12/22/2004 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Lahmar.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1427 | Deny in Full | 11/29/2004 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Lahmar.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1428 | Deny in Full | 7/1/2005 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Lahmar.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1429 | Deny in Full | 5/1/2005 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Lahmar.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1430 | Deny in Full | 1/31/2005 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Lahmar.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1431 | Deny in Full | 9/7/2004 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Nechle.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1432 | Deny in Full | 7/1/2005 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Nechle.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1433 | Deny in Full | 5/1/2005 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Nechle.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1 |
| 1434 | Deny in Full | 10/19/2004 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Nechle.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1435 | Deny in Full | 12/22/2004 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Nechle.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1436 | Deny in Full | 11/29/2004 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Nechle.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1437 | Deny in Full | 1/31/2005 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive.  Case review prepared by CITF agent concerning investigation of Nechle.  B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 1438 | Deny in Full | 7/1/2005 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive. Case review prepared by CITF agent concerning investigation of Ait Idir. B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1439 | Deny in Full | 5/1/2005 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive. Case review prepared by CITF agent concerning investigation of Ait Idir. B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1440 | Deny in Full | 10/19/2004 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive. Case review prepared by CITF agent concerning investigation of Ait Idir. B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1441 | Deny in Full | 1/31/2005 | CITF | 30 Day Case Review | UNCLASSIFIED/Law Enforcement Sensitive. Case review prepared by CITF agent concerning investigation of Ait Idir. B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 01442-01444 | Deny in Full | Undated | CITF | CITF Investigative Summary | UNCLASSIFIED/Law Enforcement Sensitive. Investigative summary of relationships to Ait Idir. Summary of the activities of Ait Idir as determined through investigative work, relevance of evidence collected, key associations, and investigative efforts purs |
| 01445-01452 | Deny in Full | Undated |  | CITF Investigative Summary | UNCLASSIFIED/Law Enforcement Sensitive. Investigative summary of relationships to Boudella. Summary of the activities of Boudella as determined through investigative work, relevance of evidence collected, key associations, and investigative efforts purs |
| 01453-01456 | Deny in Full | Undated | CITF | CITF Investigative Summary | UNCLASSIFIED/Law Enforcement Sensitive. Investigative summary of relationships to Boudella. Summary of the activities of Boudella as determined through investigative work, relevance of evidence collected, key associations, and investigative efforts purs |
| 01457-01460 | Deny in Full | Undated | CITF | CITF Investigative Summary | UNCLASSIFIED/Law Enforcement Sensitive. Investigative summary of relationships to Nechle. Summary of the activities of Nechle as determined through investigative work, relevance of evidence collected, key associations, and investigative efforts pursued. |
| 1461 | Deny in Full | Undated | Unknown | Cell text message | UNCLASSIFIED/Law Enforcement Sensitive. Cell phone text message from 10006 to another person. B(6); B(7)(a)(c) **CITF:** B(6)/B(7)(c)-2 |
| 01503-01505 | Deny in Full | Undated | CITF | Agent Case Notes | UNCLASSIFIED/Law Enforcement Sensitive. Agent case notes in investigation of Nechle. B(2); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3 |
| 01506-01520 | Deny in Full | 3/25/2002 | CITF | Agent Case Notes | UNCLASSIFIED/Law Enforcement Sensitive. Agent case notes in investigation of Lahmar B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3 |
| 1521 | Deny in Full | Undated | Unknown | IRAQI Report | UNCLASSIFIED/Law Enforcement Sensitive. Summary of analyst activity on 10001. 10001 shown photograph of individual of interest to CITF. B(2); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3 |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|-----------|---------|--------------------------------------|
| 01522-01523 | Deny in Full | Undated | CITF | Summary of Law Enforcement Interviews | UNCLASSIFIED/Law Enforcement Sensitive. Summary of law enforcement interviews conducted on Belkacem, Lahmar, Nechle, Boumedienne, and other individuals of interest to CITF. B(2); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(6)/B(7)( |
| 01524-01525 | Deny in Full | Undated | CITF | Agent Case Notes | UNCLASSIFIED/Law Enforcement Sensitive. Agent case notes in investigation of Lahmar B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3 |
| 1526 | Deny in Full | 10/17/2002 | CITF | Agent interview preparation notes | UNCLASSIFIED/Law Enforcement Sensitive. Agent preparation notes for interview of source; interview seeks information on some of the requesters and other detainees of interest to CITF investigations. B(2); B(5); B(6); B(7)(a)(c)(e) **CITF:** B(2)-1, B(6)/B |
| 1527 | Deny in Full | Undated | CITF | Lahmar's Associates | UNCLASSIFIED/Law Enforcement Sensitive. Investigative summary of associates to Lahmar. B(2); B(6); B(7)(a)(c) **CITF:** B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 01531-01534 | Deny in Full | 4/1/2005 | CITF | Summary of information | UNCLASSIFIED/Law Enforcement Sensitive. Summary of information developed on Boudella and, leads to pursue. B(2); B(6); B(7)(a)(c) **CITF:** B(2)-5, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3 |
| 01539-01540 | Deny in Full | Undated | Unknown | Sabir Lahmar's Travels | UNCLASSIFIED/Law Enforcement Sensitive. Summary of Lahmar's travels and associations with various organizations/NGOs; summary of possible charges. B(5); B7(a) **CITF:** B(5). |
| 01541-01549 | Deny in Full | Undated | Unknown | Case Summary on Nechle | UNCLASSIFIED/Law Enforcement Sensitive. Summary of the activities of Nechle as determined through investigative work, relevance of evidence collected, key associations, and investigative efforts pursued. B(2); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-3, B( |
| 1552-1557 | Deny in Full | Undated | Unknown | Case Summary on Boudella | UNCLASSIFIED/Law Enforcement Sensitive. Summary of the activities of Boudella as determined through investigative work, relevance of evidence collected, key associations, and investigative efforts pursued. B(2); B(5) B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2) |
| 01558-1565 | Deny in Full | Undated | Unknown | Case Summary on Ait Idir | UNCLASSIFIED/Law Enforcement Sensitive. Summary of the activities of Ait Idir as determined through investigative work, relevance of evidence collected, key associations, and investigative efforts pursued. B(2); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-3, B |
| 1566 | Deny in Full | Undated | Unknown | Questions for Lahmar | UNCLASSIFIED/Law Enforcement Sensitive. Questions prepared by case agent for Lahmar concerning associations with individuals and NGOs. B(2); B(6); B(7)(a)(c)(e) **CITF:** B(6)/B(7)(c)-2, B(6)/B(7)(c)-3. B(7)(e) |
| 1567 | Deny in Full | Undated | Unknown | Information on Boumedienne | UNCLASSIFIED/Law Enforcement Sensitive. Summary of possible offenses committed by Boumedienne based upon information developed by CITF investigators. B(5); B(7)(a) **CITF:** B(5) |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 1568-1570 | Deny in Full | Undated | Unknown | Executive Summary | UNCLASSIFIED/Law Enforcement Sensitive. Summary of information and pending investigative leads on Lahmar and another detainee. Summary of information and pending **CITF:** B(2)-1, B(2)-3, B(2)-2, B(6)/B(7)(c)-2, B(7)(e) |
| 1575-1578 | Deny in Full | 4/1/2005 | Unknown | CITF Investigative Summary | UNCLASSIFIED/Law Enforcement Sensitive. Investigative summary of relationships to Boudella. Summary of the activities of Boudella as determined through investigative work, relevance of evidence collected, key associations, and investigative efforts purs |
| 1579-1581 | Deny in Full | Undated | Unknown | Detainee Profiles | UNCLASSIFIED/Law Enforcement Sensitive. Listing of names and aliases of detainees, including requesters.    B(2); B(6), B(7)(a)(c) **CITF:** B(2)1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3 |
| 1582-1587 | Deny in Full | 2/28/2003 | CITF | Priority Investigations and Potential Witnesses | UNCLASSIFIED/Law Enforcement Sensitive. Chart showing CITF priority investigations and potential witnesses in the case; 10002 appears on list as potential witness.    B(2); B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3 |
| 1605-1635 | Deny in Full | Undated | Unknown | Detainee Profiles | UNCLASSIFIED/Law Enforcement Sensitive. Synopsis of information developed by CITF on various detainees, including requesters. Shows associations with other individuals and organizations.    B(2); B(6), B(7)(a)(c) **CITF:** B(2)-1, B(2)-3, B(2)-4, B(6)/B(7) |
| 1636-1655 | Deny in Full | Undated | Unknown | Listing of Cases - CITF Major Case Branch | UNCLASSIFIED/Law Enforcement Sensitive. Synopsis of case by CITF MCB concerning numerous detainees, including requesters.    B(2); B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-2 |
| 1656-1657 | Deny in Full | Undated | Unknown | | UNCLASSIFIED/Law Enforcement Sensitive. Synopsis of case by CITF MCB concerning numerous detainees, including requesters.    B(2); B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-2 |
| 1658-1770 | Deny in Full | Undated | Unknown | Listing of Evidence | UNCLASSIFIED/Law Enforcement Sensitive. Listing of evidence/property of detainees under investigation by or of interest to CITF including requesters.    B(2); B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-2 |
| 1771-1781 | Deny in Full | 8/16/2005 | Unknown | Detainee Commonalities | UNCLASSIFIED/Law Enforcement Sensitive. Listing of evidence common to detainees under investigation by CITF.    B(2); B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-2 |
| 01782-01785 | Deny in Full | 5/11/2002 | CITF | Interview of Nechle | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Nechle by CITF and FBI agents. Covers Background, education, travels, and associations of detainee.    B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)-B(7)(c)-2 |
| 01788-01789 | Deny in Full | 5/18/2002 | CITF | Interview of Belkacem | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Boumedienne by CITF agent concerning NGOs and various individuals of interest to CITF's investigation.    B(2), B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1790 | Deny in Full | 5/23/2002 | CITF | Interview of Boumedienne | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Boumedienne by NCIS agent for CITF.    B(2), B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1 |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 01791-1794 | Deny in Full | 5/28/2002 | CITF | Interview of Nechle | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Nechle by AFOSI agent for CITF concerning NGOs, knowledge concerning persons of interest to CITF B(2); B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1,-2 |
| 01796-01800 | Deny in Full | 12/3/2002 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others. B(2); B(6), B(7)(a)(c) **CITF:** B(2)-1,-2, B(6)/B(7)(c)-1,(B)(7)(c)-2,B(7)(c)-3 |
| 1801-1802 | Deny in Full | 12/18/2002 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of Belkacem by CITF agent concerning NGOs and various individuals of interest to CITF's investigation.    B(2), B(6), B(7)(a)(c) **CITF:** B(2)-1, B(6),B(7)(c)-1, B(6)/B(7)(c)-2 |
| 1803-1805 | Deny in Full | 12/10/2002 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others. B(2); B(6), B(7)(a)(c) **CITF:** B(2)-1,-2, B(6)/B(7)(c)-1,(B)(7)(c)-2,B(7)(c)-3 |
| 1806-1849 | Deny in Full | Undated | CITF | Presentation concerning status of investigation on requesters and outstanding leads | SECRET. Charts showing associations and evidence linking requesters to various individuals/organizations; CITF agent taskings and leads to follow; summary of cases considered for prosecution by OMC. Portions claimed exempt by DIA, INSCOM, FBI, JTF-GTMO, |
| 1850-1851 | Deny in Full | 5/10/2002 | CITF | Algerian 6 | SECRET. E-mail correspondence between ARMY INSCOM and CITF concerning requesters. Portion claimed exempt by INSCOM. B(1) 1.4(b)(c); b(6); b(7)(a)(c) **CITF:** B(6)/B(7)(c)-1; **INSCOM -** B(1) 1.4(c) See Butterfield Declaration. |
| 1854 | Deny in Full | 8/20/2002 | CITF | E-mail of interview summary | UNCLASSIFIED.  Summary of Interview of Aït Idir.  B(2); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2. **FBI -** B(6)/7(c) See Hardy Declaration |
| 1855 | Deny in Full | 8/26/2002 | CITF | E-mail of Interview Summary | SECRET.  Summary of Interview of Aït Idir.  B(2); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-1, B(7)(c)-2: **FBI -** B(6)/7(c) See Hardy Declaration |
| 1856 | Deny in Full | 6/4/2002 | CITF | E-mail concerning Algerian Six | UNCLASSIFIED. E-mail forwarding information concerning requesters.  B(2); b(6); B(7)(a)(c) **CITF:** B(6)/B(7)(c)-1: **OGA -** B(1) 1.4(c); B(5) - See General Counsel Declaration: **DIA -** no additional input. |
| 1857-01864 | Deny in Full | 7/8/2002 | CITF | E-mail seeking information on Algerian detainees | SECRET.  E-mail string concerning information developed on requesters.  B(1), 1.4(c); b(2); b(6); b7(a)(c).  **CITF:** B(2)-4, B(5)-1, B(6)/B(7)(c)-1,B(5); **DIA -** B(2). |
| 1865 | Deny in Full | 8/29/2002 | CITF | E-mail string concerning the Algerians | SECRET.  E-mail forwarding information about intelligence gathering regarding requesters. B(1) 1.4(c); b(6); b(7)(a)(c) **CITF:** B(2)-4, B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3, B(5); **OGA -** B(1) 1.4(c) See General Counsel Declaration. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 1866 | Deny in Full | 8/5/2002 | CITF | E-mail concerning timeline involving Algerians | FOUO/LES. Questions concerning timeline involving Algerians. B(6); B(7)(a)(c) **CITF**-B(6)/B(7)(c)-1 |
| 1867-1870 | Deny in Full | 7/19/2002 | CITF | E-mail re: Investigative Plan for requesters | SECRET/NOFORN. Sets forth CITF plan for investigating potential offenses. B(1), 1.4(c); b(5); b(6); b(7)(a)(c) **CITF**- B(2)-4, B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3, B(5): **OGA** - B(1) 1.4(c); b(6) See General Counsel Declaration. |
| 1871 | Deny in Full | 4/24/2002 | CITF | E-mail concerning request for information concerning 7 GTMO detainees. | FOUO/LES. Email forwarding results of record query on 4 requesters and other detainees. B(2); b(6); b(7)(a)(c)(e) **CITF**: B(2)-4, B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(e) |
| 1872-1873 | Deny in Full | 4/17/2002 | CITF | E-Mail string concerning Belkacem | SECRET. CITF internal e-mail containing information concerning Belkacem's activities. Analyst comments and opinions on information. B(1) 1.4(c) B(2), B(5), B(7)(a)(c). **CITF**: B(2)-4, B(5)-1, B(6)/7(c)-1, 2, 3, 5, : **GTMO** - B(1) 1.4(c) concerning in |
| 1874-1875 | Deny in Full | 4/15/2002 | JAC | E-mail re: Belkacem | SECRET. CITF internal e-mail containing information concerning information obtained from Belkacem during interview and evidence developed by CITF. Analyst comments and opinions on information. B(1) 1.4(c) B(2), B(5), B(7)(a)(c) **CITF**: B(2)-4, B(6)/B(7)(c)-1, B(7)( |
| 1876 | Deny in Full | 4/12/2002 | CITF | E-mail re: Belkacem | SECRET. CITF questions to JAC concerning information needed on Belkacem. B(1) 1.4(c); B(6) B(7)(a)(c) **CITF**: B(2)-4, B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3, B(5): **OGA**- B(1) 1.4(c) See General Counsel Declaration |
| 1877 | Deny in Full | 4/24/2002 | CITF | E-mail re: Belkacem | SECRET. Internal CITF e-mail concerning information received on Belkacem and request for assistance. B(1) 1.4(c); B(5); B(6) B(7)(a)(c) **CITF**: B(5), B(6)/B(7)(c)-1 |
| 1878-1881 | Deny in Full | 4/25/2002 | CITF | E-mail exchange between EUCOM JAC and CITF | SECRET. Additional information on Belkacem associations, and evidence. B(1) 1.4(c); B(5); B(6); B(7)(a)(c) **CITF**: B(5), B(6)/B(7)(c)-1, B(6)/B(7)(c)-2, B(7)(c)-3: **OGA** - B(1) 1.4(c) See General Counsel Declaration |
| 1882-1890 | Deny in Full | 7/9/2002 | CITF | Algerian Detainees | SECRET. E-mail string concerning efforts in the investigation of requesters and inputs from other agencies as to leads and exchange of information. B(1), 1.4(c); b(2); b(6); b(7)(a)(c) **CITF**: B(6)/B(7)(c)-1; **DIA** - B(1) 1.4(c); B(2) (high) |
| 1891-1894 | Deny in Full | 6/10/2002 | CITF | E-mail concerning Algerians | SECRET. Correspondence between agents concerning intelligence gathered on requesters. b(2); b(6); b(7)(a)(c)(e) **CITF**: B(2)-4, B(5), B(6), B(7)(e): **INSCOM** - B(1) 1.4(c) See Butterfield Declaration: **OGA** - B(1) 1.4(c) See General Counsel Declaration. |
| 1895-1897 | Deny in Full | 5/31/2002 | CITF | E-mail exchange between CITF and JTF GTMO | SECRET. **CITF** internal e-mail exchange concerning obtaining assistance from another agency in developing information on requesters. B(1) 1.4(c); b(6), b(7)(a); : **OGA** - B(1) 1.4(c) See General Counsel Declaration. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 1898-1900 | Deny in Full | 5/24/2004 | CITF | E-mail between CITF and EUCOM JAC | UNCLASSIFIED. E-mail chain with comments and questions concerning case against Belkacem. B(2); B(5); B(6); B(7)(a)(c); **CITF:** B(2)-4, B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3, B(5) |
| 1901 | Deny in Full | 5/31/2002 | CITF | E-mail to CJTF-170 at GTMO | FOUO/LES. CITF e-mail setting forth CITF case assignments on Algerian 6. B(2); (B)6; B(7)/a)(c) **CITF:** B(2)-4, B(2)-1, B(6) |
| 1902 | Deny in Full | 5/29/2002 | CITF | E-mail exchange between CITF and JTF GTMO | FOUO/LES. CITF internal e-mail exchange concerning obtaining assistance from another agency in developing information on requesters. B(1) 1.4(c); b(6), b(7)(a)(c); **CITF:** B(2)-4, B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3, B(5) |
| 1903-1904 | Deny in Full | 5/2/2002 | CITF | E-mail from CITF to JTF GTMO | FOUO/LES. CITF e-mail seeking assistance in investigation of the Algerian 6. B(2); B(5); B(6); B(7)(a)(c)(e) **CITF:** B(2)-4, B(6)/B(7), B(5) |
| 1905-1906 | Deny in Full | 4/18/2003 | CITF | Request for Information from CITF | SECRET. Memorandum from CITF requesting information on Belkacem. B(1), 1.4(c); B(2); B(6); B(7)/a)(c) **CITF:** B(2)-2, B(2)-4, B(6); **OGA** - B(1) 1.4(c); See General Counsel Declaration. |
| 1907-1909 | Deny in Full | 4/25/2002 | CITF | Investigative Summary of Lakhdar conspiracy to commit offenses | SECRET. Summary of information obtained and potential witnesses during investigation. B(1), 1.4(c); b(2); b(3); 10 U.S.C. 130(b); b(6); b(7) **CITF:** B(2)-1,B(2)-2, B(6)/B(7)(c)-1, B(7)(c)-2; **OGA** - B(1) 1.4(c); See General Counsel Declaration. |
| 1913-1915 | Deny in Full | 8/17/2005 | CITF | Investigative Summary | SECRET. CITF Investigative summary of Ait Idir discussing investigative status, potential witnesses and evidence. B(1) 1.4(c); B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, B(2)-4, B(5), B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3 **GTMO:** B(1) 1.4(c) concerning in |
| 1916-1917 | Deny in Full | 6/9/2004 | CITF | Request for Information | SECRET/NOFORN. Summary of investigation of Belkacem outlining activities and associations with certain individuals, potential witnesses, and evidence. B(1) 1.4(c) B(2); B(5); B(6); B(7)(a)(c)(E) **CITF:** B(2)-1, B(2)-3, B(2)-4, B(6)/B(7)(c)-1, B(7)(c)-2, B( |
| 1922-1927 | Deny in Full | 3/6/2002 | CITF | Request for assistance to CITF/Fort Belvoir | SECRET/NOFORN. Request for assistance in obtaining information on requesters. Includes references to information and intelligence developed.  (b)1, 1.4(c); b(2); b(3): b(6); b(7)(a)(c) **CITF:** B(2)-1,-4, B(6), B(6)/B(7)(c)-2, B(7)(e); **OGA** - B(1) 1.4(c); |
| 1928-1931 | Deny in Full | 3/16/2004 | CITF | CITF assessment and recommendation to Army General Counsel regarding Nechle | SECRET/NOFORN. CITF assessment and recommendation concerning release or transfer of Nechle. B(1) 1.4(c); B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1,-4, B(5), B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3: **GTMO:** B(1) 1.4(c) concerning intelligence information obta |
| 1932-1935 | Deny in Full | 3/16/2004 | CITF | CITF assessment and recommendation to Army General Counsel regarding Ait Idir | SECRET/NOFORN. CITF assessment and recommendation concerning release or transfer of Ait Idir.  B(1) 1.4(c); B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1,-4, B(5), B(6)/ B(7)(c)-1, B(7)(c)-2, B(7)(c)-3 **GTMO:** B(1) 1.4(c) concerning intelligence information o |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 1936-1939 | Deny in Full | 3/16/2004 | CITF | CITF assessment and recommendation to Army General Counsel regarding Boumedienne | SECRET/NOFORN. CITF assessment and recommendation concerning release or transfer of Boumedienne. B(1) 1.4(c); B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, -4, B(5), B(6)/B(7)(c)-1, B(7)(c)-2.B(7)(c)-3: **GTMO:** B(1) 1.4(c) concerning intelligence information o |
| 1940-1943 | Deny in Full | 3/16/2004 | CITF | CITF assessment and recommendation to Army General Counsel regarding Boudella | SECRET/NOFORN. CITF assessment and recommendation concerning release or transfer of Boudella. B(1) 1.4(c); B(2); B(5); B(6); B(7)(a)(c) **CITF:** B(2)-1, -4, B(5), B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3: **GTMO:** B(1) 1.4(c) concerning intelligence information o |
| 1944-1946 | Deny in Full | 7/29/2002 | CITF | Interview Summary and Collection Plan for Boumedienne | SECRET. Interview of 10005 by FBI and GTMO interviewers; includes listing of intelligence requests and messages. B(1)1.4(c)/b(2)/b(3); b(6); B(7)(a)(c)(e) **CITF:** B(2)-1,-2, -4, B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3: **OGA** - B(1) 1.4(c); b(6) See General |
| 1947-1949 | Deny in Full | 4/28/2003 | JIG | Interview Summary and collector comments on Lahmar | SECRET. Interview of Lahmar by CITF agents; includes listing of intelligence requests and messages, summary of information obtained. In B(1)1.4(c); b(2); b(6); b(7)(a)(c)(e) **CITF:** B(2)-1, -2, -4, B(6)/B(7)(c)-1, B(7)(c)-2. B(7)(c)-3, B(7)(e): **GTMO:** B |
| 1954-1970 | Deny in Full | 7/10/2002 | CITF | Prosecution Memorandum - Person of interest to CITF | SECRET. Memorandum outlining information on detainee of interest to CITF in investigation of requesters. Report details possible charges, travel, training, terrorist activities and connections. B(1)1.4(c); B(2); B(5); B(6); B(7)(a)(c)(e) **CITF:** B(2)-1, |
| 1971-1973 | Deny in Full | 4/11/2002 | CITF | Prosecution Memorandum - Person of interest to CITF | SECRET. Memorandum outlining information on detainee of interest to CITF in investigation of requesters. Report details possible charges, travel, training, terrorist activities and connections. B(1)1.4(c); B(2); B(5); B(6); B(7)(a)(c)(d)(e)(f) **CITF:** |
| 1974-1983 | Deny in Full | 4/28/2002 | CITF | Prosecution Memorandum - Person of interest to CITF | SECRET. Memorandum outlining information on detainee of interest to CITF in investigation of requesters. Report details possible charges, travel, training, terrorist activities and connections. B(1)1.4(c); B(2); B(5); B(6); B(7)(a)(c)(d)(e)(f). **CITF:** |
| 1984-1994 | Deny in Full | 4/25/2002 | CITF | Prosecution Memorandum - Lahmar | SECRET. Memorandum outlining information on Lahmar. Report details possible charges, travel, training, terrorist activities and connections. B(1)1.4(c); B(2); B(5); B(6); B(7)(a)(c)(e) **CITF:** B(2)-1, -3, -5, B(6)/B(7)(c)-1, B(7)(c)-2, B(5), B(7)(e): **GT** |
| 1995-2016 | Deny in Full | Undated | CITF | Prosecution Memo on individual detainee. | SECRET/NOFORN. Prosecution memo outlining case and associations of a GTMO detainee. Mentions some of the requesters in footnote. B(1) 1.4(c); b(2); b(5); b(6); b(7)(a)(c)(d)(e)(f) **CITF:** B(2)-1, -5, B(5), B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3: **GTMO: B** |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 2017-2027 | Deny in Full | Undated | CITF | Prosecution Memorandum - Belkacem | SECRET. Memorandum outlining information on Belkacem. Report details possible charges, travel, training, terrorist activities and connections. B(1) 1.4 (c); b(2); B(5); B(6); B(7)(a)(c)(e) **CITF:** B(2)-1, -3, -5, B(6)/B(7)(c)-1, B(7)(c)-2, B(5), B(7)(e); **GTMO:** B(1) 1.4(c) concern |
| 2028-2049 | Deny in Full | 11/19/2004 | CITF | Intelligence Summary | SECRET/NOFORN. Summary of information received, information requests made, and follow up requests concerning Algerian Six. B(1) 1.4(c); b(2); b(6); B(5); b(7)(a)(c) **CITF:** B(6), B(6)/B(7)(c)-2, B(7)(c)-3, B(2)-1, B(5), B(7)(e), B(7)(e); **GTMO:** B(1) 1.4(c) concern |
| 2050-2055 | Deny in Full | Undated | CITF | Intelligence Summary | SECRET/NOFORN. Summary of information received, information requests made, and follow up requests concerning Belkacem Six. B(1) 1.4(c); b(2); b(6); B(5); b(7)(a)(c)(d)(f) **CITF:** B(6), B(6)/B(7)(c)-2, B(2)-1, B(5), B(7)(e); **GTMO:** B(1) 1.4(c) concernin |
| 2057-2062 | Deny in Full | Undated | CITF | Intelligence Summary | SECRET/NOFORN. Summary of information received, information requests made, and follow up requests concerning Lahmar. Contains analysis and opinions of evidence B(1) 1.4(c); b(2); b(6); B(5); b(7)(a)(c)(e) **CITF:** B(2)-1, -3, -5, B(6)/B(7)(c)-1, B(6)/B(7) |
| 2063-2067 | Deny in Full | Undated | CITF | Intelligence Summary | SECRET/NOFORN. Summary of information received, information requests made, and follow up requests concerning Nechle. Contains analysis and opinions of evidence B(1) 1.4(c); b(2); b(6); B(5); b(7)(a)(c)(e) **CITF:** B(2)-1, -3, -5, B(6)/B(7)(c)-1, B(7)(c)-2 |
| 2068-2072 | Deny in Full | Undated | CITF | Intelligence Summary | SECRET/NOFORN. Summary of information received, information requests made, and follow up requests concerning Nechle. Contains analysis and opinions of evidence B(1) 1.4(c); b(2); b(6); B(5); b(7)(a)(c)(e) **CITF:** B(2)-1, -3, -5, B(6)/B(7)(c)-1, B(7)(c)-2 |
| 2073-2078 | Deny in Full | Undated | CITF | Intelligence Summary | SECRET/NOFORN. Summary of information received, information requests made, and follow up requests concerning Nechle. Contains analysis and opinions of evidence B(1) 1.4(c); b(2); b(6); B(5); b(7)(a)(c)(e) **CITF:** B(2)-1, -3, -5, B(6)/B(7)(c)-1, B(7)(c)-2 |
| 2079-2083 | Deny in Full | Undated | CITF | Intelligence Summary | SECRET/NOFORN. Summary of information received, information requests made, and follow up requests concerning Boudella. Contains analysis and opinions of evidence B(1) 1.4(c); b(2); b(6); B(5); b(7)(a)(c)(e) **CITF:** B(2)-1, B(2)-3, B(2)-5, B(6)/B(7)(c)-2, |
| 2084-2102 | Deny in Full | 1/18/2005 | CITF | Intelligence Summary concerning source | SECRET/NOFORN. Intelligence summary of associations of a source, including with one of the requesters. B(1), 1.4(c); b(2); B(5); b(6); b7(a)(c)(d)(e)(f) **CITF:** B(2)-1, B(2)-3, B(2)-5, B(6)/B(7)(c)-1, B(5), B(7)(e); **GTMO:** B(1) 1.4(c) concer |
| 2103-2104 | Deny in Full | 5/2/2002 | CITF | Snapshot summary | SECRET. CITF summary of case against NECHLE and investigative plan. B(1), 1.4(c); b(2); B(5); b(6); b7(a)(c)(e) **CITF:** B(2) -1, -3, -5 B(6)/B(7)(c)-2, B(7)(c)-1, B (5), B(7)(e) |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 2105-2106 | Deny in Full | 8/16/2002 | CITF | Snapshot summary | SECRET. CITF summary of case against LAHMAR and investigative plan. B(1), 1.4(c); b(2); B(5); b(6); b7(a)(c)(e) **CITF:** B(2)-1, B(2)-3, B(2)-5, B(6)/B(7)(c)-2, B(7)(c)-1, B(5), B (7)(e): **OGA -** B(1) 1.4(c); b(6) See General Counsel Declaration. |
| 2107-2108 | Deny in Full | 5/15/2002 | CITF | Snapshot summary | SECRET. CITF summary of case against BOUDELLA and investigative plan. B(1), 1.4(c); b(2); B(5); b(6); b7(a)(c)(e) **CITF:** B(2)-1, B(2)-3, B(2)-5, B(6)/B(7)(c)-2, B(7)(c)-1, B(5), B (7)(e): **GTMO:** B(1) 1.4(c) concerning intelligence information obtained t |
| 2109-2110 | Deny in Full | Undated | CITF | Intelligence Summary concerning source | SECRET//NOFORN. Intelligence summary of associations of a source, including with one of the requesters. B(1), 1.4(c); b(2); B(5); b(6); b7(a)(c)(e) **CITF:** B(2)-1, B(2)-3, B(2)-5, B(6)/B(7)(c)-2, B(7)(c)-1, B(5), B (7)(e): **OGA -** B(1) 1.4(c); b(6) See |
| 2111-2115 | Deny in Full | Undated | CITF | Data Sheet | SECRET/NOFORN.   Summary of information on Boumediene including significance, background information, associates, and listing of sources of information. B(1), 1.4(c); b(2); B(5); b(6); b7(a)(c)(e) **CITF:** B(2)-1, B(6)/B(7)(c)-2, B(7)(c)-1, B(5),  B (7)(c |
| 2116-2119 | Deny in Full | Undated | CITF | Data Sheet | SECRET/NOFORN.   Summary of information on Belkacem including significance, background information, associates, and listing of sources of information.  B(1), 1.4(c); b(2); B(5);  b(6); b7(a)(c)(e) **CITF:** B(2)-1, B(6)/B(7)(c)-2, B(7)(c)-1, B (7)(c)-3, B(5), |
| 2120-2126 | Deny in Full | Undated | CITF | Data Sheet | SECRET/NOFORN.   Summary of information on Nechle including significance, background information, associates, and listing of sources of information. B(1), 1.4(c); b(2); B(5);  b(6); b7(a)(c)(e) **CITF:** B(2)-1, B(6)/B(7)(c)-2, B(7)(c)-1, B (7)(c)-3, B(5), B |
| 2127-2132 | Deny in Full | Undated | CITF | Data Sheet | SECRET/NOFORN.   Summary of information on Ait Idir including significance, background information, associates, and listing of sources of information. B(1), 1.4(c); b(2); B(5);  b(6); b7(a)(c)(e) **CITF:** B(2)-1, B(6)/B(7)(c)-2, B(7)(c)-1, B (7)(c)-3, B(5), |
| 2133-2138 | Deny in Full | Undated | CITF | Data Sheet | SECRET/NOFORN.   Summary of information on Boudella including significance, background information, associates, and listing of sources of information. B(1), 1.4(c); b(2); B(5);  b(6); b7(a)(c)(e) **CITF:** B(2)-1, B(6)/B(7)(c)-2, B(7)(c)-1, B (7)(c)-3, B(5), |
| 2144-2145 | Deny in Full | 8/5/2003 | CITF | Assessment | SECRET/NOFORN.  Intelligence Assessment of information provided by another detainee and associations with a requester and others. B(1), 1.4(c), b(2), b(6), b(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-2, B(7)(c)-1, B (7)(c)-3, B(5), B (7)(e): **GTMO -** B(1) 1.4(c |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 2146-2147 | Deny in Full | Undated | CITF | Assessment | SECRET/NOFORN. Intelligence Assessment of information provided by another detainee and associations with a requester and others. B(1), 1.4(c), b(2), b(6), b(7)(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-2, B(7)(c)-1, B (7)(c)-3, B(5), B (7)(e), **OGA** - B(1) 1.4(c) |
| 2148-2149 | Deny in Full | 5/15/2002 | CITF | Snapshot | SECRET. CITF summary of case against Belkacem and investigative plan. B(1), 1.4(c); b(2); B(5); b(6); b7(a)(c) **CITF:** B(2)-1, B(6)/B7(c)-2, B(7)(c)-1, B (7)(c)-3, B(5), B (7)(e); **GTMO** -B(1) 1.4(c) concerning intelligence information obtained that would |
| 2150-2152 | Deny in Full | 8/16/2002 | CITF | Snapshot | SECRET. CITF summary of case against Belkacem and investigative plan. B(1), 1.4(c); b(2); B(5); b(6); b7(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-2, B (7)(c)-3: **OGA** -  B(1) 1.4(c); b(6) See General Counsel Declaration |
| 2153-2155 | Deny in Full | 5/3/2002 | CITF | Snapshot | SECRET. CITF summary of case against Nechle and investigative plan. b(2); B(5); b(6); b7(a)(c) **CITF:** B(2)-1, B(6)/B(7)(c)-2, B (7)(c)-3 : |
| 2156-2158 | Deny in Full | 5/6/2002 | CITF | Snapshot | SECRET. CITF summary of case against Boumedienne and investigative plan. B(1), 1.4(c); b(2); B(5); b(6); b7(a)(c) **CITF:** B(2)-1, B(2)-2, B(6)/B(7)(c)-2, B (7)(c)-3: **FBI** - B(6)/7(c) See Hardy Declaration 2184 |
| 2159-2160 | Deny in Full | 5/15/2002 | CITF | Snapshot | SECRET. CITF summary of case against Boudella and investigative plan. B(1), 1.4(c); b(2); B(5); b(6); b7(a)(c)(e) **CITF:** B(2)-1, B(2)-2,  B(6)/B(7)(c)-2, B (7)(c)-3: **GTMO** - B(1) 1.4(c) concerning intelligence information obtained that would reveal intell |
| 2161-2168 | Deny in Full | 4/26/2005 | CITF | Intelligence report | SECRET/NOFORN. Information concerning phone numbers associated with some of the requesters.  B(1), 1.4(c); b(2); B(6); B(7)(a)(c).  **CITF:** B(2)-1, B(2)-2, B(6)/B(7)(c)-2, B (7)(c)-3: **OGA** -  B(1) 1.4(c); b(6) See General Counsel Declaration. |
| 2169-2183 | Deny in Full | 9/18/2002 | CITF | Report of Investigation | SECRET/NOFORN.  Report of investigation completed by CITF agent of possible offenses by ISN 10001 and theories of liability.  B(1), 1.4(c); b(2);b(5); b(6); b(7)(a)(c)(e) **CITF:** B(2)-1, B(2)-2,B (2)-5, B(6)/B(7)(c)-2, B (7)(c)-3, B(5), B(3), 10 U.S.C. 130 |
| 2184-2186 | Deny in Full | Undated | CITF | CITF Intelligence Report | SECRET/NOFORN. Lahmar's known associates.  b(1), 1.4(c), b(2)/b(6)/(b)/(7)(a)(c) **CITF:** B(2)-2, B(6)/B(7)(c)-2: **OGA** -  B(1) 1.4(c); b(6) See General Counsel Declaration: FBI - B(6)/7(c) on page 2184. See Hardy Declaration. |
| 2187-2188 | Deny in Full | Undated | CITF | Names and biographical data on requesters | FOUO/LES.  Names of requesters, alternate spellings and aliases; identifying information. B(2); B(7)(a) **CITF:**  B(2)-4, B(2)-2 |
| 2189-2210 | Deny in Full | Undated | Unk | Intelligence Summary | SECRET/NOFORN.  Sets forth intelligence summaries for several individuals including requesters. B)(1), 1.4(c); B(2); (b)(6)/(7)(a)(c) **CITF:**  B(2)-2, B (2)-1, B(2)-5, B(5), B(6)/B(7)(c)-2, B(7)(c)-1, B(3), 10 U |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 2251-2302 | Deny in Full | 7/21/2003 | CITF | Detainee Alias List | SECRET/NOFORN. Listing of GTMO detainee names, aliases, and other identifying information. B(1)1.4(c); B(2); B(6); B(7)(a)(c)(e) Processing, assessment, and transfer cases **CITF**: B(2)-1, B(6)/B(7)(c)-2, B(7)(e); **GTMO**: B(1) 1.4(c) concerning intelig |
| 2303-2314 | Deny in Full | 7/21/2003 | CITF | CITF Case Management | SECRET. Lists Teams and Agents responsible for ongoing CITF cases. B(1) 1.4(a)(c); B(2); B(6); B(7)(a)(c) **CITF**: B(2)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-1, B(7)(e); **GTMO**: B(1) 1.4(c) concerning intelligence information obtained that would reveal intelli |
| 2315-2356 | Deny in Full | 7/21/2003 | CITF | CITF Processing, Assessment and Transfer List | FOUO/LES. List showing CITF's assessment on detainees under CITF investigation. B(2); B(5); B(6); B(7)(a)(c)(e) **CITF**: B(2)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-1, B(7)(e), B(5) |
| 2357-2367 | Deny in Full | 3/15/2003 | CITF | Team Collection Plan | SECRET/NOFORN. Shows teams assigned and status of outstanding intelligence requirements on requesters and others. B(1) 1.4(a)(c); B(2); B(6); B(7)(a)(c) **CITF**: B(2)-1, B(2)-5, B(6)/B(7)(c)-1; **GTMO**: B(1) 1.4(c) concerning intelligence i |
| 2368-2378 | Deny in Full | 3/22/2003 | CITF | Team Collection Plan | SECRET/NOFORN. Shows teams assigned and status of outstanding intelligence requirements on requesters and others. B(1) 1.4(a)(c); B(2); B(6); B(7)(a)(c) **CITF**: B(2)-1, B(2)-5, B(6)/B(7)(c)-2, B(6)/B(7)(c)-1; **GTMO**: B(1) 1.4(c) concerning intelligence |
| 2379-2387 | Deny in Full | 3/29/2003 | CITF | Team Collection Plan | SECRET/NOFORN. Shows teams assigned and status of outstanding intelligence requirements on requesters and others. B(1) 1.4(a)(c); B(2); B(6); B(7)(a)(c) **CITF**: B(2)-1, B(2)-5, B(6)/B(7)(c)-2, B(6)/B(7)(c)-1; **GTMO**: B(1) 1.4(c) concerning intelligence |
| 2388-2389 | Deny in Full | Undated | CITF | Collection Plan | FOUO/LES. Priority list of investigative leads. B(2); B(5); B(7)(a)(c)(e) **CITF**: B(2)-1, B(2)-5, B(2)-3, B(6)/B(7)(c)-2, B(6)/B(7)(c)-1, B(5), B(7)(e) |
| 2390-2430 | Deny in Full | Undated | CITF | Order of Merit List | SECRET. Document listing numerous detainees with summaries of connections and associations showing why these individuals are valuable as potential source. (b)(1), 1.4(c); b(2); b(6); b(7)(c) **CITF**: B(2)-1, B(2)-5, B(6)/B(7)(c)-2, B(6)/B(7)(c)-1, B(5 |
| 2432-2443 | Deny in Full | 5/10/2002 | CITF | Request for Information Tracking Sheet | FOUO/LES. Status of CITF requests for information concerning ongoing investigations of certain individuals including some of the requesters. B(2); B(5); B(6); B(7)(a)(c)(e) **CITF**: B(2)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-1, B(7)(e), B(5) |
| 2444-2469 | Deny in Full | Undated | GTMO | Incident Analysis | SECRET. Assessment of detainee behavior listing numerous detainees including requesters. B(1) 1.4(a)(c); B(2); B(6); B(7)(a)(c) **CITF**: B(2)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-1, B(7)(e); **GTMO**: B(1) 1.4(c) concerning intelligence information obtained that two |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 2533-2552 | Deny in Full | 8/16/2005 | CITF | Pocket Litter Index | SECRET//X1. A chart listing location of pocket litter for several detainees including requesters. B(1), 1.4(c); b(2), B(6), B7(a)(c). **CITF:** B(2)-1, B(2)-5, B(2)-2, B(6)/B(7)(c)-2, B(6)/B(7)(c)-1. **GTMO:** B(1) 1.4(c) concerning intelligence information |
| 2559 | Deny in Full | Undated | CITF | Request for assistance to CITF/Fort Belvoir | SECRET. Request for assistance in analyzing information associated with 10001. B(1), 1.4(c); b(2); b(6); b(7)(a)(c) **CITF:** B(2)-1, B(2)-5, B(2)-2, B(2)-3, B(6)/B(7)(c)-1, B(6)/B(7)(c)-2 |
| 2587-2599 | Deny in Full | Undated | CITF | Request for Information on Nechle | SECRET. Contains questions seeking information concerning contacts and associations on Nechle based on information gathered from other sources. B(1), 1.4(c); b(6); b(7)(a)(c).  **CITF:** B(6)/B(7)(c)-2.  **GTMO:** B(1) 1.4(c) concerning intelligence informati |
| 2623 | Deny in Full | Undated | CITF | Interview Summary | SECRET/NOFORN. Summary of interview Aït Idir concerning associations.  B(1) 1.4(c); B(2); b(6); B7(a)(c) CITF:  B(2)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3 |
| 2624 | Deny in Full | Undated | CITF | Interview Summary | SECRET/NOFORN. Summary of interview Aït Idir concerning associations. B(1) 1.4(c); B(2); b(6); B7(a)(c) CITF:  B(2)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3 |
| 2625-2631 | Deny in Full | 4/16/2002 | CITF | RTB Summary - Belkacem | SECRET/NOFORN. Draft Reason to Believe memorandum on Belkacem. Contains background information; synopsis and analysis of evidence; possible offenses.  B(1) 1.4(c); B(2); B(5); B(6); B(7)(a)(c)(d)(f). CITF:  B(2)-1, B(2)-5, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3 |
| 2632-2639 | Deny in Full | Undated | CITF | CITF Background Synopsis on Belkacem | SECRET. Contains background information on Belkacem and associations with individuals and organizations. B(1), 1.4(c); (B)(5); B(6); B(7)(a)(c).  CITF: B(2)-3, B(2)-1, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3: GTMO:  B(1) 1.4(c) concerning intelligence inf |
| 2640-2641 | Deny in Full | Undated | CITF | Initial Screening Synopsis | SECRET/NOFORN. Provides information concerning Belkacem's  associations and information derived from source information.  (b)(1), 1.4(c), b(2); b(6); b(7)(a)(c). Note: Denied in full under both b(1) and b(7)(a). CITF: B(2)-1, B(2)-5, B(6)/B(7)(c)-2, |
| 2710-2713 | Deny in Full | 4/24/2002 | CITF | Background synopsis | SECRET. Provides background information, affiliations, and CITF investigative plan on Boumedienne. b(1), 1.4(c); b(2); b(5); b(6); b7(a)/c)(e).  CITF:  B(2)-1, B(2)-5,B(2)-2, B(2)-3, B(6)/B(7)(c)-2, B(6)/B(7)(c)-3, B(6/B(7)(c)-1, B(5), B(7)(e). GTMO: B(1) |
| 2720-2728 | Deny in Full | Undated | CITF | BELKACEM, BENSAYAH | SECRET. Document listing associations and files associated with investigation of Bensayah. B(1), 1.4(c); B(2); B(6); B(7)(a)(c)(d)(f) CITF: B(2)-1, B(2)-5,B(2)-2, B(2)-3, B(6)/B(7)(c)-2, B(6/B(7)(c)-3, B(6/B(7)(c)-1, B(5), B(7)(e): GTMO: B(1) 1.4(c) |
| 2762-2765 | Deny in Full | Undated | CITF | Investigative Summary - Relationships | SECRET. Shows listing of documents showing connections between Belkacem and others/organizations. b(1) 1.4(c); B(2); B(6); B(7)(a)(c)(e).  CITF: B(2)-1, B(2)-5,B(2)-2, B(2)-3, B(6)/B(7)(c)-2, B(6/B(7)(c)-3, B(6/B(7)(c)-1, B(5), B(7)(e): GTMO: B(1) 1.4 |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 2770-2788 | Deny in Full | Undated | CITF | Progress and Significance Report | SECRET/NOFORN. Sets forth history of investigative steps and relevant information obtained regarding ISN 10004. B(1), 1.4(c)(e); B(2); B(6); B(7)(a)(c)(e) CITF: B(2)-1, B(2)-5,B(2)-2, B(2)-3, B(6)/B(7)(c)-2, B(6/B(7)(c)-1, B(5), B(7)(e) |
| 2789-2790 | Deny in Full | Undated | CITF | Background Paper | SECRET/NOFORN. Background information on, summary of certain statements by, and recommendations for investigation of Boumediene. B(1) 1.4(c) CITF: B(2)-1, B(6)/B(7)(c)-2, B(6/B(7)(c)-3: GTMO:  B(1) 1.4(c) concerning intelligence information obtained in |
| 2791-2793 | Deny in Full | Undated | CITF | Background Paper - Ait Idir | SECRET/NOFORN. Assessment of interview and information obtained from interviews of Ait Idir; background information; analysts comments and assessment. B(1), 1.4(c); B(5); B(6); B(7)(a)(c)(e)  CITF: B(2)-1, B(6/B(7)(c)-2, B(6/B(7)(c)-3, B(5), B(7)(e): G |
| 2794-2798 | Deny in Full | Undated | CITF | Point Paper | FOUO/LES. Synopsis of case against person being investigated by CITF and of interest in investigation of requestors. B(2); B(5); B(6); B(7)(a)(c)  CITF: B(2)-1, B(6)/B(7)(c)-2, B(6/B(7)(c)-3, B(5) |
| 2799-2802 | Deny in Full | 2/24/1998 | CITF | Background Paper - Ait Idir | SECRET/NOFORN. Background information on Ait Idir, including possible associations with terrorist organizations/other organizations.  B(1), 1.4(c); B(6); B(7)(a)(c) CITF: B(2)-1, B(2)-5, B(6)/B(7)(c)-2, B(6/B(7)(c)-3, B(5): GTMO:  B(1) 1.4(c) concerning |
| 2851-2856 | Deny in Full | 4/26/2002 | JAC | Executive Summary | SECRET/NOFORN.  Summary of information concerning and associations of persons of interest to CITF's investigation of requesters.  B(1) 1.4(c); B(6); B(7)(c) CITF: B(2)-3, B(6)/B(7)(c)-2, B(6)/B(7)(c)-1 |
| 2857-2859 | Deny in Full | Undated | CITF | Summary regarding Boumediene | SECRET/NOFORN. Background information on Boumedienne, including possible associations with organizations/other organizations.  B(1), 1.4(a)(c); b(6); b(7)(a)(c) CITF: B(2)-3, B(2)-1, B(5), B(6)/B(7)(c)-2, B(6)/B(7)(c)-3, B(7)(e):  GTMO:  B(1) 1.4(c) conce |
| 2911-2913 | Deny in Full | 4/27/2004 | CITF | Situation Report | SECRET NOFORN. Update of status of pending leads, investigatory team leads, and information obtained from various sources.  Names of persons and detainees in report exempted under b(6) and b(7)(c).  B(1), 1.4(c)b(6)/b(7)(a)(c)(e) CITF: B(6)/B(7)(c)-2, B( |
| 3012-3015 | Deny in Full | 8/14/2003 | CITF | Summary of Case File | SECRET.  CITF synopsis of information obtained from and developed on Boumedienne.  (b)(1), 1.4(c); b(3), 10U.S.C. 130(b); b(5); b(6), b(7)(a)(c)(e)  CITF: B(2)-1, B(5), B(6)/B(7)(c)-2, B(7)(c)-1, B(7)(e): GTMO:  B(1) 1.4(c) concerning intelligence inform |
| 3016-3024 | Deny in Full | 9/6/2003 | CITF | Summary of Case File | SECRET.  CITF synopsis of information obtained from and developed on another detainee, which includes information on association with some of the requesters. (b)(1), 1.4(c); b(3), 10U.S.C. 130(b); b(6), b(7)(a)(c)(e) CITF:  B(2)-1, B(5), B(6)/B(7)(c)-2, |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 3025-3028 | Deny in Full | Undated | CITF | Data sheet on Ait Idir Mustafa | SECRET/NOFORN. Contains background information on Ait Idir and associations with individuals and organizations. B(1), 1.4(c); b(2); b(6); b(7)(a)(c). **CITF:** B(2)-1, B(2)-5, B(5), B(6)/B(7)(c)-2, B(7)(c)-1, B(7)(e). **GTMO:** B(1) 1.4(c) concerning intelli |
| 3029-3035 | Deny in Full | Undated | CITF | Data sheet on Muhammed Nechle | SECRET/NOFORN. Contains background information on Ait Idir and associations with individuals and organizations. B(1), 1.4(c); B(2); b(5) b(6); b(7)(a)(c)(e). **CITF:** B(2)-1, B(2)-5, B(5), B(6)/B(7)(c)-2, B(7)(c)-1, B(7)(e). **GTMO:** B(1) 1.4(c) concerni |
| 3036-3039 | Deny in Full | 10/29/2004 | CITF | CITF Report of Investigative Activity | UNCLASSIFIED/Law Enforcement Sensitive. Interview of source by CITF agents concerning persons of interest to CITF in investigation of requesters and others. B(2); B(6), B(5); B(7)(a)(c)(e)  **CITF:** B(2)-1, -2, B(5), B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3, B |
| 3043-3051 | Deny in Full | Undated | CITF | CITF Progress Report | SECRET/NOFORN. Update on progress of investigation and significance of information obtained by CITF in investigation of requestors. B(1) 1.4(c); B(2); B(6); B(7)(a)(c) **CITF:** B(2)-1, -5, B(6)/B(7)(c); **GTMO:**    B(1) 1.4(c) concerning intelligence informat |
| 3052-3064 | Deny in Full | 8/16/2005 | CITF | Progress and Significance Report | SECRET. Shows progress of investigation and information developed concerning 10001. (b)(1), 1.4(a)(c); b(2); b(6); b(7)(a)(c)(e) **CITF:** B(2)-1, -5, B(6)/B(7)(c)-1, B(7)(c)-2, B(7)(c)-3, B(7)(e). **GTMO:**   B(1) 1.4(c) concerning intelligence information obt |
| 3065-3075 | Deny in Full | 8/17/2005 | CITF | Progress and Significance Report | SECRET. Shows progress of information developed concerning 10006. (b)(1), 1.4(a)(c); b(2); b(6); b(7)(a)(c)(e)  **CITF:**   B(2)-5, B(5), B(6), B(7)(e). **GTMO:** B(1) 1.4(c) concerning intelligence information obtained that would reveal intell |
| | **DIA Docs From DIA August search** | | | | |
| 3135-3138 | Partial | 10/23/2001 | DIA | Information report pertaining to the arrest of the requesters | SECRET/NOFORN. Foreign Government relations and Intelligence methods . B(1) 1.4(b)(c); B(2); and B(6). See Declaration of Brian Scott Kinsey. |
| 3139-3140 | Partial | 4/10/2002 | DIA | Information Report concerning Ait Idir and other individuals (Not Requesters) request for travel. | SECRET/NOFORN. Foreign Government relations and Intelligence methods . B(1) 1.4(b)(c); B(2); and B(6). See Declaration of Brian Scott Kinsey. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 3141-3144 | Partial | 9/19/2002 | DIA | Information Report pertaining to an individual (not requesters) and his connection to Lahmar and Belkacem | SECRET/NOFORN. Foreign Government relations and Intelligence methods . B(1) 1.4(b)(c); B(2); and B(6).  See Declaration of Brian Scott Kinsey. |
| 3145-3146 | Partial | 2/26/2001 | DIA | Information Report concerning possible foreign Islamic Extremist in Bosnia | SECRET/NOFORN. Foreign Government relations and Intelligence methods . B(1) 1.4(b)(c); B(2); and B(6).  See Declaration of Brian Scott Kinsey. |
| 3147-3157 | Partial | 4/12/2003 | DIA | Information pertaining to Belkacem Court decision from Human right Chamber for Bosnia. | SECRET/NOFORN. Foreign Government relations and Intelligence methods . B(1) 1.4(b)(c); B(2); and B(6).  See Declaration of Brian Scott Kinsey. |
| 3158-3163 | Partial | 4/14/2003 | DIA | Information pertaining to Belkacem Court decision from Human right Chamber for Bosnia. | SECRET/NOFORN. Foreign Government relations and Intelligence methods . B(1) 1.4(b)(c); B(2); and B(6).  See Declaration of Brian Scott Kinsey. |
| **FBI DOCS referred from JTF-GTMO** | | | | | |
| 003164 - 003166 | Deny in Full | 7/18/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10004 discussing background, travel, employment and associations. B(7)(c); B(6); B(1) 1.4c. |
| 003167 - 003168 | Deny in Full | 8/30/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10004 discussing background, travel, employment, associations, and training. B(7)(c); B(1) 1.4c; B(6) |
| 003175 - 003178 | Deny in Full | 3/29/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10004 discussing travel, religious activity, and associates. B(7)(c); B(6). |
| 003179 - 003186 | Deny in Full | 6/29/2004 | FBI / JTF GTMO | Information Report | SECRET. Interview of Boudella discussing family, education, religious activity, travel, employment, and associates. B(7)(c); B(6); B(1) 1.4c. |
| 003187 - 003191 | Deny in Full | 10/9/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10002 discussing religion, employment, and associates. B(7)(c); B(6); B(1) 1.4c. |
| 003192 - 003200 | Deny in Full | 10/21/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10005 discussing religion, travel, political activities, family, associates. B(7)(c); B(6). |
| 003207 - 003211 | Deny in Full | 9/24/2002 | FBI / GTF GTMO | Information Report | SECRET. Interview of ISN 10001 discussing religion, associates, travel. B(7)(c); B(6). |
| 003215 - 003217 | Deny in Full | 3/28/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10001 discussing associates, living arrangements, employment. B(7)(c); B(6); B(1) 1.4c. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 003218 - 003220 | Deny in Full | 3/29/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10005 discussing communications, associates, and employment. B(7)(c); B(6). |
| 003230 - 003232 | Deny in Full | 5/20/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10005 discussing travel, associates, status, finances, and possession. B(7)(c); B(6). |
| 003233 - 003241 | Deny in Full | 10/21/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10005 discussing travel, commercial activities, employment, associates, and family. B(7)(c); B(6). |
| 003245 - 003250 | Deny in Full | 10/9/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10003 discussing employment, communications, finances, and associates. B(7)(c); B(6). |
| 003260 - 003261 | Deny in Full | 3/28/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10005 discussing associates and evidence. B(7)(c); B(6); B(1) 1.4c. |
| 003265 - 003270 | Deny in Full | 9/20/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10003 discussing communications, finances, and associates. B(7)(c); B(6). |
| 003271 - 003273 | Deny in Full | 3/29/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10005 discussing associates, and employment. B(7)(c); B(6). |
| 003277 - 003279 | Deny in Full | 3/29/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10005 discussing associates. B(7)(c); B(6). |
| 003283 - 003285 | Deny in Full | 3/29/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10005 discussing employment and associates. B(7)(c); B(6); B(1) 1.4c. |
| 003286 - 003288 | Deny in Full | 3/29/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10005 discussing travel, employment, and associates. B(7)(c); B(6); B(1) 1.4c. |
| 003294 - 003298 | Deny in Full | 9/24/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10001 discussing associates and criminal record. B(7)(c); B(6). |
| 003307 - 003314 | Deny in Full | 6/29/2004 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10006 discussing family, education, employment, travel, finances, and associates. B(7)(c); B(6); B(1) 1.4c. |
| 003315 - 003319 | Deny in Full | 10/9/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10002 discussing associates, plans for religious study, and employment. B(7)(c); B(6); B(1) 1.4c. |
| 003324 - 003333 | Deny in Full | 4/18/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10003 discussing religion, aliases, associates, travel, and employment. B(7)(c); B(6). |
| 003349 - 003354 | Deny in Full | 9/20/2002 | FBI / JTF GTMO | Information Report | SECRET. Interview of ISN 10003 discussing employment, finances, and associates. B(7)(c); B(6). |
| | | | | **DIA Docs denied in full from August search** | |
| 03389-03390 | Deny in Full | 3/26/2003 | DIA | E-mail concerning Belkacem Pocket Litter | SECRET/NOFORN. Information pertaining to Belkacem, revealing intelligence methods and sources. B(1) 1.4(c);B(2);B(3) 5 U.S.C.130(b); and B(6). See Declaration of Brian Scott Kinsey. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 03391-03393 | Deny in Full | 2/19/2006 | CJTF 170 | E-mail pertaining to Belkacem and 12 other detainees (not requesters) | SECRET/NOFORN. Information pertaining to Belkacem and 12 other people (not requesters) concerning intelligence activities and methods. B(1) 1.4(c); B(2);B(3) 5 U.S.C.130(b); and B(6). See Declaration of Brian Scott Kinsey. |
| 03394-03396 | Deny in Full | UNK | DIA | Composite IIR evaluation concerning intelligence information pertaining to Belkacem | SECRET/NOFORN. Information pertaining to interrogations of Belkacem and questions to be levied on Belkacem during future interrogations. B(1) 1.4(c); B(2); and B(6). See Declaration of Brian Scott Kinsey. |
| 03397-03398 | Deny in Full | UNK | DIA | Intelligence information concerning Belkacem | SECRET/NOFORN. Information pertaining to Belkacem and associations; reveals intelligence methods and sources. B(1) 1.4(c); and B(6). See Declaration of Brian Scott Kinsey. |
| Bates Numbers 3472-3505A constitute "Doc 5" in the Coble Declaration: | | | | | |
| 3476 | Partial | undated | Detainee Affairs | Worksheet for consideration detainee release or transfer | SECRET/NOFORN. Summary of information concerning Boudella. Joint Staff: (b)(1), 1.4(a). See Declaration of Barry Coble. ODA: (b)(1), 1.4(c ); (b)(5); (b)(6). See Declaration of Charles S. Stimson. |
| 03477-03478 | Partial | 1/22/2004 | Southern Command | Assessment and recommendation | SECRET. Assessment and recommendation to retain in DoD control - Boudella. GTMO: (b)(1), 1.4(a) concerning military operations; (b)(1), 1.4(c) concerning intelligence information that would reveal intelligence activities (G1.1); (b)(1), 1.4(c) concerni |
| 03479-03483 | Deny in Full | 4/29/2004 | CITF | Memorandum | SECRET/NOFORN. Provides CITF assessment on Boudella. GTMO: (b)(1), 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); (b)(1), 1.4(c) concerning a source and information obtained from a source(G1.2); |
| 03484-03485 | Partial | 1/22/2004 | Southern Command | Assessment and recommendation | SECRET. Assessment and recommendation to retain in DoD control - Boumediene. GTMO: (b)(1), 1.4(a) concerning military operations; (b)(1), 1.4(c) concerning intelligence information that would reveal intelligence activities (G1.1); (b)(1), 1.4(c) concor |
| 03486-03491 | Deny in Full | 4/29/2004 | CITF | Memorandum | SECRET/NOFORN. Provides CITF assessment on Boumediene. GTMO: (b)(1), 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); (b)(1), 1.4(c) concerning a source and information obtained from a source(G1.2); |
| 03492-03493 | Partial | 1/22/2004 | Southern Command | Assessment and recommendation | SECRET. Assessment and recommendation to retain in DoD control - Nechle. GTMO: (b)(1), 1.4(a) concerning military operations; (b)(1), 1.4(c) concerning intelligence information that would reveal intelligence activities (G1.1); (b)(1), 1.4(c) concerning |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 03495–03499 | Deny in Full | 4/29/2004 | CITF | Memorandum | SECRET/NOFORN. Provides CITF assessment on Nechle. GTMO: (b)(1), 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); (b)(1), 1.4(c) concerning a source and information obtained from a source (G1.2); |
| 03500–03501 | Partial | 1/22/2004 | Southern Command | Assessment and recommendation | SECRET. Assessment and recommendation to retain in DoD control - Idir. GTMO: (b)(1), 1.4(a) concerning military operations; (b)(1), 1.4(c) concerning intelligence information that would reveal intelligence activities (G1.1); (b)(1), 1.4(c) concerning a source |
| 03503–03505A | Deny in Full | 4/29/2004 | CITF | CITF Memorandum to DoD General Counsel assessing Idir. | SECRET/NOFORN. Provides CITF assessment on Idir. GTMO: (b)(1), 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); (b)(1), 1.4(c) concerning a source and information obtained from a source(G1.2);   (b) |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 3947–3948 | Deny in Full | 1/17/2004 | CITF | Assessment of Aït Idir | SECRET/NOFORN. CITF assessment and recommendations concerning status of Aït Idir. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from |
| 3949 | Partial | 4/14/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Summary of interview of Aït Idir.  BB(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on no |
| 3950 | Partial | 5/4/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Aït Idir/Activities.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-nume |
| 3953–3955 | Partial | 6/21/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Aït Idir/past activities and travel.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)( |
| 3961–3965 | Partial | 3/17/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Aït Idir/work for relief organization.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B |
| 3966–3968 | Partial | 4/16/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Aït Idir/Past activities and events. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2) |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 3969-3970 | Partial | 5/27/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Ait Idir/Background concerning employment, activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(2)(high) on non-numeric portion of ISN Numbers (G2.1);  B(2) ( |
| 3971-3972 | Partial | 5/17/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Ait Idir/Employment and information concerning an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a so |
| 3973 | Partial | 6/28/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Ait Idir questioned concerning certain organizations.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a source(G1. |
| 3974 | Partial | 7/23/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Ait Idir questioned concerning certain organizations.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2) |
| 3975 | Partial | 7/30/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Ait Idir/Delegation Visit. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(2)(high) on non-numeric portion of ISN Numbers (G2.1);  B(2) (high) concerning information internal |
| 3976 | Partial | 8/24/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Ait Idir/ discussion of rumors and behavior problems. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a sou |
| 3977 | Partial | 8/27/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Mustafa Ait Idir questioned by interrogator.    B(1) 1.4 (c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2 |
| 3978 | Partial | 9/22/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Mustafa Ait Idir/Discussion of problems raised by Idir. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a source(G1 |
| 3979 | Partial | 11/18/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Mustafa Ait Idir/Discussion of problems raised by Idir.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a source(G1 |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|-----------|---------|--------------------------------------|
| 3980 | Partial | 1/21/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Ait Idir/Discussion of problems raised by Idir.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a source(G1 |
| 3981 | Partial | 2/16/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Mustafa Ait Idir.  Complaints concerning guards; origin of name. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a s |
| 3982 | Partial | 3/7/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Interview of Mustafa Ait Idir.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a non |
| 3983 | Partial | 5/30/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Mustafa Ait Idir.  Questioned concerning his knowledge of certain persons. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtaine |
| 3985 | Partial | 6/7/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Mustafa Ait Idir/Discussion of problems raised by Idir.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a source(G1 |
| 3986 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN.  Interview of Mustafa Ait Idir.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a source(G |
| 3987 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN.  Interview of Mustafa Ait Idir.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-n |
| 3988-3991 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN.  Interview of Mustafa Ait Idir.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-n |
| 3992-3995 | Partial | UNK | JTF GTMO | Knicker Knowledgeability Brief | SECRET/NOFORN.  Provides background information on Ait Idir; information on activities.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1);  B(1) 1.4(c) concerning a source and information obtaine |

Page 26 of 87

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 3996 - 3998 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Interview of Mustafa Ait Idir. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-n |
| 4000 | Partial | 12/1/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Ait Idir. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-numeric |
| 4001 | Partial | 12/1/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Al Hajj. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-numeric p |
| 4002 | Partial | 12/1/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Al Haj. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-numeric po |
| 4003-4004 | Partial | 5/10/2002 | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning Al Haj background and activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1 |
| 4005 | Partial | 1/31/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Al Haj. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-numeric port |
| 4006-4007 | Partial | 4/14/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj interviewed by interrogator. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on |
| 4096-4097 | Partial | 5/10/2002 | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning Al Haj's background and activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source( |
| 4098-4102 | Partial | 5/11/2002 | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj/information concerning an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2 |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 4103-4106 | Partial | 5/11/2002 | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj questioned concerning an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2) |
| 4107-4116 | Partial | 5/12/2003 | JTF GTMO | Information Report | SECRET/NOFORN. Biographic report providing information concerning Al Hajj's background, activities, and knowledge on various topics. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) |
| 4117-4125 | Partial | 5/12/2003 | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj questioned concerning an organization and personnel. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a sourc |
| 4126-4135 | Partial | 5/12/2003 | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj questioned concerning contact with an individual. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1 |
| 4136-4137 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj questioned concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1 |
| 4138 | Partial | 11/11/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned about an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) |
| 4139-4140 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj questioned about a charity. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on no |
| 4141 | Partial | 12/11/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned by interrogator on various topics. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2) |
| 4142 | Partial | 12/11/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. I Haj posed questioned by interrogator.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 4143 | Partial | 1/30/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Al Haj. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-numeric port |
| 4144-4145 | Partial | 1/30/2004 | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj questioned about an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high |
| 4146 | Partial | 3/19/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj posed questioned by interrogator on various topics. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source |
| 4147-4148 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj questioned concerning an NGO. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on |
| 4149-4151 | Partial | 3/18/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Al Haj's background and activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a sourc |
| 4152-4153 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high |
| 4154-4155 | Partial | 3/20/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj/information concerning his knowledge of an organization and its activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and informat |
| 4156-4157 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj and Nechle attend meeting for employees of certain organizations. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtain |
| 4158-4159 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj/information concerning  employees of certain organizations. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 4160-4161 | Partial | 3/21/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned concerning background and a past meeting. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source |
| 4162 | Partial | 4/8/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned by interrogator on various topics.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); |
| 4163-4164 | Partial | 1/17/2004 | JTF GTMO | Memo- Multiple Sources | SECRET/NOFORN.  Review of status of Al Haj.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-nume |
| 4165-4168 | Partial | 4/29/2004 | CITF | Memo- Multiple Sources | SECRET/NOFORN.  Review of status of Al Haj.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-nume |
| 4169 - 4170 | Partial | 1/17/2004 | JTF GTMO | Memo- Multiple Sources | SECRET/NOFORN.  Review of status of Al Haj.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-nume |
| 4171-4173 | Partial | 4/14/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Information concerning Al Haji's contacts, certain organization and their operations..  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and informa |
| 4174 | Partial | 5/13/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Al Haj questioned by interrogator on various topics.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); |
| 4175 | Partial | 2/3/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned concerning certain organizations and his knowledge on various topics. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and informa |
| 4176 | Partial | 2/4/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned concerning certain organizations and activities.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 4177 | Partial | 2/5/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned about past events. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on |
| 4178 | Partial | 8/13/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned about background employment, knowledge of certain individuals. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information ob |
| 4179-4181 | Partial | 5/2/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned about meeting and an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); |
| 4182-4183 | Partial | 5/22/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned about an organization and background. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2 |
| 4184 | Partial | 5/29/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned by interrogator on various topics. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); |
| 4185 | Partial | 6/29/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj interviewed by interrogator. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on |
| 4186 | Partial | 6/21/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned by interrogator on various topics. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2) |
| 4187 | Partial | 7/6/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned regarding certain organizations. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); |
| 4188-4189 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj questioned about an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 4190-4191 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj questioned about an organization, personal views on religion. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from |
| 4192 | Partial | 7/15/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Al Haj; discussion of detainee review boards.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source |
| 4193 | Partial | 8/20/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj Interview of Al Haj concerning an organization.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1. |
| 4194 | Partial | 9/3/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj Interview of Al Haj concerning an organization.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1. |
| 4195 | Partial | 10/26/2004 | JTF GTMO | Summary Interrogation Report | CONFIDENTIAL.  Al Haj questioned about past activities, certain organizations. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a so |
| 4196-4197 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Al Haj's questioned about his knowledge of an individual, past activities, and work with certain organizations.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) conce |
| 4198 | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned about an organization, meeting.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B |
| 4200 | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Al Haj questioned knowledge of an individual.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2) |
| 4201-4202 | Partial | 2/16/2002 | JTF GTMO | Knowledgeability brief | SECRET/NOFORN. Information concerning Al Haj's background, education and activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained fro |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|-----------|---------|--------------------------------------|
| 4447-4448 | Partial | 2/6/2002 | JTF GTMO | Knowledgeability brief | SECRET/NOFORN. Information concerning Belkacem's background, education, activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from |
| 4449-4450 | Partial | 4/12/2002 | JTF GTMO | Information Report | SECRET/NOFORN. Belkacem questioned concerning name. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on n |
| 4451-4453 | Partial | 4/12/2002 | JTF GTMO | Information Report | SECRET/NOFORN. In formation on Belkacem concerning background, past activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a so |
| 4454 | Partial | 3/20/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem questioned concerning involvement in certain past activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained fr |
| 4455 | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem questioned concerning involvement in certain past activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained fr |
| 4456 | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem/discussion concerning delegation visit.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B( |
| 4457 | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Belkacem interviewed concerning various topics.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B |
| 4458 | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem interviewed concerning various topics.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B( |
| 4459 | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem questioned concerning involvement  certain activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a sour |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 4460 | Partial | 4/9/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem questioned concerning his knowledge of certain transactions. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from |
| 4461 | Partial | 6/1/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem interviewed by JTF GTMO personnel; includes assessments by interviewers. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information ob |
| 4462 | Partial | UNK | JTF GTMO | Report | SECRET/NOFORN. Belkacem questioned concerning an organization.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);　　B(2 |
| 4463 | Partial | 6/3/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Belkacem interviewed.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);　　B(2)(high) on non-numeric po |
| 4464 | Partial | 3/18/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem interviewed.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);　　B(2)(high) on non-numeric por |
| 4465-4466 | Partial | 3/18/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Belkacem questioned concerning information provided earlier, activities.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained |
| 4467 | Partial | 4/30/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem interviewed.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);　　B(2)(high) on non-numeric por |
| 4468 | Partial | 6/18/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem interviewed.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);　　B(2)(high) on non-numeric po |
| 4469 | Partial | 6/22/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Belkacem interviewed.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);　　B(2)(high) on non-numeric po |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 4470 | Partial | 7/7/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview to question Belkacem concerning certain individuals and organizations. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information ob |
| 4471 | Partial | 7/29/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Belkacem.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric po |
| 4472 | Partial | 8/12/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Belkacem.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric p |
| 4473 | Partial | 8/14/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Belkacem.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric po |
| 4474 | Partial | 8/15/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Belkacem.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric por |
| 4475 | Partial | 8/19/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Belkacem.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric po |
| 4476 | Partial | 11/5/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Belkacem.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric po |
| 4477 | Partial | 8/26/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Belkacem.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric po |
| 4478 | Partial | 9/1/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Belkacem.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric po |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|-----------|---------|--------------------------------------|
| 4479-4481 | Partial | 8/23/2002 | JTF GTMO | Detainee Profile | SECRET/NOFORN. Information concerning detainee and his activities; assessments by JTF GTMO personnel.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and informa |
| 4482-4483 | Partial | 6/29/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Belkacem, discussion of medical issues.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); |
| 4484-4485 | Partial | 5/27/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Belkacem and discussion concerning another individual.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from |
| 4487 | Partial | 5/27/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Interview of Belkacem. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric po |
| 4488 | Partial | 2/8/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Interview of Belkacem.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric p |
| 4489 | Partial | 1/21/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Interview of Belkacem. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric po |
| 4490 | Partial | 2/17/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Interview of Belkacem. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric po |
| 4493 | Partial | 7/28/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Lahkdar Boiumedienne.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)( |
| 4494 | Partial | 8/15/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Lahmar questioned concerning intelligence background.    B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(hig |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 4495 | Partial | 8/14/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar questioned concerning background.    B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)\hig |
| 4495-4497 | Partial | 2/6/2002 | JTF GTMO | Knowledgeability Brief | SECRET/NOFORN. Detainee profile of Lahmar.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numer |
| 4498-4500 | Deny in Full | 5/26/2004 | CITF | CITF Memorandum | SECRET/NOFORN.  Review of status of Lahmar, including factual synopsis and CITF recommendations.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information o |
| 4501 | Partial | 4/20/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar interviewed concerning background, past activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G |
| 4502 | Partial | 6/1/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lakhdar interviewed to check on his status. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)\hig |
| 4503-4504 | Partial | 1/30/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar questioned concerning an organization, background. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1 |
| 4505 | Partial | 9/23/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar questioned concerning his activities, camp issues.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1 |
| 4506-4507 | Partial | 7/28/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar questioned concerning his past activities, camp issues. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a sourc |
| 4508 | Partial | 8/26/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar questioned regarding an organization.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)\h |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 4509 | Partial | 8/19/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar questioned regarding an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(h |
| 4510 | Partial | 8/11/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar questioned regarding life in Bosnia, activities and associates.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained fro |
| 4511 | Partial | 8/13/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar questioned regarding life in Bosnia, activities and associates.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained fro |
| 4512 | Partial | 7/29/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar discusses review board process.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) o |
| 4519-4524 | Partial | 7/23/2004 | JTF GTMO | Memo- Multiple Sources | SECRET/NOFORN.  Review of status of Saber Lahmar includes summary of background, travels, connections to extremist groups, associations, and JTF GTMO assessment.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activi |
| 4525-4526 | Partial | 4/28/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Lahmar questioned concerning background, employment. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2 |
| 4527 | Partial | 7/7/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar interviewed.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) on non-numeric port |
| 4528 | Partial | 7/7/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar interviewed concerning historical/background events. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source |
| 4529 | Partial | 6/17/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar interviewed concerning historical/background events. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 4530 | Partial | 6/4/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar questioned concerning work, education.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2) |
| 4531 | Partial | 11/5/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar interviewed.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-numeric porti |
| 4532-4533 | Partial | 6/12/2002 | JTF GTMO | Information Report | SECRET/NOFORN.  Information concerning Saber Lahmar's knowledge of certain organizations.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained |
| 4534-4535 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN.  Information concerning Nechle's work and contact with certain organizations.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obta |
| 4536-4537 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN.  Information concerning Nechle's work and certain organizations.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a s |
| 4540-4541 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN.  Information concerning Lahmar's knowledge of an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a sour |
| 4542 | Partial | 2/8/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Lahmar interviewed.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-numeric porti |
| 4545-4546 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN.  Information concerning certain organizations.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)( |
| 4547-4548 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN.  Information concerning Saber Lahmar's past activities.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 4549-4551 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning Saber Lahmar's past activities. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2 |
| 4558-4559 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Saber Lahmar interviewed. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-numeri |
| 4563-4564 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning Lahmar's association with Mosque in Italy. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a |
| 4565-4568 | Partial | 2/7/2002 | JTF GTMO | Knicker Knowledgeability Brief | SECRET/NOFORN. Provides background information on Ait Idir and certain organizations. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained f |
| 4573 | Partial | 1/31/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Ait Idir/Interview to obtain information concerning terrorism. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained f |
| 4574 | Partial | 2/16/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Ait Idir/Interview for initial assessment. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); |
| 4575 | Partial | 7/23/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Ait Idir/Interview. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-nume |
| 4576 | Partial | 3/7/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Mustafa Ait Idir. Questioned concerning his knowledge of two individuals. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtain |
| 4577 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Mustafa Ait Idir/Ait Idir questioned concerning knowledge of an individual. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtain |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 4578 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN.  Results of interview of Ait Idir.  B(2)(high) on non-numeric portion of ISN Numbers (G2.1);  B(2) (high) concerning information internal to the USG (G2.3); B(5) internal deliberative assessments containing analysis or recommendations reg |
| 4579 | Partial | 7/30/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Ait Idir/Delegation Visit.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-numer |
| 4580 | Partial | 8/24/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Mustafa Ait Idir/Interviewed concerning activities and other topics.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained fro |
| 4581 | Partial | 3/7/2005 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Mustafa Ait Idir.  Questioned concerning his knowledge of certain people.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained |
| 4582-4583 | Partial | 1/17/2004 | JTF GTMO | Memo- Multiple Sources | SECRET/NOFORN.  Review of status of Ait Idir.  B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(2) (high) concerning |
| 4584-4587 | Deny in Full | 4/29/2004 | CITF | Memo- Multiple Sources | SECRET/NOFORN.  Review of status of 10004.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G |
| 4588-4590 | Partial | 2/7/2002 | JTF GTMO | Knicker Knowledgeability Brief | SECRET/NOFORN.  Provides background information on ISN 10006.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2) |
| 4591-4592 | Partial | 3/27/2002 | JTF GTMO | Information Report | SECRET/NOFORN.  Information concerning a meeting.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on n |
| 4593 | Partial | 11/11/2003 | JTF GTMO | ummary Interrogation Repc | SECRET/NOFORN.  Information concerning Mohammed Nechle's background, activities.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 4594 | Patial | 1/22/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Nechle interviewed concerning an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2 |
| 4595-4597 | Partial | 8/23/2002 | JTF GTMO | Detainee profile | SECRET/NOFORN. Background information concerning Nechle. Includes assessments by JTF GTMO personnel. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and inform |
| 4598-4599 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning Mohammed Nechle. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high |
| 4600-4601 | Partial | 3/27/2002 | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning Mohammed Nechle and a meeting. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2 |
| 4602 | | | | Summary Interrogation Rept | SECRET/NOFORN. Information concerning Mohammed Nechle and a certain organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from |
| 4603 | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Nechle. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-numeric po |
| 4603A | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Mohammed Nechle. B(2)(high) on non-numeric portion of ISN Numbers (G2.1); B(2) (high) concerning information internal to the USG (G2.3); B(5) internal deliberative assessments containing analysis or recommendatio |
| 4604-4605 | Partial | 12/17/2001 | JTF GTMO | Evaluation Request | UNCLASSIFIED. Information request regarding Mohammed Nechle. B(2)(high) on non-numeric portion of ISN Numbers (G2.1); B(2) (high) concerning information internal to the USG (G2.3); B(6) Names and personal identifying information of other individuals(G |
| 4606-4607 | Partial | UNK | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning Mohammed Nechle and a meeting. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2 |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|-----------|---------|--------------------------------------|
| 4608 | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Nechle interviewed concerning an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2 |
| 4609-4610 | Partial | 3/21/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Mohammed Nechle.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high |
| 4611-4612 | Partial | UNK | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Mohammed Nechle.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high) |
| 4613-4614 | Partial | 2/28/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Mohammed Nechle/Historical Info. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1. |
| 4615 | Partial | 9/23/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Mohammed Nechle, background information.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a s |
| 4616-4617 | Partial | 7/7/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Mohammed Nechle/Historical Information and employment.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obt |
| 4618-4619 | Partial | 3/7/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Mohammed Nechle/Historical Information.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a so |
| 4620 | Partial | 6/10/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Mohammed Nechle and an organization.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a sourc |
| 4621-4622 | Partial | 3/20/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Mohammed Nechle/Historical Information.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a so |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 4623-4624 | Partial | 4/24/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Nechle.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-numeric po |
| 4625 | Partial | 6/24/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Nechle.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-numeric po |
| 4626 | Partial | 7/1/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Nechle.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-numeric po |
| 4627 | Partial | 7/15/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Nechle.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-numeric por |
| 4628 | Partial | 7/26/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Nechle.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-numeric por |
| 4629 | Partial | 8/20/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Information concerning Mohammed Nechle and an organization.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a sourc |
| 4630 | Partial | 2/10/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Information concerning Mohammed Nechle.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high |
| 4631 | Partial | 3/3/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Information concerning Mohammed Nechle.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) |
| 4632 | Partial | 3/19/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Nechle interviewed.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-numeric por |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|-----------|---------|--------------------------------------|
| 4633-4634 | Partial | 3/4/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Mohammed Nechle. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) |
| 4635-4637 | Partial | 3/3/2002 | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning Mohammed Nechle and an organization .. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a sourc |
| 4638-4640 | Partial | 3/3/2002 | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning Mohammed Nechle and an organization.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source |
| 4641-4642 | Partial | 7/4/2002 | JTF GTMO | Information Report | SECRET/NOFORN. Information concerning Mohammed Nechle and an organization.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source |
| 4643-4648 | Partial | 3/25/2002 | JTF GTMO | Information Report | SECRET/NOFORN.  Information concerning Mohammed Nechle/Knowledge of certain organizations.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtaine |
| 4649-4651 | Partial | 2/7/2002 | JTF GTMO | Knicker Knowledgeability Brief | SECRET/NOFORN.  Information concerning Mohammed Nechle.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(high |
| 4652-4654 | Partial | | JTF GTMO | Knicker Knowledgeability Brief | SECRET/NOFORN.  Information concerning Mohammed Nechle/ background information.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a |
| 4655-4656 | Partial | 1/17/2004 | JTF GTMO | Memorandum | SECRET. Memo regarding Lahkdar Boiumedienne; background information and assessments by U.S. Government personnel.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source |
| 4657 | Partial | 10/5/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN.  Information concerning Lahkdar Boiumedienne.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)\ |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|-----------|---------|--------------------------------------|
| 4658 | Partial | 9/3/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Lahkdar Boiumedienne. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)( |
| 4659 | Partial | 8/27/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Lahkdar Boiumedienne.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)( |
| 4660 | Partial | 7/30/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Lahkdar Boiumedienne.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)( |
| 4661 | Partial | 6/28/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Lahkdar Boiumedienne.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)( |
| 4662 | Partial | 6/8/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Lahkdar Boiumedienne.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)( |
| 4663 | Partial | 4/29/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Lahkdar Boiumedienne.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)(h |
| 4664 | Partial | 7/28/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Information concerning Lahkdar Boiumedienne.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);   B(2)( |
| 4665-4666 | Partial | 2/25/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne.  B(1)(1.4)(a); military operations;  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained fro |
| 4667-4668 | Partial | 2/18/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a non B(2)(high) on non |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 4669-4670 | Partial | 2/17/2003 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on no |
| 4671 | Partial | 7/27/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on no |
| 4672 | Partial | 6/7/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on no |
| 4673 | Partial | 8/2/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on n |
| 4674-4675 | Partial | 7/31/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on n |
| 4676 | Partial | 7/30/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on n |
| 4677 | Partial | 7/29/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on n |
| 4678 | Partial | 7/26/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on n |
| 4679 | Partial | 7/25/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on n |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 4680 | Partial | 7/27/2002 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on n |
| 4681 | Partial | 5/4/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lakhdar Boiumedienne.  B(1)1.4)(a): military operations;  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained fro |
| **GC Documents** | | | | | |
| 5509-5513 | Released | 10/17/02 | State | Telegram | Unclassified.  BIH Human Rights Chamber |
| 5516 | Partial | 05/06/04 | OSD Policy | E-mail with draft memorandum concerning communications with foreign government. | SECRET. E-mail released. Attachments regarding foreign government communications about detainees withheld by ODA under (b)(1) 1.4(b), (d); (b)(6). See Stimson Declaration |
| 5517-5519 | Partial | 03/18/03 | State | Telegram | CONFIDENTIAL.  Telegram concerning request for information concerning two Algerians. (b)(1), 1.4(b), (d); (b)(6); (b)(7)(A),(C).  See Ritchie Declaration. |
| 5520-5521 | Partial | 09/08/05 | GC | E-mail with draft memorandum concerning requestors to OSD Policy | SECRET.  E-mail released. Attachment to Senator Jeffords released.  Draft response withheld.  ODA: (b)(1), 1.4(b), (d); (b)(5).  See Stimson Declaration.  GC: (b)(5); (b)(6).  See Tailt Declaration. |
| **DIA Documents referred to EUCOM** | | | | | |
| 5526-5530 | Partial | 10/19/2001 | USEUCOM | Force Protection | SECRET.  Document discussing Force Protection measures in various regions of the world.  (b)(1) 1.4(a).  See Declaration of _ |
| **JAC** | | | | | |
| 05600-05629 | Partial | 1/12/2004 | JAC | PowerPoint presentation | SECRET/NOFORN  PowerPoint presentation discussing detainees, status of intelligence collection efforts. B(1) 1.4(d) concerning diplomatic exchanges between the U.S. and a foreign government concerning requestors (J1.1d); B(1) 1.4(c) concerning analyst.com |
| **DIA Docs - JAC referral released in part** | | | | | |
| 5849-5854 | Partial | 9/19/2002 | DIA | Information Report | SECRET/NOFORN.  Intelligence Information Report concerning association and activities of a person of interest.  B(1) 1.4(c); B(2); B(6).  See Declaration of Brian Scott Kinsey. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 5855-5863 | Partial | 11/28/2001 | DIA | Information Report | SECRET/NOFORN. Information concerning suspicious members and organizations in Bosnia. B(1) 1.4(c); B(2); B(6). See Declaration of Brian Scott Kinsey. |
| 5864-5868 | Partial | 12/19/2001 | DIA | Information Report | SECRET/NOFORN. Information concerning organizers of finance for redical Islamic groups. B(1) 1.4(c); B(2); B(6). See Declaration of Brian Scott Kinsey. |
| 5872-5876 | Partial | 2/20/2002 | DIA | Information Report | SECRET/NOFORN. Information pertaining to individuals with suspected terrorist associations. B(1) 1.4(c); B(2); and B(6). See Declaration of Brian Scott Kinsey. |
| 5888-5890 | Partial | 7/3/2002 | DIA | Information Report | SECRET/NOFORN. Information concerning Belkacem's activities and associations. B(1) 1.4(c); B(2); and B(6). See Declaration of Brian Scott Kinsey. |
| 5891-5894 | Partial | 11/19/2001 | DIA | Information Report | SECRET/NOFORN. Information concerning foreign mujahaddin in Bosnia. B(1) 1.4(c); B(2); and B(6). See Declaration of Brian Scott Kinsey. |
| 5895-5899 | Partial | 7/11/2005 | DIA | Information Report | SECRET/NOFORN. Information concerning Islamic youth organization and recruitment of fighters for Iraq. B(1) 1.4(c); B(2); and B(6). See Declaration of Brian Scott Kinsey. |
| **JAC** | | | | | |
| 05917-05920 | Partial | 4/25/2003 | JTF-GTMO | Report of interview with detainee | SECRET Report of interview with ISN 10003. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 05923-05929 | Partial | 3/28/2002 | JAC | Data sheet | SECRET/NOFORN Individual data sheet for ISN 10003. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that w |
| 05930-05931 | Partial | 7/16/2004 | JAC | Repatriation review | SECRET/NOFORN Review of status of ISN 10003.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would re |
| 05932-05945 | Partial | 5/1/2003 | JAC | Detainee Profile | SECRET/NOFORN Profile of detainee ISN 10002.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would re |
| 05948-05949 | Partial | UNK | JTF GTMO | Summary interrogation report | SECRET/NOFORN Summary of interrogation of detainee 10003.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(2); B(high) on non-numeric portion of ISN numbers (2.1); (B)(6) concerning personal identi |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 05950-05957 | Partial | 6/12/2003 | JAC | Detainee Profile | SECRET/NOFORN Profile of detainee 10005.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(2) (high) on non-numeric portion of ISN numbers (2.1); (B)(6) concerning personal identifying information |
| 05958-05960 | Partial | 7/16/2004 | JAC | Repatriation Review | SECRET/NOFORN Assessment of detainee 10005 regarding potential repatriation.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(2) (high) on non-numeric portion of ISN numbers (2.1); (B)(6) concerni |
| 05961-05968 | Partial | 6/3/2003 | JAC | Detainee Profile | SECRET/NOFORN Profile of detainee 10003.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(d) concerning diplomatic exchanges between the U.S. and a foreign government concerning requestors |
| 05969-05970 | Partial | 6/7/2004 | JAC | Repatriation Review | SECRET/NOFORN Assessment of detainee 10001 regarding potential repatriation. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(d) concerning diplomatic exchanges between the U.S. and a fore |
| 05971-05972 | Partial | 7/20/2004 | JAC | Repatriation Review | SECRET/NOFORN Assessment of detainee 10006 regarding potential repatriation. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(d) concerning diplomatic exchanges between the U.S. and a fore |
| 5984 | Partial | ?/?/2002 | UNK | Detainee Profile | SECRET/NOFORN Profile of detainee ISN 10003. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would r |
| 05985-05986 | Partial | 3/18/2004 | JTF-GTMO | Information Report | SECRET/NOFORN Report of interview with detainee ISN 10004 B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information |
| 05987-05988 | Partial | 3/18/2004 | JTF-GTMO | Information Report | SECRET/NOFORN Report of interview with detainee ISN 10004 B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information |
| 5989 | Partial | UNK | JAC | Email tasking request | SECRET/NOFORN  Request for analysis of detainee ISN 10006.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 05992-05994 | Partial | 8/20/2002 | JAC | Report of interview with detainee | SECRET/NOFORN Report of interview with ISN 10004 with list of detainees and affiliations. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questio |
| | | | | **JAC documents** | |
| 06007-06010 | Partial | 6/12/2003 | JCTF | Background information | SECRET/NOFORN Report details background information on ISN 10002 B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for info |
| 06011-06014 | Partial | 6/12/2003 | JCTF | Background information | SECRET/NOFORN Report discusses activities and affiliations of ISN 10002.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests f |
| 06015-06019 | Partial | 6/12/2003 | JCTF | Background information | SECRET/NOFORN Report discusses activities and affiliations of ISN 10003. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests |
| 06020-06021 | Partial | 2/28/2002 | JTF170 | Background information | SECRET/NOFORN Report discusses activities and affiliations of ISN 10006.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests f |
| 06022-06027 | Partial | 3/20/2002 | JTF170 | Background information | SECRET/NOFORN Report discusses activities and affiliations of ISN 10005.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests f |
| 6099 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Background of detainee 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(2) (high) on non-numeric portion of ISN numbers (2.1). |
| 06100-06101 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Background on detainees 10002 and 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1);B(2) (high) on non-numeric portion of ISN numbers (2.1). |
| 06126-06130 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN List of tasking messages and subjects referencing ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) con |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 06131-06138A | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN List of tasking messages and subjects referencing ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) con |
| 06139-06140A | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence |
| 06141-06143 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06144-06145 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06146-06151 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06152-06155 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10003.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source |
| 06156-06175 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06176-06179 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06180-06182 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 06183-06186 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06187-06191 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06192-06195 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B |
| 06196-06199 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06200-06201 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06202-06206 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06207-06210 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. (b)(1)1.4c/(b)(2)/(b)(6). B(1) 1.4(c) concerning intelligence information obtained that would reveal |
| 6211 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing name, number and background information related to ISN 10005. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source |
| 6213 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing name, number and background information related to ISN 10003 and ISN 10004. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence I |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 6214 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 6215 | Partial | 6/12/2003 | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06216-06218 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and messages related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1 |
| 06221-06238 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet of background information on ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning |
| 06239-06243 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet of background information on ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning |
| 06244-06251 | Partial | 4/19/2003 | JAC | Spreadsheet | SECRET/NOFORN  Spreadsheet denoting intelligence planning for ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) conce |
| 06252-06257 | Partial | 3/22/2003 | JAC | Spreadsheet | SECRET/NOFORN  Spreadsheet denoting intelligence planning for ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) conce |
| 6258 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN  Spreadsheet listing names and numbers of ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning |
| 06259-06260 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN  Spreadsheet listing names, numbers and nationality of ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 6261 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and nationality of ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) |
| 6262 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN  Spreadsheet listing names, numbers and nationality of ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) |
| 6263 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) conce |
| 6264-6265 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 6266 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06267-06284 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| **JAC Document referred to DIA** | | | | | |
| 06293-06299 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06300-06307 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| 06308-06315 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 06316–06318 | Partial | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and background information related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities |
| | | | | **JAC Documents referred to GTMO** | |
| 6319 – 6320 | Partial | 6/11/2004 | JTF-GTMO | Intelligence Assessment | SECRET/NOFORN. Intelligence Assessment for Sabir Lahmar. B(1) 1.4(a) concerning military operations (G1.1(a)); B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source a |
| 6321 – 6325 | Partial | UNK | JTF-GTMO | Summary Intelligence Report | SECRET/NOFORN. Lahmar interviewed about activities, other individuals, camp activities. B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for further intelligence which would reveal intelligen |
| 6326 – 6329 | Partial | 4/2/2002 | JTF-GTMO | Intelligence Information Report | SECRET. Ait Idir questioned about meeting. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G1.1); 1.4(c) concerning a source and information obtained from a source (G1.2); B(1)(1.4)(c); concerning analy |
| 6330 – 6331 | Partial | 3/3/2002 | JTF-GTMO | Intelligence Information Report | SECRET. Mohammed Nechle questioned about employment, an organization. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible appr |
| 6332 – 6333 | Partial | 2/7/2002 | JTF-GTMO | Knicker Knowledgeability Brief | SECRET. Information concerning Nechle's background, activities.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning information that would reveal methods and intelligence activ |
| 6334 | Partial | UNK | JTF-GTMO | Worksheet for Consideration of Release or Transfer | SECRET/NOFORN. Worksheet for Consideration of Release or Transfer for Belkacem. B(1) 1.4(a) concerning military operations (G1.1(a)); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would reveal methods an |
| 6335 | Partial | UNK | JTF-GTMO | Worksheet for Consideration of Release or Transfer | SECRET/NOFORN. Worksheet for Consideration of Release or Transfer for Lahmar. B(1)1.4(a) concerning military operations(G1.6); B(1) 1.4(c) concerning information that would reveal methods and intelligence activities (G1.3). B(1)(1.4)(c) concerning ana |
| 6339 – 6340 | Partial | UNK | JTF-GTMO | Information Report | SECRET/X1. Information report concerning Boudella's association with an organization. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1) 1.4(c) concerning information that would reveal methods and intelligence activities |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 6341 - 6342 | Partial | UNK | JTF-GTMO | Information Report | SECRET/X1. Information Report on Boudella concerning a meeting. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would reveal me |
| 6343 - 6344 | Partial | UNK | JTF-GTMO | Information Report | SECRET/X1. Information Report providing background information on Boudella. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that wou |
| 6347 - 6349 | Partial * | 4/12/2002 | JTF-GTMO | Intelligence Information Report | SECRET. Information concerning Belkacem's background, certain individuals. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1) 1.4(c) concerning information that would reveal methods and intelligence activities (G1.3); B(1 |
| 6350 - 6351 | Partial | 2/6/2002 | JTF-GTMO | Knicker Knowledgeability Brief | SECRET. Background and biographic data on Lahmar. B(1) 1.4(c) concerning information that would reveal methods and intelligence activities (G1.3); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approa |
| 6352 - 6353 | Partial | 2/7/2002 | JTF-GTMO | Knicker Knowledgeability Brief | SECRET.  Ait-Idir.  B(1) 1.4(a) concerning military operations (G1.1(a)); B(1) 1.4(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for further intelligence which would reveal intelligence activities and |
| 6354 - 6363 | Partial | UNK | JTF-GTMO | Profile | SECRET/NOFORN.  Profile of Al_Haj providing background information, significance assessments, and intel summary.  B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(d) concerning diplomatic exchanges between the U.S. a |
| 6367 - 6368 | Partial | 2/26/2002 | JTF-GTMO | Intelligence Information Report | SECRET.  Information concerning Ait Idir's employment, activities, and an organization. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1) 1.4(c) concerning information that would reveal methods and intelligence activities |
| 6369 -6371 | Partial | 2/7/2002 | JTF-GTMO | Knicker Knowledgeability Brief | SECRET.  Background and biographic data concerning Ait-Idir.  B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for |
| 6372 - 6374 | Partial | UNK | JTF-GTMO | Intelligence Information Report | CONFIDENTIAL.  Information concerning Boudella Al-Haj's past activities. B(1) 1.4(c) concerning  information that would reveal methods and intelligence activities (G1.3); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gather |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 6375 - 6376 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET. Information obtained from a source (not the requestors). B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches |
| 6377 - 6378 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET. Ait-Idir questioned concerning an organization. B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for further intelligence which would reveal intelligence activities and methods (G1.5); |
| 6379 - 6381 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET. Boudella Al-Haj questioned concerning an organization. B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for further intelligence which would reveal intelligence activities and methods |
| 6382 - 6383 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET/NOFORN. Nechle questioned about a meeting. B(1) 1.4(c) concerning information that would reveal methods and intelligence activities (G1.3); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approac |
| 6384 - 6386 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET/NOFORN. Boudella Al-Haj, information concerning an organization. B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for further intelligence which would reveal intelligence activities an |
| 6387 - 6388 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET. Boudella Al-Haj, information on an individual.  B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1) 1.4(c) concerning information that would reveal methods and intelligence activities (G1.3).  B(1)(1.4)(c) concernin |
| 6389 - 6391 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET/NOFORN. Lahkdar Boumediene; information on an organization.  B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approach |
| 6392 - 6394 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET. Lahkdar Boumediene; past activities and information on an individual. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1) 1.4(c) concerning  information that would reveal methods and intelligence activities (G1.3) |
| 6395 - 6396 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET. Lahkdar Boumediene; information on an organization. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 6397 - 6398 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET. Information concerning Lahmar's past activities. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for fur |
| 6399 - 6401 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET/NOFORN. Boudela Al-Haj; information on an organization. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches f |
| 6403 - 6410 | Partial | 2/6/2002 | JTF-GTMO | Knicker Knowledgeability Brief | SECRET. Background and biographic data concerning Bensayah Belkacem. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approa |
| 6411 - 6412 | Partial | 2/6/2002 | JTF-GTMO | Knicker Knowledgeability Brief | SECRET. Background and biographic data concerning Lahmar.B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for furt |
| 6413 - 6414 | Partial | 2/7/2002 | JTF-GTMO | Knicker Knowledgeability Brief | SECRET. Background and biographic data concerning Boudella. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for f |
| 6415-6416 | Partial | 2/7/2002 | JTF-GTMO | Knicker Knowledgeability Brief | SECRET. Background and biographic data concerning Lahmar. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for fur |
| 6420 - 6421 | Partial | 2/7/2002 | JTF-GTMO | Knicker Knowledgeability Brief | SECRET. Background and biographic data concerning Boudella. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible approaches for |
| 6422 - 6424 | Partial | UNK | JTF-GTMO | Intelligence Information Report | SECRET. Saber Lahmar; information concerning an organization. B(1)1.4(c) concerning the activities and associations of one or more requesters which would reveal intelligence sources and activities. (G1.4); B(1)(1.4)(c) concerning analyst comments and in |
| 6425 - 6427 | Partial | 4/30/2003 | JTF-GTMO | Memorandum for Record | SECRET. Dossier and intelligence summary concerning Bensayah Belkacem. B(1)1.4(c) concerning the activities and associations of one or more requesters which would reveal intelligence sources and activities. (G1.4); B(1)(1.4)(c) concerning analyst comments |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 6428 - 6430 | Partial | 4/29/2004 | JTF-GTMO | Memorandum for Record | SECRET. Dossier and intelligence summary Boumediene. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would reveal methods and in |
| 6431 - 6432 | Partial | | JTF-GTMO | Dossier | SECRET/NOFORN. Dossier on Bensayah Belkacem.  B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(1)(1.4)(d) concerning diplomatic exchanges between the U.S. and a Foreign government concerning requesters (G1.8); B(2) (high) o |
| 06466-06468 | Partial | 12/14/2001 | ARMY INSCOM | Balkacem stripped of Bosnian citizenship and may face charges of terrorism | CONFIDENTIAL. Discussion of Belkacem's travels, possible terrorist connections and associations. (b)(1)1.4c/(b)(2)/(b)(6). INSCOM: (b)(1); (b)((6); (b)(2) see Declaration by Susan Butterfield. |
| 06469-06473 | Partial | 1/9/2002 | ARMY INSCOM | Islamic fundamentalist and insurgent activities in the Balkans | CONFIDENTIAL NOFORN:  Information concerning requestors and association with extremist organizations and certain individuals. (b)(1) 1.4c (b)(2) high on intelligence message file numbers. |
| 06480-06482 | Partial | 11/7/2001 | ARMY INSCOM | Balkacem stripped of Bosnian citizenship and may face charges of terrorism | CONFIDENTIAL.  Discussion of Belkacem's travels, possible terrorist connections and associations. (b)(1).4c/(b)(2)/(b)(6). INSCOM: (b)(1); (b)(2) (b)(6) see Declaration by Susan Butterfield. |
| **JAC Documents** | | | | | |
| 07012-07013 | Deny in Full | 8/22/2005 | JAC | email string | UNCLASSIFIED Discusses the interest level of various detainees. B(5), internal deliberative assessments containing analysis or recommendations regarding matters related to detainees or intelligence gathering activities. requestors (J 5.1); (B)(6) concerni |
| 07025-07027 | Deny in Full | 2/16/2002 | JAC | Information Report | SECRET/NOFORN Details information about affiliations and associations of ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(d) concerning diplomatic exchanges between the U.S. and |
| 07036-07037 | Deny in Full | 2/21/2002 | JTF170 | Information Report | SECRET/NOFORN Document discusses individuals who have been interviewed. Also addresses staffing and funding of US facility at Guantanamo. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(2) (hig |
| 7040 | Deny in Full | 6/10/2003 | JAC | Email | SECRET/NOFORN Email discusses issues regarding ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 07043-07045 | Deny in Full | 9/2/2005 | JAC | Information Report | SECRET/NOFORN Report of interview with detainee ISN 00197 regarding ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(d) concerning diplomatic exchanges between the U.S. and a fo |
| 7046 | Deny in Full | UNK | JAC | List of repatriation review due | SECRET/NOFORN List of detainees scheduled for repatriation review. 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning a source and information obtained from a source (J1.2) |
| | | | | **JAC documents referred to DIA** | |
| 7151-7154 | Deny in Full | 3/7/1996 | DIA | Information Report | SECRET Background information regarding Bosnia. (b)(1)1.4c/(b)(2)/(b)(6). See Declaration of Brian Scott Kinsey.. |
| | | | | **JAC documents referred to OGA** | |
| 7216 | Deny in Full | 6/10/2003 | OGA | OGA document | SECRET/NOFORN Individuals associated with specific networks. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7217 | Deny in Full | 8/7/2002 | OGA | OGA document | SECRET/NOFORN Background information on individuals. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7221 | Deny in Full | 5/28/2002 | OGA | OGA document | SECRET/NOFORN Calling activity. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7222 | Deny in Full | 5/14/2002 | OGA | OGA document | SECRET/NOFORN Data associated with phone numbers. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7230-7233 | Deny in Full | 5/15/2002 | OGA | Information Report | SECRET/NOFORN Debriefing of another detainee. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7234-7240 | Deny in Full | 11/3/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10003. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7241-7243 | Deny in Full | 4/2/2002 | OGA | Information Report | SECRET/NOFORN Debriefing of ISN 10001. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7244-7249 | Deny in Full | 5/16/2002 | OGA | Information Report | SECRET/NOFORN Debriefing of another detainee. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7250-7253 | Deny in Full | 11/2/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10003. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7254-7256 | Deny in Full | 10/2/2001 | OGA | Information Report | SECRET/NOFORN Background information on requesters. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7257-7258 | Deny in Full | 1/19/2002 | OGA | Information Report | SECRET/NOFORN Background information on requesters. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7259-7260 | Deny in Full | 4/12/2001 | OGA | Information Report | SECRET/NOFORN Background information on ISN 10002. (b)(1) 1.4(c). See Declaration of John Taitt. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 7261-7264 | Deny in Full | 10/20/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10002. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7265-7266 | Deny in Full | 3/1/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10002. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7275-7277 | Deny in Full | 7/10/2003 | OGA | Information Report | SECRET/NOFORN Information provided by another individual. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7307-7309 | Deny in Full | 10/22/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10002. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7314-7321 | Deny in Full | 11/1/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10005. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7322-7324 | Deny in Full | 10/31/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10005. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7327-7330 | Deny in Full | 3/5/2002 | OGA | Information Report | SECRET/NOFORN Debriefing of ISN 10002. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7331-7334 | Deny in Full | 10/20/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10002. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7335-7338 | Deny in Full | 6/20/2002 | OGA | Information Report | SECRET/NOFORN Background information. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7339-7341 | Deny in Full | 10/26/2001 | OGA | Information Report | SECRET/NOFORN Information regarding ISN 10001 and ISN 10002. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7342-7345 | Deny in Full | 8/2/2003 | OGA | Information Report | SECRET/NOFORN Information on another detainee. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7346-7349 | Deny in Full | 11/22/2002 | OGA | Information Report | SECRET/NOFORN Information on another detainee. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7350-7352 | Deny in Full | 11/1/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10006. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7353-7354 | Deny in Full | 6/1/2005 | OGA | Information Report | SECRET/NOFORN Information on other individuals. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7355-7358 | Deny in Full | 3/3/2004 | OGA | Information Report | SECRET/NOFORN Background information. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7359-7360 | Deny in Full | 7/5/2000 | OGA | Information Report | SECRET/NOFORN Background information on ISN 10002. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7361-7366 | Deny in Full | 6/5/2000 | OGA | Information Report | SECRET/NOFORN Background information. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7367-7370 | Deny in Full | 8/6/2002 | OGA | Information Report | SECRET/NOFORN Background information. (b)(1) 1.4(c). See Declaration of John Taitt. |
| 7371-7373 | Deny in Full | 12/6/2000 | OGA | Information Report | SECRET/NOFORN Background information on ISN 10002. (b)(1) 1.4(c). See Declaration of John Taitt. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 7374-7375 | Deny in Full | 8/7/2002 | OGA | Information Report | SECRET/NOFORN Background information loosely connected to ISN 10001. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7376-7377 | Deny in Full | 5/9/2001 | OGA | Information Report | SECRET/NOFORN Background information loosely connected to ISN 10002. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7378-7382 | Deny in Full | 5/9/2002 | OGA | Information Report | SECRET/NOFORN Field assessment. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7383-7385 | Deny in Full | 3/10/2000 | OGA | Information Report | SECRET/NOFORN Background information. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7386-7388 | Deny in Full | 5/11/2005 | OGA | Information Report | SECRET/NOFORN Information on other individuals. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7389-7390 | Deny in Full | 12/14/2000 | OGA | Information Report | SECRET/NOFORN Background information on ISN 10002. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7395-7396 | Deny in Full | 2/16/2002 | OGA | Information Report | SECRET/NOFORN Background information on another individual. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7397-7401 | Deny in Full | 10/16/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10001. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7402-7404 | Deny in Full | 2/16/2001 | OGA | Information Report | SECRET/NOFORN Information on another individual. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7405-7407 | Deny in Full | 5/17/2002 | OGA | Information Report | SECRET/NOFORN Information on other individuals. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7408-7412 | Deny in Full | 6/17/2002 | OGA | Information Report | SECRET/NOFORN Information on another individual. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7413-7414 | Deny in Full | 1/19/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10002. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7415-7417 | Deny in Full | 3/22/2002 | OGA | Information Report | SECRET/NOFORN Background information. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7418-7425 | Deny in Full | 2/22/2002 | OGA | Information Report | SECRET/NOFORN Background information on ISN 10004 and other individuals. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7426-7431 | Deny in Full | 2/22/2002 | OGA | Information Report | SECRET/NOFORN Background information on ISNs 10001, 10003, 10006, and other individuals. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7432-7434 | Deny in Full | 10/23/2001 | OGA | Information Report | SECRET/NOFORN Background information on another individual. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7435-7440 | Deny in Full | 10/25/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10004. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7441-7445 | Deny in Full | 11/26/2002 | OGA | Information Report | SECRET/NOFORN Background information. (b)(1) 1.4(c).  See Declaration of John Taitt. |
| 7446-7451 | Deny in Full | 10/30/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10004. (b)(1) 1.4(c).  See Declaration of John Taitt. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 7452-7455 | Deny in Full | 10/31/2001 | OGA | Information Report | SECRET/NOFORN Information on ISN 10006. (b)(1) 1.4(c). See Declaration of John Taitt. |
| | | | | **FBI DOCS REFERRED FROM EUCOM Joint Analysis Center** | |
| 7456-7462 | Deny in Full | 2/20/2002 | FBI | FBI 302 for ISN 10001 | UNCLASSIFIED Interview of ISN 10001 discussing background, travel and associations. (b)(6)/(b)(7)(C) Names of persons other than requesters; (b)(7)(a). |
| 7463-7464 | Deny in Full | 3/2/2002 | FBI | FBI 302 for ISN 10001 | UNCLASSIFIED Interview of ISN 10001 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7465-7466 | Deny in Full | 11/29/2002 | FBI | FBI 302 for ISN 10001 | UNCLASSIFIED Interview of ISN 10001 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) Names of persons other than requesters; (b)(7)(a). |
| 7467 | Deny in Full | 12/6/2002 | FBI | FBI 302 for ISN 10001 | UNCLASSIFIED Interview of ISN 10001 discussing background and associations.(b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7468-7470 | Deny in Full | 4/8/2003 | FBI | FBI 302 for ISN 10001 | UNCLASSIFIED Interview of ISN 10001 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7471-7477 | Deny in Full | 2/25/2002 | FBI | FBI 302 for ISN 10002 | UNCLASSIFIED Interview of ISN 10002 discussing background, travel and associations. (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7478 | Deny in Full | 4/29/2002 | FBI | FBI 302 for ISN 10002 | UNCLASSIFIED Interview of ISN 10002 discussing background and associations. (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7479-7480 | Deny in Full | 5/19/2002 | FBI | FBI 302 for ISN 10002 | SECRET Interview of ISN 10002 discussing background, travel and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7481 | Deny in Full | 6/25/2002 | FBI | FBI 302 for ISN 10002 | SECRET Interview of ISN 10002 discussing background, travel and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 7482 | Deny in Full | 6/24/2002 | FBI | FBI 302 for ISN 10002 | UNCLASSIFIED Participants in interview of ISN 10002. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7483-7485 | Deny in Full | 2/10/2002 | FBI | FBI 302 for ISN 10003 | UNCLASSIFIED Interview of ISN 10003 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a).. |
| 7486-7488 | Deny in Full | 2/18/2002 | FBI | FBI 302 for ISN 10003 | UNCLASSIFIED Interview of ISN 10003 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7489-7493 | Deny in Full | 3/24/2002 | FBI | FBI 302 for ISN 10003 | UNCLASSIFIED Interview of ISN 10003 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7494-7496 | Deny in Full | 5/21/2002 | FBI | FBI 302 for ISN 10003 | SECRET Interview of ISN 10003 discussing background and associations. (b)(1)1.4c,d; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7497-7499 | Deny in Full | 5/21/2002 | FBI | FBI 302 for ISN 10003 | UNCLASSIFIED Interview of ISN 10003 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7500-7501 | Deny in Full | 7/14/2002 | FBI | FBI 302 for ISN 10003 | SECRET Interview of ISN 10003 discussing background and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7502 | Deny in Full | 8/27/2002 | FBI | FBI 302 for ISN 10003 | UNCLASSIFIED Interview of ISN 10003 discussing background. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7503-7510 | Deny in Full | 2/23/2002 | FBI | FBI 302 for ISN 10004 | UNCLASSIFIED Interview of ISN 10004 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7512-7513 | Deny in Full | 5/24/2002 | FBI | FBI 302 for ISN 10004 | SECRET Interview of ISN 10004 discussing background, travel and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|-----------|---------|--------------------------------------|
| 7570-7571 | Deny in Full | 11/29/2002 | FBI | FBI 302 | UNCLASSIFIED Interview of ISN 10001 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7572-7573 | Deny in Full | 12/6/2002 | FBI | FBI 302 | UNCLASSIFIED Interview of ISN 10001 discussing background and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a).. |
| 7582-7584 | Deny in Full | 4/8/2003 | FBI | FBI 302 | UNCLASSIFIED Interview of ISN 10001 discussing background and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a).. |
| 7598-7602 | Deny in Full | 2/25/2002 | FBI | derived from FBI 302 | UNCLASSIFIED Interview of ISN 10002 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a).. |
| 7609-7615 | Deny in Full | 2/25/2002 | FBI | FBI 302 | UNCLASSIFIED Interview of ISN 10002 discussing background, travel and associations. (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 7616 | Deny in Full | 4/29/2002 | FBI | FBI 302 | UNCLASSIFIED Interview of ISN 10002 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a).. |
| 7617 | Deny in Full | 7/17/2002 | FBI | FBI 302 | SECRET Interview of ISN 10002 discussing background and associations. (b)(1)1.4c,d/ (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a).. |
| 7618-7620 | Deny in Full | 1/18/2002 | CJTF | derived from FBI 302 | SECRET Interview of ISN 10003 discussing background, travel and associations. (b)(1)1.4c/ (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a).. |
| 7772-7783 | Deny in Full | 2/11/2002 | FBI | FBI 302 | UNCLASSIFIED Interview of GTMO detainee. ; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a),(d),(f). |
| 7784-7785 | Deny in Full | UNK | FBI | FBI 302 | SECRET Interview of GTMO detainee. (b)(1)1.4c/ (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 7786-7787 | Deny in Full | 6/13/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7788-7789 | Deny in Full | 4/24/2002 | FBI | FBI 302 | UNCLASSIFIED Interview of GTMO detainee. ; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7790 | Deny in Full | 5/23/2002 | FBI | derived from FBI 302 | UNCLASSIFIED Interview of GTMO detainee regarding subjects of request. ; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7791 | Deny in Full | 5/23/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7792 | Deny in Full | 5/23/2002 | FBI | FBI 302 | UNCLASSIFIED Interview of GTMO detainee regarding subjects of request. ; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7793-7795 | Deny in Full | 5/30/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7796-7797 | Deny in Full | 7/31/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7798-7799 | Deny in Full | UNK | FBI | derived from FBI 302 | UNCLASSIFIED Interview of GTMO detainee regarding subjects of request. ; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7800-7802 | Deny in Full | 6/6/2002 | FBI | FBI 302 | UNCLASSIFIED Interview of GTMO detainee regarding subjects of request. ; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7803-7805 | Deny in Full | 5/22/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 7806-7807 | Deny in Full | 3/21/2002 | FBI | derived from FBI 302 | UNCLASSIFIED Interview of GTMO detainee. ; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7808-7809 | Deny in Full | 3/21/2002 | FBI | derived from FBI 302 | UNCLASSIFIED Interview of GTMO detainee. ; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7810 | Deny in Full | 5/25/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7811-7815 | Deny in Full | UNK | FBI | interview of another detainee | UNCLASSIFIED Interview of GTMO detainee. ; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7816-7819 | Deny in Full | 6/8/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7820-7821 | Deny in Full | 6/1/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7822-7823 | Deny in Full | 5/26/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7824 | Deny in Full | 5/24/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7825-7829 | Deny in Full | 5/12/2002 | CITF | interview of another detainee | SECRET Interview of GTMO detainee. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7830-7835 | Deny in Full | 6/18/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|-----------|---------|--------------------------------------|
| 7836-7839 | Deny in Full | UNK | FBI | interview of another detainee | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7840-7844 | Deny in Full | UNK | FBI | interview of another detainee | UNCLASSIFIED Interview of GTMO detainee regarding subjects of request.; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7845-7850 | Deny in Full | UNK | FBI | interview of another detainee | UNCLASSIFIED Interview of GTMO detainee regarding subjects of request. ; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7851-7854 | Deny in Full | 6/8/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7855 | Deny in Full | 5/24/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7856-7858 | Deny in Full | 5/27/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee regarding subjects of request. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7859-7866 | Deny in Full | 5/2/2002 | FBI | derived from FBI 302 | UNCLASSIFIED Interview of GTMO detainee regarding subjects of request. ; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7867-7869 | Deny in Full | 7/17/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee. (b)(1)1.4c/; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7870-7871 | Deny in Full | 5/3/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee. (b)(1)1.4c/; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7872-7884 | Deny in Full | 5/28/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee. (b)(1)1.4c,d/; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |
| 7885-7897 | Deny in Full | 5/28/2002 | FBI | FBI 302 | SECRET Interview of GTMO detainee. (b)(1)1.4c,d/; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a): (b)(7)(a),(d),(f). |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 7898-7899 | Deny in Full | 4/21/2002 | FBI | FBI 302 | UNCLASSIFIED Interview of GTMO detainee. ; (b)/(6)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a),(d),(f). |
| 7900-7916 | Deny in Full | 2/14/2003 | FBI | interview with source | SECRET/NOFORN Interview with source. (b)(1)1.4c/; (b)/(6)/(b)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7917-7920 | Deny in Full | UNK | FBI | information report | SECRET/NOFORN/ORCON Information report. (b)(1)b.d; (b)(2) Non-numeric ISNs; (b)/(6)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7921-7922 | Deny in Full | 12/15/2001 | FBI | FBI 302 | UNCLASSIFIED Interview with source. ; (b)/(6)/(b)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| 7923-7933 | Deny in Full | 12/8/2001 | FBI | information report | UNCLASSIFIED List of names, identifying information. ; (b)/(6)/(b)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(c). |
| 7934-7946 | Deny in Full | UNK | FBI | information report | UNCLASSIFIED List of names, identifying information. ; (b)(2) Non-numeric ISNs; (b)/(6)/(b)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a); (b)(7)(a),(d),(f). |
| **FBI DOCS REFERRED FROM CITF** | | | | | |
| 8114 | Deny in Full | 7/18/2002 | FBI | Interview | UNCLASSIFIED Interview of ISN 10005. (b)(2) Non-numeric ISNs; (b)/(6)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8115 | Deny in Full | 11/4/2002 | FBI | Interview | SECRET Interview of ISN 10005. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)/(6)/(b)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8116 | Deny in Full | 8/27/2002 | FBI | FBI 302 for ISN 10003 | UNCLASSIFIED Interview of ISN 10003. ; (b)(2) Non-numeric ISNs; (b)/(6)/(b)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8117-8119 | Deny in Full | 2/10/2002 | FBI | FBI 302 for ISN 10003 | SECRET Interview of ISN 10003 discussing background and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)/(6)/(b)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8120-8122 | Deny in Full | 2/18/2002 | FBI | FBI 302 for ISN 10003 | UNCLASSIFIED Interview of ISN 10003 discussing background, travel and associations. ; (b)(2) Non-numeric ISNs; (b)/(6)/(b)/(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 8123-8127 | Deny in Full | 3/24/2002 | FBI | FBI 302 for ISN 10003 | SECRET Interview of ISN 10003 discussing background, travel, employment and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8128-8132 | Deny in Full | 2/18/2002 | FBI | FBI 302 for ISN 10005 | SECRET Interview of ISN 10005 discussing background, travel, employment and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8133-8134 | Deny in Full | 3/7/2002 | FBI | FBI 302 for ISN 10005 | UNCLASSIFIED Interview of ISN 10005 discussing background, travel, employment and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8135-8143 | Deny in Full | 2/23/2002 | FBI | FBI 302 for ISN 10004 | SECRET Interview of ISN 10004 discussing background, travel, employment and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8144-8150 | Deny in Full | 2/27/2002 | FBI | FBI 302 for ISN 10006 | SECRET Interview of ISN 10006 discussing background, travel, employment and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8151-8155 | Deny in Full | 3/24/2002 | FBI | FBI 302 for ISN 10003 | SECRET Interview of ISN 10003 discussing background, travel, employment and associations. (b)(1)1.4c/ (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8156-8164 | Deny in Full | 2/23/2002 | FBI | FBI 302 for ISN 10004 | SECRET Interview of ISN 10004 discussing background, travel, employment and associations. (b)(1)1.4c/ (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8165-8167 | Deny in Full | 2/10/2002 | FBI | FBI 302 for ISN 10003 | SECRET Interview of ISN 10003 discussing background, travel, employment and associations. (b)(1)1.4c/ (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8168-8173 | Deny in Full | 2/27/2002 | FBI | FBI 302 for ISN 10006 | SECRET Interview of ISN 10006 discussing background, travel, employment and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 8174-8175 | Deny in Full | 3/7/2002 | FBI | FBI 302 for ISN 10005 | UNCLASSIFIED Interview of ISN 10005 discussing background, travel, employment and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8176-8182 | Deny in Full | 2/27/2002 | FBI | FBI 302 for ISN 10006 | SECRET Interview of ISN 10006 discussing background, travel, employment and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8183-8188 | Deny in Full | 2/18/2002 | FBI | FBI 302 for ISN 10005 | SECRET Interview of ISN 10005 discussing background, travel, employment and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8189-8192 | Deny in Full | 2/18/2002 | FBI | FBI 302 for ISN 10005 | SECRET Interview of ISN 10005 discussing background, travel, employment and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8193-8200 | Deny in Full | 2/23/2002 | FBI | FBI 302 for ISN 10004 | SECRET Interview of ISN 10004 discussing background, travel, employment and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8201-8203 | Deny in Full | 2/18/2002 | FBI | FBI 302 for ISN 10003 | UNCLASSIFIED Interview of ISN 10003 discussing background, travel and associations. (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| 8204-8208 | Deny in Full | 3/24/2002 | FBI | FBI 302 for ISN 10003 | SECRET Interview of ISN 10003 discussing background, travel, employment and associations. (b)(1)1.4c; (b)(2) Non-numeric ISNs; (b)(6)/(b)(7)(C) U.S. Government Personnel and Special Agents, and names of persons other than requesters; (b)(7)(a). |
| **JAC documents** | | | | | |
| 08270-08283 | Deny in Full | 7/17/2003 | JAC | Detainee Profile | SECRET/NOFORN Profile of a detainee that mentions ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for informat |
| 08284-08294 | Deny in Full | 3/26/2003 | JAC | Detainee Profile | SECRET/NOFORN Profile of a detainee that mentions ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for informat |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 08295-08296 | Deny in Full | UNK | JTF170 | List of affiliations | SECRET/NOFORN Report that details a list of affiliations of ISN 10006. B(1) 1.4(c) concerning intelligence information that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning a source and information obtained from a source (J1.2) |
| 08297-08302 | Deny in Full | UNK | JTF170 | List of affiliations | SECRET/NOFORN Report that details a list of affiliations of ISN 10003. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning a source and information obtained from a source (J1.2) |
| 08303-08305 | Deny in Full | UNK | JTF170 | List of affiliations | SECRET/NOFORN Report that details a list of affiliations of ISN 10004. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning a source and information obtained from a source (J1.2) |
| 08306-08314 | Deny in Full | UNK | JTF170 | List of affiliations | SECRET/NOFORN Report that details a list of affiliations of ISN 10005. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning a source and information obtained from a source (J1.2) |
| 8317 | Deny in Full | UNK | JAC | Email | SECRET/NOFORN Forwarding of a report regarding ISN 10003 to another DOD command as courtesy. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source ques |
| 8318 | Deny in Full | UNK | JAC | Email | SECRET/NOFORN Communication forwarding list of question to be asked of detainees. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and |
| 8319 | Deny in Full | UNK | JAC | Email | SECRET/NOFORN Communication forwarding list of question to be asked of detainees ISN 10001, ISN 10002, ISN 10004, ISN 10005, ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) |
| 8413 | Deny in Full | 5/10/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8414 | Deny in Full | 5/16/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 8415 | Deny in Full | 5/17/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8416 | Deny in Full | 5/17/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 08417-08418 | Deny in Full | 5/20/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 08419-08420 | Deny in Full | 5/20/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8421 | Deny in Full | 5/21/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8422 | Deny in Full | 6/3/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 08423-08424 | Deny in Full | 6/4/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 08425-08426 | Deny in Full | 6/6/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8427 | Deny in Full | 6/18/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 8428 | Deny in Full | 6/20/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8429 | Deny in Full | 7/4/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8430 | Deny in Full | 7/5/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8431 | Deny in Full | 7/7/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8432 | Deny in Full | 7/14/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8433 | Deny in Full | 7/23/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8434 | Deny in Full | 7/25/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 8435 | Deny in Full | 9/6/2002 | JAC | Situation report | SECRET/NOFORN Report of investigative activities reference ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |
| 08436-08448 | Deny in Full | 5/20/2002 | CJTF-170 | Information Report | SECRET/NOFORN Report of interview with ISN 10005. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that wo |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 08481-08491 | Deny in Full | 3/28/2002 | JTF-170 | Information Report | SECRET Report of interview with ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 08492-08495 | Deny in Full | 2/28/2002 | JTF-170 | Information Report | SECRET Report of interview with ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 08496-08498 | Deny in Full | 3/28/2002 | JTF-170 | Information Report | SECRET Report of interview with ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 08499-08504 | Deny in Full | 3/29/2002 | JTF-170 | Information Report | SECRET Report of interview with ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 08505-08521 | Deny in Full | 3/29/2002 | JTF-170 | Information Report | SECRET Report of interview with ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 08522-08535 | Deny in Full | 3/29/2002 | JTF-170 | Information Report | SECRET Report of interview with ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 08536-08550 | Deny in Full | 3/29/2002 | JTF-170 | Information Report | SECRET Report of interview with ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 08551-08564 | Deny in Full | 3/29/2002 | JTF-170 | Information Report | SECRET Report of interview with ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 08565-08567 | Deny in Full | 3/29/2002 | JTF-170 | Information Report | SECRET Report of interview with ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|-----------|---------|--------------------------------------|
| 08568-08587 | Deny in Full | 3/29/2002 | JTF-170 | Information Report | SECRET Report of interview with ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 08625-08626 | Deny in Full | UNK | JAC | List of detainees | SECRET/NOFORN List of reports, associations and activities referencing ISN 10001, ISN 10003 and ISN 10005.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies |
| 08627-08628 | Deny in Full | UNK | JAC | Information report | SECRET/NOFORN  Report of discussions regarding the status of detainees referencing ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1 |
| 9012 | Deny in Full | 4/4/2005 | JAC | Email | SECRET Exchange of information regarding ISN 10002.   B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information tha |
| 09013-09015 | Deny in Full | 2/22/2005 | JAC | Email | SECRET Exchange of information regarding ISN 10001 and ISN 10004. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for inf |
| 09067-09068 | Deny in Full | 6/11/2004 | JAC | Background information | SECRET/NOFORN Background paper on ISN 10002.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would r |
| 9069 | Deny in Full | 8/23/2005 | JAC | Information report | SECRET/NOFORN  Information report regarding ISN 10002. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information th |
| 9072 | Deny in Full | 8/29/2005 | JAC | Information report | SECRET/NOFORN  Information report regarding ISN 10002.  (b)(1)1.4c/(b)(2)/(b)(6). B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and |
| 09073-09074 | Deny in Full | UNK | JAC | Information report | SECRET/NOFORN  Information report regarding ISN 10005. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information th |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 9077 | Deny in Full | 12/3/2002 | JAC | Information report | SECRET/NOFORN Background information on ISN 10005. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that w |
| | | | **GC Documents** | | |
| 09149-09150 | Deny in Full | 01/17/02 | USD Policy | Memorandum | SECRET.  Draft memorandum to Secretary of Defense concerning requestors.  State: (b)(1), 1.4(a), (b), (c), (d); (b)(5).  See Tait Declaration.  ODA: (b)(5), (b)(6).  JS: See Strickland Declaration, Exhibit D to Declaration of John Taitt.  See Stimson De |
| 09156-09157 | Deny in Full | 01/22/02 | OGA | Summary of Known Information Regarding Algerian Detainees | SECRET.  Tab B to package at 09155.  ODA: (b)(1), 1.4(c).  OGA: (b)(1), 1.4(c).  See Tait Declaration.  Joint Staff: (b)(1), 1.4(a), (c).  See Coble Declaration. |
| 09163-09164 | Deny in Full | 1/7/2004 | State | Memorandum | SECRET.  Memorandum regarding  foreign government communications about detainees. (b)(1), 1.4(b), (c), (d); (b)(5).  Joint Staff: See Ritchie Declaration. |
| 09165-09167 | Deny in Full | 05/19/04 | GC | E-mail with draft memorandum | SECRET.  GC edits to draft memorandum from Assistant Secretary of Defense, SOLIC to Secretary of Defense concerning foreign government communications.  Also contains marked-up draft of message at 09168.   ODA:  (b)(1), 1.4(b), (d);  (b)(5); (b)(6). See St |
| 9168 | Deny in Full | 05/19/04 | OSD Policy | Memorandum | SECRET.  Memorandum for Executive Secretary of the Department of State concerning USG communication with foreign government.  ODA: (b)(1), 1.4(b), (d);  (b)(6). See Stimson Declaration. |
| 09171-09175 | Partial | 01/17/02 | CJCS | Joint Staff package concerning transport of requesters | SECRET.  Messages and orders concerning transport of detainees. (b)(1), 1.4(a), (b)(6).  See Strickland Declaration, Exhibit D to Declaration of John Taitt. |
| 09199-09202 | Deny in Full | 10/25/02 | State | E-mail forwarding draft Telegram | CONFIDENTIAL. E-mail and Draft Telegram concerning Bosnian Human Rights Chamber decision regarding Algerians. Same document found at Bates 09117-09118 and same withholding reasons apply.  Final version of Telegram denied in full at Bates 09219-09220.   S |
| 09213-09214 | Deny in Full | 07/04/04 | State | E-mail with imbedded Telegram concerning diplomatic exchange with foreign government. | CONFIDENTIAL.  Communications between foreign government and U.S. concerning requestors. GC: (b)(6). State: (b)(1), 1.4(b), (c), (d).  See Taitt Declaration. |
| 09219-09220 | Deny in Full | 11/20/02 | DoD | E-mail concerning Decision of BIH Human Rights Chamber | CONFIDENTIAL.  Instructions and Talking Points concerning meeting with foreign government representative.  State:  (b)(1) 1.4(d); (b)(6).  See Taitt Declaration. |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 09221–09226 | Deny in Full | 05/10/02 | DoD GC, State, OSD Policy | E-mail string and Telegram | SECRET. E-mail string between DoD General Counsel, OSD Policy, JTF-GTMO, and State concerning potential response to foreign government regarding detainees. Contains Telegram denied in full at Bates 9111. GTMO: (b)(1), 1.4(a) concerning military operat |
| 09227–09228 | Deny in Full | 08/17/04 | State | E-mail containing Telegram | SECRET/NOFORN. E-mail forwarding Telegram concerning foreign government request regarding detainees. DOS: (b)(1) 1.4(b), (d). See Tait Declaration. |
| 09233–09238 | Deny in Full | 10/21/02 | DoD GC, State | E-mail string | SECRET. E-mail exchange between State and GC regarding Telegram (Telegram denied in full by State at Bates 09081- 09083). GC: (b)(6). See Tait Declaration. ODA: (b) (b)(5), (b)(6). See Stimson Declaration. |
| 09244–09247 | Deny in Full | 04/01/03 | OSD Policy, GTMO, DoD GC | E-mail string | SECRET. Request to SOUTHCOM on update on Algerians for response to embassy inquiry. (b)(1), 1.4(c), b(2), (b)(5), (b)(6) GTMO: (b)(1) 1.4(a) concerning military operations; (b)(1) 1.4(d) concerning diplomatic exchanges between the U.S. and a foreign g |
| 09250–09251 | Deny in Full | 09/16/05 | DoD GC, OSD Policy | E-mail with attached Response to inquiry by Senator Jeffords | SECRET. E-mail with draft letter to Senator Jeffords from Deputy Assistant Secretary (Detainee Affairs).  GC: (b)(5), (b)(6).  See Tait Declaration.  ODA: (b)(1), 1.4(b), (d);  (b)(5). See Stimson Declaration. |
| 09252–09258 | Deny in Full | 01/24/05 | DOJ, JTF GTMO SJA | E-mail | UNCLASSIFIED. E-mail concerning proposed responses to various habeas counsel on issues related to the habeas litigation. Includes discussion of proposed response to requesters' counsel.  GC: (b)(5), (b)(6).  See Tait Declaration. |
| | | | **JAC documents** | | |
| 09260–09262 | Deny in Full | 9/1/2001 | JAC | Case study | SECRET/NOFORN Case study on ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that |
| 9263 | Deny in Full | 12/6/2001 | JAC | Information report | SECRET Information report referencing ISN 10002. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that wou |
| 9264 | Deny in Full | 10/1/2001 | JAC | Case study | SECRET/NOFORN Case study referencing ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that woul |
| 09265–09270 | Deny in Full | UNK | JAC | Terrorist overview in BIH | SECRET/NOFORN Overview of terrorist activity and associations in BIH. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 09271-09273 | Deny in Full | 6/2/2004 | JAC | Information report | SECRET/NOFORN Report of non-government organizations and related activities in the Balkans referencing ISN 10001, ISN 10002, ISN 10004. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) |
| 09275-09282(a | Deny in Full | 5/20/2002 | JTF-GITMO | Information report | SECRET Report of interview with ISN 10005. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that would rev |
| 09363-09402 | Deny in Full | 3/24/2006 | JAC | List of items from ISN 10002 | SECRET/NOFORN List of items acquired from ISN 10002. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that |
| 9403 | Deny in Full | 3/24/2006 | JAC | List of items from ISN 10005 | SECRET/NOFORN List of items acquired from ISN 10005. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that |
| 09406-09412 | Deny in Full | UNK | JAC | List of items from ISN 10001 | SECRET/NOFORN List of items acquired from ISN 10001. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information that |
| 09420-09426 | Deny in Full | UNK | UNK | Information report | SECRET/NOFORN Analysis of items recovered from ISN 10001.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1) 1.4(c) concerning intelligence levies, source questions, and requests for information |
| **GC docs referred to State** | | | | | |
| 09543-09545 | Deny in Full | 08/27/04 | State | E-mail and Telegram | SBU NOFORN. Communications between foreign government and U.S. concerning requestors. GC: (b)(6). State: (b)(1), 1.4(b), (c), (d). See Tait Declaration. |
| **JAC documents** | | | | | |
| 9553 | Deny in Full | UNK | JAC | Document that shows Belkacem's associations | SECRET. Document shows Belkacem's contacts. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1). |
| 9554 | Deny in Full | UNK | JAC | Document that shows other detainees information | SECRET/REL to USA and NATO. Document shows Belkacem and Lahmar association with another detainee B(1) 1.4(a) concerning camp and cell numbers as this relates to JTF GTMO operations. (1.2(a)); B(1) 1.4(c) concerning intelligence information obtained that w |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 9555-9556 | Deny in Full | UNK | JAC | Document that shows Hadj's contacts | TOP SECRET. Document shows contacts of Hadj. (B)(1), 1.4(c) concerning Intelligence Information obtained that would reveal intelligence activities (J1.1). B(1)1.4(c). B(101.4(d) concerning diplomatic exchanges between the U.S. and a foreign government con |
| 9557-9565 | Deny in Full | UNK | JAC | information obtained from a Foreign Government | SECRET. Documents shows Hadjs Information with a Foreign Government analysis. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1). B(1) 1.4(c) concerning a source and information obtained from a source |
| 9566-9569 | Deny in Full | 5/12/2002 | JAC | Email- Questions to be posed to GTMO Detainees | SECRET. Document pertains to Source directed Questions to be levied against GTMO Detainees. ((B)(1), 1.4(c) concerning Intelligence Information obtained that would reveal intelligence activities (J1.1). |
| 9570-9574 | Deny in Full | 2/4/2003 | JAC | Email. JAC CT/Terror Production | TOP SECRET. Document shows Interrogation Strategies. (B)(1), 1.4(c) concerning Intelligence Information obtained that would reveal intelligence activities (J1.1). |
| 9575 | Deny in Full | UNK | JAC | Document. Belkacem association chart | SECRET. Document shows Belkacem's contacts and phone numbers. (B)(1), 1.4(c) concerning Intelligence Information obtained that would reveal intelligence activities (J1.1). B(1) 1.4(c) concerning a source and information obtained from a source (J1.2), B(1 |
| 9576-9583 | Deny in Full | UNK | JAC | Intelligence summary | SECRET. Document is compendium of reporting on Idir. (B)(1), 1.4(c) concerning Intelligence Information obtained that would reveal intelligence activities (J1.1). B(1) 1.4(c) concerning a source and information obtained from a source (J1.2). B(1) 1.4(c) c |
| 9602-9607 | Deny in Full | 2/13/2002 | JAC | Terrorist profile | SECRET/NOFORN. Terrorist Profile on 10002 Lahmar. (B)(1), 1.4(c) concerning Intelligence Information obtained that would reveal intelligence activities (J1.1). |
| 09612-09621 | Deny in Full | UNK | JAC | Spreadsheet | SECRET/NOFORN Spreadsheet listing names, numbers and messages related to ISN 10001, ISN 10002, ISN 10003, ISN 10004, ISN 10005 and ISN 10006.B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); B(1)1 |
| | | | **Documents referred to EUCOM and re-referred to INSCOM** | | |
| 09683-09684 | Deny in Full | 12/5/2001 | ARMY INSCOM | Prison detention has two Arab prisoners | CONFIDENTIAL. Information about Arab prisoners. (b)(1)1.4c/(b)(2)/(b)(6). INSCOM: (b)(1) 1.4c (b)(2); (b)(6)  see Declaration by Susan Butterfield. |
| 09685-09686 | Deny in Full | 11/27/2001 | ARMY INSCOM | Three suspected terrorists arrested including Belkacem and Lahmar | CONFIDENTIAL. Information concerning arrests of individuals on suspicion of involvement with terrorist activities. B(1), 1.4(c)/B(2)/B(6) INSCOM: (b)(1) 1.4c; (b)(2); (b)(6) see Declaration by Susan Butterfield. |

Page 81 of 87

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 09687-09688 | Deny in Full | 12/19/2001 | ARMY INSCOM | Bosnian Federal MUP Raid Global Relief Foundation Offices | SECRET. Information concerning raid of NGO office by Bosnian authorities.  B(1), 1.4(c), B(2), B(6) **INSCOM:** (b)(1) 1.4c; (b)(2), (b)(6) see Butterfields's Declaration |
| 09689-09690 | Deny in Full | 11/18/2001 | ARMY INSCOM | Foreign and Domestic Mujahadeen in Bosnia and Herzegovina | SECRET. Information concerning raid of NGO office by Bosnian authorities.  B(1), 1.4(c), B(2), B(6) **INSCOM:** (b)(1) 1.4c; (b)(2), (b)(6) see Butterfields's Declaration |
| 09689-09690 | Deny in Full | 11/18/2001 | ARMY INSCOM | Foreign and Domestic Mujahadeen in Bosnia and Herzegovina | SECRET. Information concerning raid of NGO office by Bosnian authorities.  B(1), 1.4(c), B(2), B(6) **INSCOM:** (b)(1) 1.4c; (b)(2), (b)(6) see Butterfields's  **OGA:**  B(1), 1.4(c) on responsive paragraph relating to a requestor. |
| | | | | **JAC documents referred to USNIC** | |
| 09806-09810 | Deny in Full | 2/16/2002 | USNIC | Detainee Dossier | TOP SECRET Detainee information package on ISN 10001.  B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (J1.1); (J1.3); B(1) 1.4(d) concerning diplomatic exchanges between the U.S. and a foreign government |
| | | | | **GTMO and DIA documents referred to OGA** | |
| 9865-9866 | Deny in Full | 2/28/1998 | CIA | Information message concerning the activities of Lahmar | SECRET/NOFORN. Information provided by confidential source.   .  (b)(1) 1.4(c). See Declaration of John Taitt |
| 9867-9868 | Deny in Full | 2/24/1998 | CIA | Information message concerning the activities of Lahmar | SECRET/NOFORN. Information provided by confidential source.   .  (b)(1) 1.4(c). See Declaration of John Taitt |
| 9869-9871 | Deny in Full | 1/23/2003 | CIA | Information message concerning the activities of Lahmar | SECRET/NOFORN. Information provided by confidential source.   .  (b)(1) 1.4(c). See Declaration of John Taitt |
| 9872-9876 | Deny in Full | 2/4/2002 | CIA | information message concerning contacts of an extremist not requesters) | SECRET/NOFORN. Information provided by Foreign government.   (b)(1) 1.4(c). See Declaration of John Taitt |
| 9877-9878 | Deny in Full | 2/15/2002 | CIA | information message concerning contacts of an extremist not requesters) | SECRET/NOFORN. Information provided by confidential source.   .  (b)(1) 1.4(c). See Declaration of John Taitt |
| 9879-9882 | Deny in Full | 3/10/2004 | CIA | information message concerning senior leaders within the Bosnia | SECRET/NOFORN. Information provided by confidential source.   .  (b)(1) 1.4(c). See Declaration of John Taitt |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 9883-9884 | Deny in Full | 11/6/2001 | CIA | Information message concerning Suspected Algerian Terrorists in Bosnia | SECRET/NOFORN. Information provided by confidential source.     (b)(1) 1.4(c).     See Declaration of John Taitt |
| 9885-9886 | Deny in Full | 2/24/1998 | CIA | Information message concerning the activities of Lahmar | SECRET/NOFORN. Information provided by confidential source.     (b)(1) 1.4(c).     See Declaration of John Taitt |
| 9887-9892 | Deny in Full | 2/23/2005 | CIA | Information message concerning Islamic extremists with connections to Italy | SECRET/NOFORN. Information provided by Foreign government.     (b)(1) 1.4(c).     See Declaration of John Taitt |
| 9893-9894 | Deny in Full | 11/14/2002 | CIA | Information message pertaining to Belkacem's activities in Bosnia | SECRET/NOFORN. Information provided by confidential source.     (b)(1) 1.4(c).     See Declaration of John Taitt |
| 9895-9897 | Deny in Full | 11/13/2001 | CIA | Information message pertaining to Belkacem's activities in Bosnia | SECRET/NOFORN. Information provided by Foreign government.     (b)(1) 1.4(c).     See Declaration of John Taitt |
| 9898-9899 | Deny in Full | 10/2/2001 | CIA | Information message pertaining to Belkacem's activities in Bosnia | SECRET/NOFORN. Information provided by confidential source.     (b)(1) 1.4(c).     See Declaration of John Taitt |
| 9900-9903 | Deny in Full | 10/1/2001 | CIA | Information message pertaining to NGO's financial aid to Mujahedin in Bosnia and Lahmar's affiliation to the NGO | SECRET/NOFORN. Information provided by confidential source.     (b)(1) 1.4(c).     See Declaration of John Taitt |
| 9904-9905 | Deny in Full | 10/22/2001 | CIA | Information message pertaining to contacts of Lahmar | SECRET/NOFORN. Information provided by Foreign government.     (b)(1) 1.4(c).     See Declaration of John Taitt |
| 9906 | Deny in Full | 10/22/2001 | CIA | Information message pertaining to information on the arrest of the requesters in Bosnia | SECRET/NOFORN. Information provided by Foreign government.     (b)(1) 1.4(c).     See Declaration of John Taitt |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 9907-9908 | Deny in Full | 10/22/2001 | CIA | Information message pertaining to information found on Lahmar when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government.   (b)(1) 1.4(c). See Declaration of John Tait |
| 9909-9912 | Deny in Full | 10/20/2001 | CIA | Information message pertaining to information found on Lahmar when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government.   (b)(1) 1.4(c). See Declaration of John Tait |
| 9913-9916 | Deny in Full | 10/20/2001 | CIA | Information message pertaining to information found on Lahmar when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government.   (b)(1) 1.4(c). See Declaration of John Tait |
| 9917-9918 | Deny in Full | 2/24/1998 | CIA | Information message pertaining to statements made by Lahmar | SECRET/NOFORN. Information provided by confidential source.   .  (b)(1) 1.4(c). See Declaration of John Tait |
| 9919-9922 | Deny in Full | 11/2/2001 | CIA | Information message pertaining to information found on Nechle when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government.   (b)(1) 1.4(c). See Declaration of John Tait |
| 9923-9926 | Deny in Full | 11/2/2001 | CIA | Information message pertaining to information found on Nechle when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government.   (b)(1) 1.4(c). See Declaration of John Tait |
| 9927-9928 | Deny in Full | 12/10/2002 | CIA | information message concerning contacts of Lahmar | SECRET/NOFORN. Information provided by confidential source.   .  (b)(1) 1.4(c). See Declaration of John Tait |
| 9929-9932 | Deny in Full | 3/3/2004 | CIA | Information message concerning the activities of Lahmar | SECRET/NOFORN. Information provided by Foreign government.   (b)(1) 1.4(c). See Declaration of John Tait |
| 9933-9936 | Deny in Full | 7/23/2002 | CIA | Information message concerning contacts of Belkacem | SECRET/NOFORN. Information provided by confidential source.   .  (b)(1) 1.4(c). See Declaration of John Tait |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 9937-9939 | Deny in Full | 10/8/2002 | CIA | Information message concerning contacts of Belkacem | SECRET/NOFORN. Information provided by confidential source. . (b)(1) 1.4(c). See Declaration of John Taitt |
| 9940-9941 | Deny in Full | 12/14/200 | CIA | Information message concerning activities of Lahmar | SECRET/NOFORN. Information provided by confidential source. . (b)(1) 1.4(c). See Declaration of John Taitt |
| 9942-9943 | Deny in Full | 10/26/2001 | CIA | Information message concerning the arrests of Lahmar and Belkacem in Bosnia | SECRET/NOFORN. Information provided by confidential source. . (b)(1) 1.4(c). See Declaration of John Taitt |
| 9944-9946 | Deny in Full | 3/4/2002 | OGA | Information message concerning the interrogation of Lahmar at GTMO | SECRET/NOFORN. Information provided by confidential source. . (b)(1) 1.4(c). See Declaration of John Taitt |
| 9947-9950 | Deny in Full | 2/25/2002 | OGA | Information message concerning the treatment of detainees at GTMO (No names are reported) | SECRET/NOFORN. Information provided by confidential source. . (b)(1) 1.4(c). See Declaration of John Taitt |
| 9951-9952 | Deny in Full | 4/1/2005 | OGA | Information concerning the arrests of the requesters in Bosnia | SECRET/NOFORN. Information provided by Foreign government. (b)(1) 1.4(c). See Declaration of John Taitt |
| 9953-9954 | Deny in Full | 2/10/2005 | OGA | Information concerning the arrests of the requesters in Bosnia | SECRET/NOFORN. Information provided by Foreign government. (b)(1) 1.4(c). See Declaration of John Taitt |
| 9955-9957 | Deny in Full | 4/2/2002 | OGA | information message concerning the interrogation of Belkacem at GTMO | SECRET/NOFORN. Message gives details of the interrogation of Belkacem at GTMO. B(1) 1.4(b)(c) |
| 9958-9962 | Deny in Full | 10/16/2001 | OGA | Information message pertaining to information found on Belkacem when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government. (b)(1) 1.4(c). See Declaration of John Taitt |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---------|---------|------|------------|---------|--------------------------------------|
| 9963-9964 | Deny in Full | 1/19/2002 | OGA | Information message pertaining to the investigation of the requesters in Bosnia | SECRET/NOFORN. Information provided by confidential source. . (b)(1) 1.4(c). See Declaration of John Taitt |
| 9965-9969 | Deny in Full | 10/25/2001 | OGA | Information message pertaining to information found on Idir when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government. (b)(1) 1.4(c). See Declaration of John Taitt |
| 9970-9971 | Deny in Full | 10/26/2001 | OGA | Information message pertaining to the reaction to the arrests of the requesters in Bosnia | SECRET/NOFORN. Information provided by confidential source. . (b)(1) 1.4(c). See Declaration of John Taitt |
| 9972-9978 | Deny in Full | 10/30/2001 | OGA | Information message pertaining to information found on Idir when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government. (b)(1) 1.4(c). See Declaration of John Taitt |
| 9979-9982 | Deny in Full | 10/31/2001 | OGA | Information message pertaining to information found on Boudella when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government. (b)(1) 1.4(c). See Declaration of John Taitt |
| 9983-9987 | Deny in Full | 10/31/2001 | OGA | Information message pertaining to information found on Boumediene when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government. (b)(1) 1.4(c). See Declaration of John Taitt |
| 9988-9997 | Deny in Full | 11/1/2001 | OGA | Information message pertaining to information found on Boumediene when he was arrested in Bosnia | SECRET/NOFORN. Information provided by Foreign government. (b)(1) 1.4(c). See Declaration of John Taitt |

| Bates # | Release | Date | Originator | Subject | Classification/Description/Exemption |
|---|---|---|---|---|---|
| 9998 | Deny in Full | 3/25/2005 | OGA | Information message concerning contacts of Belkacem | SECRET/NOFORN. Information provided by confidential source. . (b)(1) 1.4(c). See Declaration of John Taitt |
| | | | | **GC documents** | |
| 10053-10056 | Deny in Full | 01/18/02 | State | Telegram | SECRET. Telegram discussing requestors. Joint Staff; (b)(1), 1.4(a), (c). See Coble Declaration. ODA (b)(1) 1.4(b), (d). See Stimson Declaration. |
| 10066-10069 | Deny in Full | 2/7/2002 | JTF GTMO | Knowledgeability Brief | SECRET/NOFORN. Boumedine - knowledge concerning an organization. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); |
| 10072 | Partial | 5/13/2004 | JTF GTMO | Summary Interrogation Report | SECRET/NOFORN. Interview of Lahkdar Nechle . B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2)(high) on non-num |
| 10073-10074 | Partial | 1/17/2004 | JTF GTMO | Memo- Multiple Sources | SECRET/NOFORN. Review of status of Nechle. B(1) 1.4(c) concerning intelligence information obtained that would reveal intelligence activities (G 1.1); B(1) 1.4(c) concerning a source and information obtained from a source(G1.2);  B(2)(high) on non-nume |
| 10077 | Partial | 2/6/2002 | JTF-GTMO | Knicker Knowledgeability Brief | SECRET. Background and biographic data on ISN 10001.  B(1) 1.4(c) concerning information that would reveal methods and intelligence activities (G1.3); B(1)(1.4)(c) concerning analyst comments and insights concerning intelligence gathered and possible app |
| 10078-10080 | Deny in Full | 5/21/2002 | JTF-GTMO | Situation report | SECRET. Summaries of Al-Haryman related interrogations.  (1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2) (high) on non-numeric portion of ISN (G2.1); B(2) (high) concerning information internal to the USG (G2.3); B(6) Na |
| | | | | **GC Documents** | |
| 10098-10099 | Deny in Full | 1/18/2002 | DOD GC | Memorandum | SECRET.  Communication to DoD GC from OGA concerning requestors.  (b)(1), 1.4(b), (c); (b)(5).  See Taitt Declaration concerning OGA. |
| | | | | **JAC Document referred to GTMO** | |
| 10107-10109 | Deny in Full | UNK | JTF-GTMO | Intelligence Report | TOP SECRET. Interviews of the requestors concerning an organization. B(1) 1.4(c) concerning a source and information obtained from a source(G1.2); B(2) (high) on non-numeric portion of ISN (G2.1); B(1)(1.4)(c) concerning analyst comments and insights con |

# EXHIBIT B

## Kirsch, Rob

| | |
|---|---|
| **From:** | Teran, Gregory |
| **Sent:** | Thursday, August 14, 2008 9:43 AM |
| **To:** | 'Oldham Nicholas (Nicholas.Oldham@usdoj.gov)'; 'terry.henry@usdoj.gov' |
| **Cc:** | Oleskey, Stephen; Fleming, Mark; Wolfson, Paul; Winke, Paul; Kirsch, Rob |
| **Subject:** | Boumediene 04-1166 - FOIA documents |

Nick and Terry:

Further to our email correspondence on Tuesday, August 12, please confirm whether the Government will review and produce exculpatory information from the *Vaughn*-indexed documents in the FOIA litigation identified in the attachment to my email of August 12, and if so, provide a date on which the Government intends to make such production.

If the Government does not intend to review those documents for exculpatory information, please confirm that the documents will be produced by August 22 in the secure facility, so that petitioners' counsel may review them for exculpatory information.

We request a response by close of business Monday, August 18, so that we may take the Government's response into consideration in preparing our responsive brief on procedural issues.  Please copy Rob Kirsch and Mark Fleming on the Government's response.

Thanks,
Greg

Gregory P. Teran
WilmerHale
60 State Street
Boston, MA 02109 USA
617-526-6574 (t)
617-526-5000 (f)
gregory.teran@wilmerhale.com

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately -- by replying to this message or by sending an email to postmaster@wilmerhale.com -- and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

# EXHIBIT C

## Kirsch, Rob

| | |
|---|---|
| **From:** | Kirsch, Rob |
| **Sent:** | Tuesday, August 12, 2008 6:00 AM |
| **To:** | Oldham Nicholas (Nicholas.Oldham@usdoj.gov) |
| **Cc:** | Subar, Judry (CIV); terry.henry@usdoj.gov; Andrew.Warden@usdoj.gov; Paul Ahern (paul.ahern@usdoj.gov); Oleskey, Stephen; Wolfson, Paul; Teran, Gregory; Winke, Paul |

**Subject:** Boumediene 04-1166

Nick

This follows our telephone discussion on August 11.

In connection with the government's review of documents relevant to this case, and in particular, in connection with the position taken by the government regarding its willingness to provide exculpatory documents, we suggest you include the materials reviewed by the government in the FOIA litigation we have pending in the District of Massachusetts. Mark Quinlivan is defending that case and should be able to provide your team with access to the universe of documents.

We have learned potential witnesses from Bosnia expect to be in the US this month. Depending on the substance of the materials the government submits with its motion to amend, we may propose to depose one or more of those witnesses while they are in the US. Will the government oppose that action?

Will the government agree and stipulate that: (1) the arrest of five of our clients by Bosnian authorities in 2001 was caused solely by the demand of the US; and (2) the hand over of our 6 clients in 2002 resulted from demands of the US, including communications by US military personnel that they would use all available means, including the use of force, if the Bosnian government did not turn over the six to the US?

This also confirms that we are interested in installing a secure telephone connection here in our Boston office, and perhaps elsewhere, should that prove economically feasible, and, we would consider the use of other secure lines of communication that might be available in Boston, including through the office of the US Attorney or the FBI.

Finally - if you, and or Terry and Jud, etc., have time before or after our conference tomorrow, we are prepared to begin to share with you our view as to how this case is developing.

Best Regards,

Rob


Robert C. Kirsch
WilmerHale
60 State Street
Boston, MA 02109 USA
+1 617 526 6779 (t)
+1 617 526 5000 (f)
+1 617 571 6021 (c)
rob.kirsch@wilmerhale.com

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately -- by replying to this message or by sending an email to postmaster@wilmerhale.com -- and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

# EXHIBIT D

## Kirsch, Rob

| | |
|---|---|
| **From:** | Oldham, Nicholas (CIV) [Nicholas.Oldham@usdoj.gov] |
| **Sent:** | Monday, August 18, 2008 12:00 AM |
| **To:** | Kirsch, Rob |
| **Cc:** | Oleskey, Stephen; Teran, Gregory; Henry, Terry (CIV); Ahern, Paul (CIV) |
| **Subject:** | Boumediene |

Rob –

I am responding to all four of your email requests from last week.

First, at this time, the Government will not agree to the stipulation you proposed in your August 12, 2008 email.

Second, with respect to Greg's August 14, 2008 email regarding the FOIA documents, the Government's position regarding its preparation of factual returns and production of exculpatory materials is contained in the briefs it has filed in Judge Leon's and Judge Hogan's cases.

Third, with respect to your August 14, 2008 email regarding the production of amended factual returns, the Government is not in a position to accommodate your request. As you know, the Government is preparing over sixty factual returns due by the end of August and is focusing all of its resources on that task. In addition, I understand that the secured facility has copiers that you can use to make as many copies you believe are necessary.

Finally, with respect to your various emails regarding logistical issues, we are raising these matters with DoD, which is considering your requests. At this time, I can respond to a few of the issues. I understand from DoD that there is a person at GTMO who would likely be in a position to process counsel notes. Please be aware that this person might not be able to process the notes at the speed you desire, and the person can only work with English documents because he does not have a translator. In addition, as you know, once we authorize the CSOs to provide a security clearance application to counsel, the processing proceeds independent of our office and we do not control the speed of that processing.

Best regards,
Nick

---

Nicholas A. Oldham
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
20 Massachusetts Ave., N.W., Rm. 7204
Washington, DC 20530
Tel: (202) 514-3367

Fax: (202) 616-8470
nicholas.oldham@usdoj.gov

*The information in this transmittal (including attachments, if any) is intended only for the recipient(s) listed above and may contain information that is privileged and confidential.  Any review, use, disclosure, distribution, or copying of this transmittal is prohibited except by or on behalf of the intended recipient.  If you have received this transmittal in error, please notify me immediately and destroy all copies of the transmittal.   Your cooperation is appreciated.*

8/19/2008

# EXHIBIT E



THE SECRETARY OF THE NAVY
WASHINGTON, D.C. 20350-1000

29 July 2004

MEMORANDUM FOR DISTRIBUTION

Subj:   Implementation of Combatant Status Review Tribunal
        Procedures for Enemy Combatants detained at Guantanamo
        Bay Naval Base, Cuba

Ref:    (a) Deputy Secretary of Defense Order of July 7, 2004
        (b) Convening Authority Appointment Letter of
            July 9, 2004

Encl:   (1) Combatant Status Review Tribunal Process
        (2) Recorder Qualifications, Roles and Responsibilities
        (3) Personal Representative Qualifications, Roles and
            Responsibilities
        (4) Combatant Status Review Tribunal Notice to Detainees
        (5) Sample Detainee Election Form
        (6) Sample Nomination Questionnaire
        (7) Sample Appointment Letter for Combatant Status Review
            Tribunal Panel
        (8) Combatant Status Review Tribunal Hearing Guide
        (9) Combatant Status Review Tribunal Decision Report
            Cover Sheet

1.  Introduction

    By reference (a), the Secretary of Defense has established a
Combatant Status Review Tribunal (CSRT) process to determine, in
a fact-based proceeding, whether the individuals detained by the
Department of Defense at the U.S. Naval Base Guantanamo Bay,
Cuba, are properly classified as enemy combatants and to permit
each detainee the opportunity to contest such designation.  The
Secretary of the Navy has been appointed to operate and oversee
this process.

    The Combatant Status Review Tribunal process provides a
detainee:  the assistance of a Personal Representative; an
interpreter if necessary; an opportunity to review unclassified
information relating to the basis for his detention; the
opportunity to appear personally to present reasonably available
information relevant to why he should not be classified as an
enemy combatant; the opportunity to question witnesses
testifying at the Tribunal; and, to the extent they are

Subj:  Implementation of Combatant Status Review Tribunal
       Procedures for Enemy Combatants detained at Guantanamo
       Bay Naval Base, Cuba

reasonably available, the opportunity to call witnesses on his
behalf.

2.  Authority

    The Combatant Status Review Tribunal process was established
by Deputy Secretary of Defense Order dated July 7, 2004
(reference (a)), which designated the undersigned to operate and
oversee the Combatant Status Review Tribunal process.  The
Tribunals will be governed by the provisions of reference (a)
and this implementing directive, which sets out procedures for
Tribunals and establishes the position of Director, Combatant
Status Review Tribunals.  Reference (b) designates the Director,
CSRT, as the convening authority for the Tribunal process.

3.  Implementing Process

    The Combatant Status Review Tribunal Process is set forth in
enclosure (1).  Enclosures (2) and (3) set forth detailed
descriptions of the roles and responsibilities of the Recorder
and Personal Representative respectively.  Enclosure (4) is a
Notice to detainees regarding the CSRT process.  Enclosure (5)
is a Sample Detainee Election Form.  Enclosure (6) is a Sample
Nominee Questionnaire for approval of Tribunal members,
Recorders, and Personal Representatives.  Enclosure (7) is an
Appointment Letter that will be signed by the Director of CSRT
as the convening authority.  Enclosure (8) is a CSRT Hearing
Guide. Tribunal decisions will be reported to the convening
authority by means of enclosure (9).  This implementing
directive is subject to revision at any time.

CC:
Secretary of State
Secretary of Defense
Attorney General
Secretary of Homeland Security
Director, Central Intelligence Agency
Assistant to the President for National Security Affairs
Counsel to the President

Deputy Secretary of Defense
Secretary of the Army
Secretary of the Navy
Secretary of the Air Force
Chairman of the Joint Chiefs of Staff
Director, Federal Bureau of Investigation
Director of Defense Agencies
Director, DOD Office of Detainee Affairs

## G. **Tribunal Procedures**

(1)   By July 17, 2004, the convening authority was required to notify each detainee of the opportunity to contest his status as an enemy combatant in the Combatant Status Review Tribunal process, the opportunity to consult with and be assisted by a Personal Representative, and of the jurisdiction of the courts of the United States to entertain a habeas corpus petition filed on the detainee's behalf. The English language version of this Notice to Detainees is at enclosure (4). All detainees were so notified July 12-14, 2004.

(2)   An officer appointed as a Personal Representative will meet with the detainee and, through an interpreter if necessary, explain the nature of the CSRT process to the detainee, explain his opportunity to personally appear before the Tribunal and present evidence, and assist the detainee in collecting relevant and reasonably available information and in preparing for and presenting information to the CSRT.

(3)   The Personal Representative will have the detainee make an election as to whether he wants to participate in the Tribunal process. Enclosure (5) is a Detainee Election Form. If the detainee elects not to participate, or by his silence or actions indicates that he does not want to participate, the Personal Representative will note this on the election form and this detainee will not be required to appear at his Tribunal hearing.  The Director, CSRT, as convening authority, shall appoint a Tribunal as described in paragraph C (1) of this enclosure for all detainees after reviewing Nomination Questionnaires (enclosure (6)) and approving Tribunal panel members.  Enclosure (7) is a sample Appointment Letter.

(4)   The Director, CSRT, will schedule a Tribunal hearing for a detainee within 30 days after the detainee's Personal Representative has reviewed the Government Information, had an opportunity to consult with the detainee, and notified the detainee of his opportunity to contest his status, even if the detainee declines to participate as set forth above. The Personal Representative will submit a completed Detainee Election Form to the Director, CSRT, or his designee when the Personal Representative has completed the actions above. The 30-day period to schedule a Tribunal will commence upon receipt of this form.

(5)   Once the Director, CSRT, has scheduled a Tribunal, the President of the assigned Tribunal panel may postpone the Tribunal for good cause shown to provide the detainee or his Personal Representative a reasonable time to acquire evidence deemed relevant and necessary to the Tribunal's decision, or to accommodate military exigencies as presented by the Recorder.

(6)   All Tribunal sessions except those relating to deliberation or voting shall be recorded on audiotape. Tribunal sessions where classified information is discussed shall be recorded on separate and properly marked audiotapes.

**Enclosure (1)**

# EXHIBIT F



**U.S. Department of Justice**

Civil Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

June 30, 2008

The Honorable Royce C. Lamberth
The Honorable Thomas F. Hogan
  Judges of the U.S. District Court
  for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Washington, D.C. 20001

Dear Chief Judge Lamberth and Judge Hogan:

Thank you for the meetings you convened on June 18 and 25 and the opportunity to discuss management of the Guantanamo Bay *habeas* cases with you. We appreciate the administrative challenges presented to the court by the influx of active litigation in the district court, and we share many of those challenges. We also appreciate and share the court's desire to resolve these cases expeditiously.

To that end, we write to summarize some of the points that we previously have made. First, we describe the substantial resource commitment that the Department of Justice is making to handle these cases. Second, we discuss the process and timing for producing factual returns in these cases. Third, we identify some of the key procedural and substantive issues that we believe are best handled in a coordinated fashion.

A.     Resources

The Department of Justice is dedicating substantial resources to facilitate the expeditious handling of these cases. At the time of the Supreme Court's decision in *Boumediene v. Bush*, the Federal Programs Branch of the Civil Division, which has handled the Guantanamo Bay detainee litigation in District Court for more than four years, had four attorneys dedicated almost full-time to deal with the various *habeas* matters that remained active as we awaited the Supreme Court's decision. We have now received authorization to assign or detail approximately 50 attorneys to

The Honorable Royce C. Lamberth
The Honorable Thomas F. Hogan

these cases, including 30 attorneys from outside the Civil Division, and we are actively working
to identify those attorneys and get them in place as quickly as possible.

     B.     The Filing of Factual Returns

     As discussed at the June 18 and 25 meetings, the government previously filed factual
returns pertaining to approximately 100 of the detainees who remain at Guantanamo Bay. Those
returns, filed four years ago, require updating. Moreover, in light of concerns such as those
recently identified by the Supreme Court in *Boumediene*, and by the D.C. Circuit in *Parhat*, in
many cases there will be materials that the government determines should either be removed
from the factual returns or augmented to give context to those materials. Simply put, in the four
years since most of the Combatant Status Review Tribunals ("CSRTs") were conducted,
intervening court decisions have recently and significantly changed the legal landscape. In
addition, over the last four years of the ongoing armed conflict against Taliban and Al Qaeda
forces, United States military and intelligence personnel throughout the world have continued to
gather new information that may be relevant to the habeas proceedings. Thus, the government,
which is entitled to place before the court the best and most current evidence supporting a
petitioner's detention as an enemy combatant, intends to file amended factual returns pertaining
to these 100 or so petitioners, as well as initial factual returns for the 100 or so additional habeas
petitioners

     Given the number of pending and expected *habeas* cases, development of these factual
returns will be highly time-consuming for the Department of Justice, the Department of Defense,
and any affected intelligence agencies. In order to process these factual returns efficiently, we
propose to file approximately 50 returns per month beginning in 60 days. Processing at that rate
would result in the filing of all factual returns for petitioners detained at Guantanamo over
approximately a four-to-five month period. To be clear, the government will file the return in a
given a case as soon as it is ready, and, once we file that return, the petitioner will be free to file
his factual traverse, if any, and the case can then be adjudicated. We are by no means proposing,
as some of petitioners' counsel at the June 25 meeting apparently misunderstood, for litigation in
all cases to be delayed pending the filing of factual returns for all petitioners. Rather, under our
proposed approach, at least 50 of these cases could be actively litigated on the merits beginning
in approximately 60 days. Moreover, to the extent that coordination of these cases might reduce
the need for extensive and duplicative motions practice over the next few months, and eliminate
protracted disputes regarding the sequencing of cases, the government could redirect resources
toward the goal of producing even more returns within that time frame.

     To begin active litigation of these cases, the parties not only need to identify additional
attorneys to work on them – as both sides have recognized – but also need to provide for the
proper treatment and handling of classified information by cleared counsel on both sides and by
court personnel. That also will require some lead time, including on the part of the court and

The Honorable Royce C. Lamberth
The Honorable Thomas F. Hogan

court security officers, as discussed at the June 18 meeting. Indeed, petitioners' counsel themselves have highlighted their desire to seek some number of additional security clearances.[1] Nonetheless, to move these cases along as quickly as possible, many outstanding issues can be addressed during this lead time, as discussed below.

At the June 25 meeting, counsel for petitioners argued that the government should be required to proceed on existing CSRT records, or whatever could be haphazardly assembled in 14 (or perhaps 30) days for all petitioners. Such an approach will likely delay the ultimate resolution of these cases. We think it clear that the government is entitled to present its best case for the detention of persons found to be enemy combatants – which necessarily includes being able to take into account legal and intelligence developments during the four years since CSRTs were conducted. Any unreasonable curtailing of that opportunity not only would risk the erroneous release of enemy combatants, but also would present substantial grounds for appeal. Thus, under petitioners' approach, we may well find ourselves back before this court in a year's time, litigating many of these cases once again.

At the June 25 meeting, we proposed generally to process factual returns for identified petitioners in the order in which a person arrived at Guantanamo Bay. If it were administratively easier for the Court, we could also proceed generally in the order in which petitions were filed and cases were docketed. Under either scenario, there may be situations in which one individual factual return is significantly more complicated than others or some detainees' circumstances present unique issues, and we do not want the processing of such cases to delay overall processing. Therefore, we do not propose to adhere strictly to arrival or filing date as a rigid rule governing the order in which we file returns. Also, we propose to process the returns for the approximately 20 detainees charged with war crimes under the Military Commissions Act of 2006 after the returns for other current detainees; as discussed below, we believe habeas proceedings for such detainees should be dismissed or held in abeyance pending resolution of their pending prosecution. Finally, many petitions name detainees who are no longer in United States custody at Guantanamo Bay. We believe that those habeas petitions are moot and, in any event, are much less pressing that the petitions of current detainees. Accordingly, we propose to process the returns of released or transferred petitioners last, or not at all.

---

[1] As we explained at the June 25 meeting, the Civil Division has no interest in limiting the number of security clearances made available to petitioners' counsel in these cases. Of course, the organizations that own the classified information at issue do have an interest in ensuring that the circle of individuals permitted such access is not any wider than is necessary. Therefore, the government reserves the right to assert limitations based on the security judgments of the affected agencies. We will continue to work with the CSOs to seek a reasonable accommodation in this matter.

The Honorable Royce C. Lamberth
The Honorable Thomas F. Hogan

    C.     Coordination of Issues

      1.     Procedural Framework for Habeas Cases

We believe that in order for litigation to move efficiently and effectively, and to strike the proper constitutional balance between ensuring fairness to individual detainees and accommodating wartime exigencies, the court should follow the framework approved by the Supreme Court in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), for *habeas* challenges brought by citizen enemy combatants held in the United States. Certainly, alien enemy combatants held at Guantanamo are entitled to no greater procedural protections. Under the framework established in the controlling plurality opinion in *Hamdi*, after the government files its factual return, a petitioner may then file either a dispositive motion or their factual traverse, at which point the court would be best positioned to schedule a status conference to determine what motions are appropriate to resolve the case.

*Hamdi* makes clear that in developing the record in these cases, discovery generally will be inappropriate. There the Supreme Court recognized that discovery into military operations would intrude upon sensitive secrets of national defense, and that this concern was properly taken into account in determining what process is due. To that end, the Supreme Court explicitly rejected the process envisioned by the district court in *Hamdi*, which had "anticipated quite extensive discovery of various military affairs," 542 U.S. at 528, as one that did not "strik[e] the proper constitutional balance," *id.* at 532. The court also rejected the notion that the appropriate process should approach that accompanying a criminal trial, instead concluding that "a habeas court in a case such as this may accept affidavit evidence." *Id.* at 538; *see also id.* at 534 (a "knowledgeable affiant" may "summarize" records supporting enemy-combatant determinations); *Boumediene*, 2008 WL 2369628, *38 ("*Habeas corpus* proceedings need not resemble a criminal trial, even when the detention is by executive order."). Petitioners certainly would not be entitled to the entirety of "government Information" at issue in the D.C. Circuit decision in *Bismullah v. Gates*; the Supreme Court has vacated that decision (2008 WL 436928), and the decision in any event rested entirely on the Department of Defense's CSRT rules, which are not operative here. In the government's view, to constitutionalize such an approach would be inconsistent with the "prudent and incremental" factfinding mandated by the Supreme Court in *Hamdi*. 524 U.S. at 539. But in any event, disagreement over these issues – which will affect all cases – are but some of many common issues that would be best resolved by a single coordinating judge.

The development of the procedural framework in which these cases will be resolved presents important and common issues that will shape the parties' ultimate conduct of the litigation. As we explained during the June 18 and 25 meetings, these issues include:

The Honorable Royce C. Lamberth
The Honorable Thomas F. Hogan

- the government's right to file amended factual returns in cases where returns were previously filed;

- the structure of a habeas hearing, including the order of presentation of the return and the petitioner's factual traverse;

- the scope of discovery, if any;

- the standard for obtaining an evidentiary hearing, if any;

- the permissibility of hearsay evidence;

- the availability of confrontation and compulsory process rights, if any; and

- the relevant burdens of proof.

Addressing all of theses issues separately in hundreds of individual actions simply makes no sense. To begin with, it would be massively wasteful and inefficient to brief common issues dozens of times before each of the judges on this court. Moreover, given the extent of uncertainty regarding appropriate procedures for *habeas* actions to review wartime status determinations, *see Boumediene*, 2008 WL 2369628, at *40 ("The extent of the showing required of the Government in these cases remains to be determined"); *id.* at *47 ("Our opinion does not address the content of the law that governs petitioners' detention. That is a matter yet to be determined."), the parties cannot efficiently or effectively prepare for more than 200 proceedings absent some generally-applicable guidance established at the outset. Indeed, in *Boumediene*, the Supreme Court expressly recognized the need for coordination and consolidation, anticipating that "[i]f, in a future case, a detainee files a habeas petition in another judicial district in which a proper respondent can be served, the government can move for change of venue to the court that will hear [the *Boumediene*] petitioners' cases, the United States District Court for the District of Columbia." 2008 WL 2369628, at *45. Such "[c]hanneling future cases to one district court," *id.*, would make little sense if common issues were still resolved different ways by different judges in individual cases. We do not, as petitioners' counsel have asserted, propose for all detainees' cases to be resolved in a class-action format, but simply believe that it is far more efficient for common legal and procedural issues to be resolved in a common manner. Thereafter, the merits of a given case can be decided by the assigned judge as early as possible. By contrast, under petitioners' approach, the parties would litigate the same legal and procedural issues repeatedly before 15 individual judges. The broad and unsettled character of these issues would all but ensure significant disagreement among individual district judges, which in turn would all but ensure a significant number of reversals and remands on appeal. In the long run,

The Honorable Royce C. Lamberth
The Honorable Thomas F. Hogan

that would not only waste judicial and party resources, but also would cause the very delay that
petitioners' counsel assertedly seek to avoid.

      To facilitate the prompt and orderly resolution of common issues, we recommend that,
even as the government begins preparing factual returns, the parties should submit briefing on
common procedural issues to Judge Hogan, as coordinating judge, who could then adopt a case
management order addressing these issues.  Under this approach, we would propose to begin
briefing such issues in the next 30 days, and would hope to have the issues resolved even before
petitioners file their factual traverses.  Of course, to the extent either side believes that any of the
issues presented to Judge Hogan would best be resolved by separate judges in individual cases,
that party could make those arguments to him.  To the extent Judge Hogan resolved some or all
of the issues on a common basis, the parties would have immediate guidance going forward, and
the outstanding legal disputes would thus have been narrowed.  Conversely, to the extent Judge
Hogan classified any of the disputed issues as individual ones, the parties would have suffered no
prejudice for having tried, at the outset, to resolve on a common basis as many issues as possible.
Alternatively, if the judges conclude that all procedural issues should be resolved in the context
of specific cases, we propose that a subset of the first 50 cases in which amended or initial factual
returns are filed could be consolidated before Judge Hogan, as coordinating judge, for
determination of procedural issues in the specific context of test cases.  (The merits of these
cases would still be addressed by their individual assigned judges.)  Were the court to consolidate
these procedural issues before Judge Hogan, either for some generalized determinations at the
outset or for determination in the context of test cases, the government would agree to abide by
his rulings as binding for all Guantanamo habeas cases pending before this court, subject only to
reserving the right to appeal.

      2.      Cross-Cutting Legal Issues That Warrant Coordination

      We also would ask for the adoption of a standing order in all cases under which motions
(other than dispositive motions filed in response to factual returns) may not be filed without first
conferring with the court.  After the decision in *Rasul v. Bush*, 542 U.S. 466 (2004), petitioners
filed a flurry of motions addressing a variety of issues, such as notice prior to transfer from
Guantanamo, conditions of confinement, counsel-detainee visit priorities and practices, and other
matters.  Indeed, since the *Rasul* decision, over one hundred motions have been filed seeking
notice prior to transfer, and scores of motions have been filed raising conditions-of-confinement
issues.  Dozens of motions seeking various forms of relief have been filed in the two and a half
weeks since *Boumediene* was decided.  Responding to such motions separately in each individual
case would be extraordinarily burdensome and would detract from the government's resources
(as well as the court's) in doing the important work of processing factual returns, litigating
potentially dispositive legal issues, and adjudicating the merits of these cases.  Rather than
proceed *ad hoc* in individual cases, such motions, which present issues cutting across the
Guantanamo habeas cases, are most appropriately addressed by Judge Hogan as coordinating

The Honorable Royce C. Lamberth
The Honorable Thomas F. Hogan

judge. Petitioners' claim that motions pertaining to transfer or conditions claim are inherently fact-dependant ignores the arguments the government has made in such cases. With respect to notice of transfer, the government's principal arguments are legal ones addressing the authority of the judiciary to require such notice. Similarly, the government's arguments as to conditions claims primarily involve legal arguments applicable to all cases, including the continued applicability of Section 7 of the Military Commissions Act, to the extent that it withdraws court jurisdiction over conditions-of-confinement claims by detainees held as enemy combatants. Petitioners may dispute the government's position on these questions, but they cannot fairly dispute that our position raises common questions – and ones distinct from the merits of petitioners' challenge to their detention as such.

As discussed at the June 18 and 25 meetings, one important issue, common to all cases, is the entry of an amended protective order. The protective order previously adopted in the district court provides a good model; however, it could warrant updating to reflect various concerns. We understand that some of those concerns have been identified by the CSOs, and the government has identified concerns of its own. Any proposed amendments to the protective order could be briefed and adjudicated without delay. Moreover, issues relating to administration of the protective order have arisen with some regularity. We propose (and believe that petitioners' counsel generally agree) to have Judge Hogan, as coordinating judge, address those issues. Likewise, we propose having Judge Hogan oversee the development of a protective order for use in cases involving high-value detainees," whose cases implicate distinctive concerns due to the presence of SCI information.

It may be that guidance could be expeditiously obtained from the Court of Appeals on several of these common issues, some of which had been briefed on appeal prior to enactment of the DTA and MCA. First, the government's authority to withhold a narrow subset of classified evidence from petitioners' counsel was presented in an appeal from *In re Guantánamo Detainee Cases*, No. 04-01254-HHK (Jan. 31, 2005) (Doc. 100). *See Al Odah v. United States*, D.C. Cir. No. 05-5117. Second, the petitioners' claim of entitlement to notice prior to transfer was raised in scores of cases. *See, e.g., Kiyemba v. Bush*, D.C. Cir. No. 05-5487. Third, the applicability of the Military Commissions Act to conditions of confinement claims is pending in *Paracha v. Bush*, D.C. Cir. No. 05-5149. The government will seek definitive rulings on these issues from the court of appeals. Moreover, to the extent appropriate, we would encourage you to raise these cases with the Chief Judge of the Court of Appeals, as prompt resolution of these issues by the Court of Appeals would be helpful to all concerned.

Finally, we would propose to begin briefing immediately one additional threshold legal issue: whether the filing of charges against a detainee before a military commission should require the detainee's habeas proceeding to be dismissed or held in abeyance pending resolution of the commission prosecution. At present, 20 detainees have been so charged, and most of them have pending *habeas* petitions. Resolution of that issue in favor of the government would

7

The Honorable Royce C. Lamberth
The Honorable Thomas F. Hogan

effectively suspend those cases at least for the time being.  Because this issue arises in many individual cases, we would propose that it be briefed before Judge Hogan, as coordinating judge.

In closing, we share the court's commitment to expedited resolution of these cases. When Judge Green had the petitions of a few dozen detainees coordinated before her in 2004, the district court received factual returns and was able to decide threshold legal motions in those cases in approximately six months  Now, with the petitions involving up to approximately 280 detainees pending, or likely soon to be pending, we are proposing a schedule and procedure that should allow the court to resolve approximately five times as many cases, on the merits, over the course of the next 12 to 18 months.  We look forward to working with the court and the petitioners' counsel to achieve that goal.

Respectfully,

Gregory G. Katsas
Acting Assistant Attorney General

cc:    Shane Kaddidal
       Neal Katyal
       Robert Kirsch
       A.J. Kramer
       Thomas Sullivan
       David Remes
       Stephen Truitt
       Sabin Willett

8